**LAQUER, URBAN, CLIFFORD & HODGE LLP**
Susan Graham Lovelace, State Bar No. 160913
    Lovelace@luch.com
Michael Y. Jung, State Bar No. 245260
    Jung@luch.com
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Tel: (626) 449-1882 | Fax: (626) 449-1958

Counsel for Creditors, Trustees of the Southern California
IBEW-NECA Pension Plan, et al.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>STEINY AND COMPANY, INC.,<br><br>        Debtor. | CASE NO.: 2:16-bk-25619-WB<br><br>Chapter 11<br><br>ASSIGNED TO THE HONORABLE JULIA W. BRAND<br><br>**DECLARATION OF RAUL RODRIGUEZ IN SUPPORT OF MOTION FOR ADMINISTRATIVE EXPENSES**<br><br>HEARING DATE<br>Date:  To be set<br>Time: To be set<br>Ctrm:  1375<br>Edward R. Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles. California 90012 |

I, RAUL RODRIGUEZ, declare:

1.  I am over 18 years of age and work in the County of Los Angeles, State of California.  I make this declaration in support of Creditor's Notice of Motion and Motion for Administrative Expenses.  If called as a witness in this action, I would testify to the following based on my personal knowledge.

2.  I am the Manager of the Employer Contributions Department for the Southern California IBEW-NECA Administrative Corporation ("Admin Corp.").  At all times material hereto, the Admin Corp. has handled various administrative functions (including collecting fringe benefit contributions) for creditors Trustees ("Trustees") of the Southern California IBEW-NECA Pension Plan, Southern California IBEW-NECA Defined Contribution Trust Fund, Southern California IBEW-NECA Health Trust Fund ("Health Fund"), Southern California IBEW-NECA Supplemental Unemployment Benefit Trust Fund, Los Angeles County Electrical Educational and Training Trust Fund, National Electrical Benefit Fund, Southern California IBEW-NECA Labor-Management Cooperation Committee ("So. Cal. LMCC"), National NECA-IBEW Labor-Management Cooperation Committee Trust Fund ("National LMCC"), Inland Empire IBEW-NECA Labor Management Cooperation Committee ("Inland LMCC"), Inland Empire IBEW-NECA Health Trust Fund, San Bernardino County Electrical Education and Training Trust Fund, Riverside County Electrical Health and Welfare Trust Fund, Riverside County Electrical Education Training Trust Fund, Administrative Maintenance Fund, Contract Compliance Fund, and Los Angeles Electrical Workers Credit Union (collectively "Trusts").

3.  In my capacity as Manager of the Employer Contributions Department, I am the primary individual responsible for supervising the compliance of various employers in Southern California with their obligations to the Trustees under various collective bargaining agreements, trust agreements, and other agreements and stipulations, and I have access to, and am one of the Custodians of, the Employer

1108558

Contributions Department's files maintained by the Admin Corp.

4.    My administrative duties and functions for the Admin Corp. include: reviewing monthly fringe benefit reports and fringe benefit contributions from employers; assisting in the identification of delinquent employers; supervising the auditors who perform audits of employers to confirm their compliance with their obligations to the Trustees; pursuing, following up with and collecting from employers who have failed to properly prepare and/or submit monthly fringe benefit reports and/or properly pay fringe benefit contributions to effect collection; and determining liquidated damages and interest due, and other fees and charges that employers may, from time to time, incur to the Trustees under their collective bargaining agreements.

5.    Based on the foregoing, I am intimately familiar with the establishment and operation of each of the Trustees' Trusts with respect to employers in Southern California.

6.    All creditor Trustees (except for the AMF, CCF and the Credit Union) are trustees of express trusts ("Trusts") created pursuant to written declarations of trust ("Trust Agreements"), and trustees of multiemployer benefit plans within the meaning of Sections 3(3) and 37(A) of ERISA, 29 U.S.C. §§ 1002(3), 1002(37)(A).  As an exemplar, attached hereto as **Exhibit "A"** is a true and correct copy of pertinent portions of the Agreement and Declaration of Trust of the Southern California IBEW-NECA Pension Plan.   The Trust Agreements for the other trusts have similar provisions.  These Trusts are created and maintained pursuant to Section 302(c)(5) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), except for the So. Cal. LMCC, Inland LMCC, and National LMCC, which are trusts created and maintained pursuant to the LMRA and the Labor-Management Cooperation Act of 1978.   Creditors are fiduciaries with respect to the Trusts as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).   The AMF and CCF collect industry advancement funds pursuant to various collective bargaining agreements.  The Credit

Union is a state-chartered credit union that collects employee authorized vacation payments pursuant to various collective bargaining agreements entered into by Local Union 11 of the International Brotherhood of Electrical Workers ("Local 11").

7.     The Employer Contributions Department maintains an employer file for each participating employer's accounts related to each collective bargaining agreement to which they are bound.   Such employer files customarily contain, among other items, written agreements binding the employer to the applicable collective bargaining agreements, record of any payments received from the employer, the original monthly report forms prepared by the employer and submitted to the Admin Corp. with payment of the contributions, the originals or copies of correspondence to and from the employer, any payment proposals between the employer and the Trustees, and, where the employer has failed to pay amounts that are due, documents prepared by my staff indicating the amounts of the employer's delinquencies.

**Applicable Collective Bargaining Agreements**

8.     I have reviewed the file maintained by the Admin Corp for debtor, Steiny and Company, Inc. ("Steiny"). Since at least 1999, Steiny has been signatory to numerous collective bargaining agreements with local unions of the IBEW, including the agreements known as: (1) the Local 11 Intelligent Transportation Systems ("Local 11 ITS"); (2) the Local 11 Inside Wiremen's Agreement ("Local 11 IWA"), (3) the Local 441 Inside Wiremen's Agreement ("Local 441 IWA"), and (4) the Local 477 Inside Wiremen's Agreement ("Local 477 IWA") (collectively, the "Master Agreements").   Attached hereto as **Exhibit "B"** are true and correct copies of the letters of assent to the above agreements executed by Steiny.   Attached hereto as **Exhibit "C"** is a true and correct copy of pertinent portions of the Local 11 ITS. Attached hereto as **Exhibit "D"** is a true and correct copy of pertinent portions of the Local 11 IWA. Attached hereto as **Exhibit "E"** is a true and correct copy of pertinent portions of the Local 441 IWA.   Attached hereto as **Exhibit "F"** is a true and correct copy of pertinent portions of the Local 477 IWA.

1108558

9. Steiny is an "employer" as defined and used in §3(5) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(5). Steiny relies on labor provided by various local unions of the IBEW to complete its projects. For recent time periods, Steiny has employed more than fifty members of IBEW Local 11 for work performed in Los Angeles County. Steiny also employs members of IBEW Locals 441 and 477 on projects outside of Los Angeles County. As of the date of this declaration, I am informed and believe that Steiny has not sought to reject the Master Agreements, and I don't anticipate Steiny will seek to reject the Master Agreements due to its reliance on Union labor.

10. As an employer, Steiny has been at all times material to this action, and is presently, bound and obligated to the terms and provisions of the Master Agreements and the related Trust Agreement(s), inclusive of the obligations to timely report and pay fringe benefit contributions, interest, liquidated damages, fees, and costs.

**Employers are Obligated to Timely Report and Pay Contributions Due**

11. Employers bound to the Master Agreements have the primary responsibility to calculate and report the amount of fringe benefit contributions due to the Trusts each month. In the usual course of business, each month the employer fills out a report form ("Monthly Report") listing the names, social security numbers, and hours worked by each of their employees who perform covered work, and the employer calculates the amount of contributions that are owed the Trusts. Each month, the completed Monthly Reports are to be returned to the Admin Corp. along with a check for payment of the contributions owed for that month.

12. Pursuant to the Master Agreements, Monthly Reports and contributions are due to the Trusts on the 10th day and become delinquent if paid after the 15th day of each month following any month during which contributions were incurred [Ex. C §§ 7.51-7.52; Ex. D §§ 7.51-7.52; Ex. E § 10.1; Ex. F. §§ 10.02-10.07]. If any amounts are not paid when due, employers bound to the Master Agreements (i.e. Steiny) are obligated to pay to the Trustees all legal fees and costs incurred in

1108558

connection with the collection of the delinquency, plus interest and liquidated damages [Ex. C, § 7.52; Ex. D, § 7.52; Ex. E § 10.1; Ex. F. § 10.08.].

**Calculation of Fringe Benefit Contributions Owed**

13.    Steiny submitted Monthly Reports to the Admin Corp. for work performed under the Master Agreements for the month of November 2016, wherein Steiny admitted to owing contributions totaling $169,337.88 to the Trusts.  True and correct copies of these Monthly Reports (redacted to protect Steiny's employees' privacy) are attached hereto as **Exhibit G**.  However, by way of the present motion, the Trustees only seek to collect $139,911.40 of the total amount due, which includes all amounts owed under the Local 11 ITS and Local 11 IWA, and only the defined benefit pension amounts owed under the Local 440 IWA, Local 441 IWA, and Local 477 IWA.  Other administrative offices handle collection of the remaining amounts owed under the Local 440 IWA, Local 441 IWA, and Local 477 IWA.

14.    Pursuant to the terms and provisions of the Master Agreements and related Trust Agreement(s), there were, and are, no conditions, covenants subsequent or legal excuses to justify or excuse Steiny's failure to timely pay the above fringe benefit contributions.

15.    As of the date of this declaration, Steiny has not paid any of the $139,911.40 owed to the Trustees pursuant to the Master Agreements, and this amount is now delinquent.

**Steiny Is Obligated to Pay Interest on Delinquent Amounts**.

16.    The Master Agreements, related Trust Agreements, and Section 502 (g)(2)(B) of ERISA [29 U.S.C. § 1132(g)], provide for the recovery of interest on past due fringe benefit contributions. [Ex. A., Article III, §3; Ex. C §§ 7.02, 7.24, 7.34, 7.52; Ex. D §§ 7.02, 7.24, 7.34, 7.52; Ex. E. § 10.1; Ex. F. § 10.08].  However, while the Local 11 ITS, Local 11 IWA, and Local 441 IWA are silent as to the interest rate, the Local 477 IWA provides an interest rate of 8% per annum.  Therefore, for the purpose of this motion and for the sake of simplicity, the applicable statutory rate as

1108558

provided by 26 U.S.C. § 6621 was used to calculate the interest due.  26 U.S.C. § 6621 states "[t]he underpayment rate established under this section shall be the sum of – (A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points."  Under § 6621, interest is compounded on a daily basis.  See Rev. Rul. 2016–23.  The applicable interest rate is a variable rate based on the Federal short-term rate, which varies by quarter. 26 U.S.C. § 6621(b).  26 C.F.R. § 301.6621-1 states that the adjusted interest rate established under section 6621 shall be published by the Commissioner in a Revenue Ruling.  The applicable interest rates for the period relevant to this action has remained at 4% (which is lower than the rates provided for in the Local 477 IWA).  See Rev. Rul. 2016–23.  Applying these calculations, Steiny owes the Trustees pre-judgment interest of $398.32 related to delinquent fringe benefit contributions for November 2016, calculated from the date the fringe benefit contributions became due through January 5, 2017 (the proposed hearing date for this motion).  The Delinquency Spreadsheet attached hereto as **Exhibit H** sets forth the calculation of the amounts of prejudgment interest owed by Steiny.

**Steiny is Obligated to Pay Liquidated Damages.**

17.    The Master Agreement, related Trust Agreements, and Section 502 (g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(C)] also provide for the assessment of liquidated damages. [Ex. A., Article III, §3; Ex. C, §§ 7.02, 7.24, 7.34, 7.52; Ex. D §§ 7.02, 7.24, 7.34, 7.52; Ex. E § 10.1; Ex. F § 10.08].  Section 502 requires an award of liquidated damages in an amount equal to the amount of prejudgment interest or liquidated damages provided for in the collective bargaining agreement not to exceed 20%, whichever is greater.  29 U.S.C. § 1132(g)(2)(C).  Liquidated damages accrued on the delinquent fringe benefit contributions calculated at the rate specified in the Master Agreement and the related Trust Agreements (1.5% for amounts delinquent 1-31 calendar days, and an additional 1.5% of the principal amount per month past due thereafter, up to a total maximum amount charged by the Trustees of 18% per annum) total $2,098.67, calculated from the date the fringe benefit contributions became due

through January 5, 2017 (the proposed hearing date for this motion). The Delinquency Spreadsheet attached hereto as Exhibit H sets forth the calculation of the amounts of liquidated damages owed by Steiny. As this amount is greater than the amount of pre-judgment interest, Steiney owes the Trustees $2,098.67 for liquidated damages.

**Steiny is Obligated to Pay Attorney Fees and Costs.**

18. In addition to the unpaid fringe benefit contributions interest, and liquidated damages, pursuant to the Master Agreements, Trust Agreements and 29 U.S.C. §1132(g)(2)(D), the Debtor is obligated to pay the Trusts attorneys' fees and costs incurred in collecting this delinquency. [Ex. A., Article III, §3; Ex. C, §§ 7.02, 7.24, 7.34, 7.52; Ex. D §§ 7.02, 7.24, 7.34, 7.52; Ex. E § 10.1; Ex. F § 10.08]

19. The Trustees have incurred attorneys' fees totaling $5,847.00 related to this motion and are therefore requesting an award for attorneys' fees. The work done is described in the declaration of Michael Y. Jung filed herewith. I believe the hourly rates charged by Laquer, Urban, Clifford & Hodge LLP are reasonable and compare favorably with the typical rates charged by other firms to similar trust fund clients. I also believe that the hours spent by Laquer, Urban, Clifford & Hodge LLP on this matter are reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and if called as a witness, I could and would competently testify thereto.

Executed at Commerce, California, on December 22, 2016.

By: _____
RAUL RODRIGUEZ

1108558

## AGREEMENT AND DECLARATION OF TRUST OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN

THIS AGREEMENT and DECLARATION OF TRUST, entered into this 14th day of

September, 1976, in the County of Los Angeles, State of California, as amended thru

_____, _____, 2001 by and between the I.B.E.W. EMPLOYERS SECTION OF THE

LOS ANGELES COUNTY CHAPTER, NATIONAL ELECTRICAL CONTRACTORS

ASSOCIATION (herein LA-NECA), ORANGE COUNTY CHAPTER NATIONAL ELECTRICAL

CONTRACTORS ASSOCIATION, INC. and SOUTHERN SIERRAS CHAPTER NATIONAL

ELECTRICAL CONTRACTORS ASSOCIATION, INC. for and on behalf of themselves, their

present and future members, the members of any Chapter of the National Electrical

Contractors Association now or in the future permitted to participate in this Trust as

hereinafter provided, (herein collectively the "Associations") and any contractor who is or

becomes signatory to a Collective Bargaining Agreement, and LOCAL UNION NO. 11,

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, (herein LOCAL 11), LOCAL

UNION NO. 440, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL

UNION NO. 441, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, and

LOCAL UNION NO. 477, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,

for and on behalf of themselves and any Local Union affiliated with the International

Brotherhood of Electrical Workers in the future permitted to participate in this Trust as

hereinafter provided (herein collectively the "Unions"), supercedes and replaces that LOCAL

-1-

065

11 IBEW PENSION PLAN AGREEMENT AND DECLARATION OF TRUST entered into July 6, 1964, as amended August 15, 1967 and July 30, 1968, and is made with reference to the following:

WHEREAS, the Associations and the Unions have entered into various Collective Bargaining Agreements which, among other things, provide for the establishment of a Pension Trust Fund to receive and administer contributions to be made for the purpose of providing retirement benefits; and

WHEREAS, the Local Union 11 IBEW Pension Plan Agreement and Declaration of Trust, as amended, which is superceded and replaced by this Agreement and Declaration of Trust, established the Pension Plan so provided for, but in the interim the Congress of the United States has enacted comprehensive and far-reaching pension reform legislation, entitled the Employee Retirement Income Security Act of 1974 (herein ERISA); and

WHEREAS, the parties hereto desire to continue in effect that Trust so established, but in full conformity with the provisions of ERISA, as well as the Internal Revenue Code, as amended, and the Labor Management Relations Act of 1947, as amended:

NOW, THEREFORE, in consideration of the foregoing, it is mutually agreed as follows:

ARTICLE I
DEFINITIONS

For the purposes of this Agreement and Declaration of Trust, the following words and phrases shall have the following meaning, unless a different meaning is plainly required by the context:

2-

056

**Exhibit A, p. 2**

Section 1.    CONTRIBUTION AGREEMENT

Means any "Collective Bargaining Agreement" or other written agreement approved by the Trustees requiring contributions from Associations or Unions to this Trust.

Section 2.    COLLECTIVE BARGAINING AGREEMENT

Means a Collective Bargaining Agreement by and between an Association and a Union requiring contributions to this Trust.

Section 3.    EMPLOYER

Means any present or future member of an "Association", and any contractor who is or becomes signatory to a Collective Bargaining Agreement.  The term "Employer" shall also include the "Unions" and the "Associations", which may at the discretion of the Trustees make contributions to this Trust.

Section 4.    EMPLOYEE

Means any person performing work under a Collective Bargaining Agreement and employed by an "Employer", and such other persons as the Trustees may hereinafter designate as "Employees" for the purpose of the Agreement and Declaration of Trust, provided any such designation does not jeopardize or adversely affect the tax exempt status of the "Plan".  No self-employed person, sole proprietor, owner, operator, partner, or "Employer", unless employed by a corporation, shall be "Employees" hereunder.

Section 5.    PLAN; PENSION PLAN, OR RETIREMENT PLAN

Means the written Plans describing the various pension or retirement benefit plans adopted by the "Board of Trustees" pursuant to this Trust, including any amendment, modification, extension or renewal thereof.

**Exhibit A, p. 3**

Section 6.    CONTRIBUTIONS

Means the payments by "Employers" to this Pension Trust Fund for and on behalf of any "Employee".

Section 7.    TRUST FUND

Means all of the assets of whatever kind which, from time to time, comprise the trust estate of this Trust.

Section 8.    CORPORATE CO-TRUSTEE

Means the entity selected by the Board of Trustees in accordance with this Trust.

Section 9.    TRUSTEE

Means any natural person now or in the future designated as Trustee pursuant to this Trust.  The terms "Board of Trustees" and "Board" means the Trustees collectively.

Section 10.    BENEFICIARY

Means a person designated by an "Employee", or by the terms of the "Plan" who is or may become entitled to a benefit thereunder.

Section 11.    FIDUCIARY

Means any person who performs the functions or possesses the authority described in § 3(21) of ERISA with respect to the Pension Plan.

ARTICLE II
CREATION AND PURPOSE OF THE TRUST

Section 1.    TITLE

This Trust, previously established and hereby continued, shall be known as the

-4-

SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, a non-profit, multi-employer trust, existing for the uses and purposes hereinafter set forth.

Section 2.    OFFICE

The principal office of the Trust shall be in the County of Los Angeles, State of California.

Section 3.    NATURE OF THE FUND

The Fund as established by this Trust Agreement shall consist of contributions, all investments made and held in the Trust, and all income and returns of any kind whatsoever therefrom, both received and accrued, and any of the property acquired, received or held by reason of this Trust Agreement.

Section 4.    PURPOSE

The Trust is established solely for the purposes of paying pensions on retirement or disability for the benefit of employees, qualified joint and survivor annuities in accordance with §205 of ERISA, and pre- and post retirement death benefits to designated beneficiaries. These benefits may be paid from principal, income or both.

Section 5.    FUNDS VESTED IN TRUSTEES

The entire right, title and interest to the Pension Trust Fund is vested in the Board of Trustees.

Section 6.    SOURCE OF RIGHTS

No Employer, Union, Employee or any other person shall have any right, title or interest in this Fund other than as is specifically provided in this Agreement, and the Plan and no part of this Fund shall revert to any Employer.

009

**Exhibit A, p. 5**

Section 7.    NON-ASSIGNMENT

No part of this Fund shall be paid to any Employer, Union, or Employee, except in the form of benefits to Employees as provided in the Pension Plan. The Trustees shall not recognize any transfer, sale, mortgage, pledge, hypothecation, order or assignment by any Employee, his family or dependents, of all or any part of his interest hereunder, and such interest shall not be subject to and shall be exempt from the claims of creditors or any other claimant and from all orders, decrees, levies, garnishment, liens, attachments and/or executions and other legal or equitable process or proceedings against such Employee.

### ARTICLE III
### OBLIGATIONS OF EMPLOYERS

Section 1.    PAYMENT OF CONTRIBUTION

Employer contributions shall be paid into the Fund in such manner and at such time and place and on such transmittal reports as the Board of Trustees may prescribe. Contributions to the Fund shall be payable monthly, and shall be forwarded to a central depository designated by the Board of Trustees. Said payments are to continue from month to month in accordance with any Contribution Agreement, this Trust Agreement, and such regulations of the Board of Trustees as are issued pursuant thereto. The obligation to make contributions of a particular Employer shall cease upon the termination of any applicable Contribution Agreement.

Section 2.    LIABILITY LIMITED TO CONTRIBUTIONS

In no event shall an Employer be liable or responsible for any portion of the contributions which another Employer is obligated to make this Trust.

0'7 0

-6-

**Exhibit A, p. 6**

Section 3.    DAMAGE FOR DELINQUENCY

All contributions shall be due on the first day of the calendar month following the payroll month in which the Employee worked.  Any contributions received which are postmarked later than the fifteenth day of the calendar month following the payroll month in which the Employee worked shall be considered delinquent.  The parties recognize and acknowledge that the regular and prompt payment of Employer contributions to the Fund is essential to the maintenance of the Fund, and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund which would result form the failure of the Employer to pay his contributions in full within the time above provided.  Therefore the amount of the damage to the fund resulting from such failure shall be presumed in accordance with the following schedule: 1½% of the principal if late 1-30 days; 3% of the principal if late 31-60 days; 1½% will accrue for each additional thirty days late, up to a maximum of 18% per annum.  This amount shall become due and payable to the Fund by the Employer as liquidated damages and not as a penalty immediately following the date the contribution became delinquent and shall be in addition to the required contribution, and any other charges and interest provided for in any Contribution Agreement.

Section 4.    DELINQUENT EMPLOYER LIABLE FOR BENEFITS

In the event an employer is delinquent in making the contributions to the Trust Fund as required by a Collective Bargaining Agreement and any eligible employee or beneficiary is denied benefits because of such delinquency, then and in that event, said Employer shall become personally liable and responsible to said employee or beneficiary for any and all

-7-                         P7.1

**Exhibit A, p. 7**

loss and damage which said employee or beneficiary has sustained.

Section 5.    REFUND OF ERRONEOUS CONTRIBUTIONS

An Employer shall be entitled to credit for or refund of contributions made to the Trust by reason of mistake of fact. Provided, however, no such credit or refund shall be made more than one year following the date on which payment of the contribution was made and, further, provided the Employer requests such credit or refund in accordance with such reasonable regulations as the Board of Trustees may prescribe.

Section 6.    AUDITS OF EMPLOYERS

The Board of Trustees has the power to require any Employer, signatory Association, the Union, any employee, or any beneficiary under the Pension Plan to submit to it any information, data or documents reasonably relevant to and suitable for the purposes of such administration. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, reports or documents. Good cause appearing therefor to the Trustees, upon request of the Trustees, each Employer shall permit a representative selected by the Board of Trustees, to enter upon the premises of such Employer during business hours and at reasonable times to examine the payroll records, Federal and State quarterly contributions reports pertaining to employees, Workmen's Compensation reports of the employees working under a Collective Bargaining Agreement to determine whether the employer is making full and prompt payment of all sums required to be paid by him to the Fund. The general accounting books and records of the Employer shall not be examined. In the event that it is determined, as a result of such examination, that such Employer has failed to make all payments required

-8-                    072

**Exhibit A, p. 8**

of him, then said Employer, in addition to immediately paying all amounts found to be due and owing as a result of said examination, shall, if so ordered by the Board of Trustees, forthwith pay all costs incurred by the Trust for said examination, in addition to the amounts found to be due.

Section 7.   LITIGATION FOR COLLECTION OF CONTRIBUTIONS

The Trustees shall have the power to demand, collect and require the payment of employer contributions and they shall have the power and may take such steps to do all the things necessary to collect funds due by the terms of a Contribution Agreement and to prosecute or intervene in any proceeding at law, equity or in bankruptcy, and shall have the right to collect said sums due and owing, including costs of collection and actual attorney's fees, and a delinquent Employer promises and agrees to pay all costs of collection and actual attorney's fees when found liable.  The Trustees may compromise, settle or release claims or demands in favor of or against the Fund, on such terms and conditions as the Board of Trustees may deem prudent provided , however, that this clause shall not excuse any violation of any Collective Bargaining Agreement

Section 8.   CONTRACT ADMINISTRATION BOND.

No employee or beneficiary shall be denied any benefits under this Agreement by reason of an Employer's failure to make contributions required by any Collective Bargaining Agreement, if the payment of such delinquent contributions is secured and guaranteed by an applicable contract administration bond.

073

Section 3.        WITHDRAWAL FROM PARTICIPATION

If additional "Associations", "Employers" and "Unions" are permitted to participate

in this Trust and if, at some later date, said additional "Associations", "Employers" and

"Unions" elect to withdraw from participating in this Trust, they shall have no right to

receive or recover any moneys contributed into this Trust, except that any Employee or

Beneficiary who under terms of the Pension Plan has become eligible for any benefits

payable under the Plan, shall continue to receive said benefits so long as said

Employee or Beneficiary remains eligible. All moneys contributed by "Associations",

"Employers" and "Unions" permitted to participate in this Trust under the terms of this

Article XI shall be and remain the assets of this Trust.

Executed this ____1____ day of ____OCTOBER____, 2001.

LOCAL UNION NO. 11, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS

By _____

LOS ANGELES COUNTY NATIONAL
ELECTRICAL CONTRACTORS
ASSOCIATION, INC.

By _____

LOCAL UNION NO. 441, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS

By _____

ORANGE COUNTY CHAPTER NATIONAL
ELECTRICAL CONTRACTORS
ASSOCIATION, INC.

By _____

095

LOCAL UNION NO. 440, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS

By _____

SOUTHERN SIERRAS CHAPTER
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION, INC.

By _____

LOCAL UNION NO. 477, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS

By _____

SOUTHERN SIERRAS CHAPTER
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION, INC

By _____

**Exhibit A, p. 10**

# LETTER OF ASSENT—B

This is to certify that the undersigned employer has examined a copy of the current approved [1] STREET LIGHTING – TRAFFIC SIGNAL _____ labor agreement between [2] LOS ANGELES COUNTY CHAPTER, NATIONAL

ELEC. CONTR. ASSOC. _____ and Local Union [3] 11 _____, IBEW.

The undersigned employer hereby agrees to comply with all of the terms and conditions of employment contained in the above mentioned agreement and all approved amendments thereto. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto. The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

This letter of assent shall become effective for the undersigned employer on the [4] 19 day of JANUARY,

and shall remain in effect until the [5] 30 day of JUNE, 1995.

(termination date)

If the undersigned employer does NOT intend to comply with and be bound by all of the terms and conditions in any subsequently negotiated agreements between the above-mentioned parties, he shall so notify the Local Union in writing at least sixty (60) days prior to the termination date of the then current agreement.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

**APPROVED**
INTERNATIONAL OFFICE – I. B. E. W.
**FEB 24 1993**
J. J. Barry, President
This approval does not make the
International a party to this agreement

NAME OF FIRM

[6] STEINY & COMPANY
(type or print)

[7] FEDERAL EMPLOYER IDENTIFICATION NO.: 95-1889828

SIGNED FOR THE EMPLOYER

BY[8] _____
(original signature)

NAME[9] JACK STEINY
(Type or Print)

TITLE ~~PRESIDENT~~ CHAIRMAN

DATE 1-19-93

SIGNED FOR THE UNION[3] 11, IBEW

BY[8] _____
(original signature)

NAME[9] HOMER LEE
(Type or Print)

TITLE BUSINESS MANAGER–FINANCIAL SECRETARY

DATE January 19, 1993

## INSTRUCTIONS

[1] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[2] NAME OF CHAPTER OR ASSOCIATION
Insert full name of the NECA Chapter or Contractors Association involved.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] TERMINATION DATE
This date cannot exceed the anniversary date of the current approved agreement but can be for a *lesser* period of time.

[6] EMPLOYER'S NAME
Print or type Company name

[7] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[8] SIGNATURES

[9] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures—not reproduced—of a Company representative as well as a Local Union officer.

A MINIMUM OF FOUR COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING.

IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form; the image will transfer to succeeding copies. CAUTION: do not write on padded forms; unused forms below will be spoiled.

FORM 303 REV. 6/91

**Exhibit B, p. 1**

## LETTER OF ASSENT - B

This is to certify that the undersigned employer has examined a copy of the current approved[1] __INSIDE WIREMEN'S__ labor agreement between[2] __L.A. COUNTY CHAPTER, NATIONAL ELECT. CONTR. ASSOC.__ and Local Union __1 XX__ , IBEW.

The undersigned employer hereby agrees to comply with all of the provisions contained in the above mentioned agreement and approved amendments thereto, as well as subsequent approved agreements between[2] __L.A. COUNTY CHAPTER, NATIONAL ELEC. CONTR. ASSOCIATION__ and Local Union[3] __11__ , IBEW. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto, and any subsequent approved agreements.

This letter of assent shall become effective for the undersigned employer on the[4] __1__ day of __JUNE__ , __1999__ and shall remain in effect unless and until terminated as provided in the following paragraph.

If the undersigned employer does NOT intend to comply with and be bound by all of the provisions in any subsequently approved agreements between[2] __L.A. COUNTY CHAPTER, NATIONAL ELEC. CONTR. ASSOC.__ and Local Union[3] __11__ , IBEW, he shall so notify the Local Union in writing at least one hundred (100) days prior to the termination date of the then current agreement.

The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreements requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

__XXXXXXXX STEINY & COMPANY__

[5]Name of Firm

__12907 E. Garvey Avenue__

Street Address/P. O. Box Number

__BAldwin Park, CA   91706__

City, State (Abbr.) Zip Code

[6]Federal Employer Identification No:  __95-1889828__

SIGNED FOR THE EMPLOYER

BY __Lonnie D. Truett__ (signature)
(original signature)

NAME[5] __Lonnie D. Truett__

TITLE/DATE __Vice President   6/1/99__

```
APPROVED
INTERNATIONAL OFFICE -- I.B.E.W.

AUG   3 2000

J.J. Barry, President

This approval does not make the
International a party to this agreement.
```

SIGNED FOR THE UNION[3] __11__ , IBEW.

BY __Maurin Kright__ (signature)
(original signature)

NAME[5] __MARVIN KROPKE__

TITLE/DATE __BUSINESS MANAGER   6/1/99__

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1]TYPE OF AGREEMENT

Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[2]NAME OF CHAPTER OR ASSOCIATION

Insert full name of NECA Chapter or Contractors Association involved.

[3]LOCAL UNION

Insert Local Union Number.

[4]EFFECTIVE DATE

Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5]EMPLOYER'S NAME & ADDRESS

Print or type Company name & address.

[6]FEDERAL EMPLOYER IDENTIFICATION NO.

Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

SIGNATURES

SIGNER'S NAME

Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures--not reproduced--of a Company representative as well as a Local Union officer.

MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND COPY TO THE LOCAL NECA CHAPTER.

NT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

# 303 REV. 6/94

## LETTER OF ASSENT - B

This is to certify that the undersigned employer has examined a copy of the current approved[1] __Inside__ labor agreement between[2] __O.C. Chapter, Nat'l Electrical Contrs Assoc__ and Local Union [3] __441__ , IBEW.

The undersigned employer hereby agrees to comply with all of the provisions contained in the above mentioned agreement and all approved amendments thereto, as well as subsequent approved agreements between[2] __O.C. Chapter, National Electrical Contractors' Association__ and Local Union [3] __441__ , IBEW. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto, and any subsequent approved agreements.

This letter of assent shall become effective for the undersigned employer on the [4] __16__ day of __Feb__ , 1998 and shall remain in effect unless and until terminated as provided in the following paragraph.

If the undersigned employer does NOT intend to comply with and be bound by all of the provisions in any subsequently approved agreements between[2] __O.C. Chapter, Nat'l Electrical Contrs Assoc__ Local Union [3] __441__ , IBEW, he shall so notify the Local Union in writing at least one hundred (100) days prior to the termination date of the then current agreement.

The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future job sites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreements requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

__Steiny and Company, Inc.__

[5]Name of Firm

__221 North Ardmore Avenue / P O Box 74901__

Street Address/P. O. Box Number

__Los Angeles, Ca. 90004__

City, State (Abbr.) Zip Code

[6]Federal Employer Identification No: __95.1889828__

SIGNED FOR THE EMPLOYER

BY[7] _(original signature)_

NAME[8] __J. D. Steiny__

TITLE/DATE __Chairman__

APPROVED
INTERNATIONAL OFFICE - I. B. E. W.
RECEIVED
JUN 24 1998
FEB 1 7, 1998 President
approval doc. not make me
a party to this agreement.

SIGNED FOR THE UNION[7] __441__ IBEW

BY[7] _(original signature)_

NAME[8] __Douglas M. Chappell__

TITLE/DATE __Business Manager 2/17/98__

INSTRUCTIONS (All items __must__ be completed in order for assent to be processed)

[1]TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.
[2]NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[3]LOCAL UNION
Insert Local Union Number.
[4]EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.
[5]EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.
[6]FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.
[7]SIGNATURES
[8]SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures--not reproduced--of a Company representative as well as a Local Union officer."

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 303 REV. 6/94

**LETTER OF ASSENT — A**

In signing this letter of assent, the undersigned firm does hereby authorize ___Southern Sierras Chapter, NECA___

as its collective bargaining representative for all matters contained in or pertaining to the

current and any subsequent approved [2] ___Inside Wireman's___ labor agreement between the

___Southern Sierras Chapter, NECA___ and Local Union [3] ___477___ IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor

agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the [4] ___15th___ day of

___December___ ___1997___. It shall remain in effect until terminated by the undersigned employer giving written notice to the

___Southern Sierras Chapter, NECA___ and to the Local Union at least one hundred

fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW
___Steiny and Company, Inc.___
[5] Name of Firm
___221 N. Ardmore Avenue___
Street Address/P.O. Box Number
___Los Angeles, CA 90004___
City, State (Abbr.) Zip Code
[6] Federal Employer Identification No.: ___95-1869828___

APPROVED
INTERNATIONAL OFFICE — I.B.E.W.
CI# ___161273___
Phone: ___818-924-1998___
FAX: ___213-381-6781___
J. J. Barry, President
It is approved does not make the
firm or send a party to this agreement

SIGNED FOR THE EMPLOYER

BY [7] _____
(original signature)
NAME [8] ___J.O. Steiny___

TITLE/DATE ___Chairman___   ___1/15/97___

SIGNED FOR THE UNION [3] ___477___ IBEW

BY [7] _____
(original signature)
NAME [8] ___Jon B. Hughes___

TITLE/DATE ___Business Manager___   ___12/15/97___

---

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.
[3] LOCAL UNION
Insert Local Union Number.
[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.
IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form.

IBEW FORM 302 REV. 6/94

**Exhibit B, p. 4**

**INTELLIGENT TRANSPORTATION SYSTEMS
AGREEMENT**

BETWEEN

LOCAL UNION 11
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS

AND

LOS ANGELES COUNTY CHAPTER
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION

2014 – 2019

materials necessary for the installation of any and all foundations which will support electrical equipment, apparatus, devices or raceways. This will include templates for bolt patterns made from any material (wood, steel, etc.) the setting of reinforced steel (cages for poles). The installation of anchor bolts, the conduit stub outs, grounding systems, and including layout and orientation. Types of electrical equipment will include service cabinets, control cabinets, poles, etc. All foundation work as utilized for temporary installations, along with wood poles and overhead wiring installations. All work necessary for foundations (cantenary as used in the Passenger Train Systems including Electrified buses, Commuter rail, or Light rail train systems, the foundations for electrical apparatus, including cantenary "dead man" structures).

Right of way photovoltaics, ethernet networks, WLAN and wireless systems, traffic control, wireless sensing and detection, backbone systems, GPS and radio preemption systems, in-roadway lighting, LED's and LED blackout signs, changeable message signs, trail blazer signs, train signaling, fiber splicing, fiber testing, fiber termination and documentation, system integration, weather information systems, lighting suppression and grounding systems, traction power systems and switchgear, setting of reinforced steel cages and all electrical pertinences, highway tolling systems, UPS and energy storage systems in easements, license plate recognition systems, parking lot lighting systems in egress, parking messaging systems, ground penetration radar, radiographing, sub-surface imaging, right of way electrical inspection.

The handling of all material from the first point of delivery on the jobsite to the final installation.

All the foregoing areas of work jurisdiction when such work is to be performed in underground systems in a signal ditch in established easements. It is not intended nor shall it include electrical work performed beyond the property line or public streets unless performed on established easements or rightways.

## BASIC PRINCIPLES

The Chapter and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Chapter, the Union and the public. Progress in industry demands a mutuality of confidence between the Chapter and the Union. All will benefit by continuous peace and by adjusting any difference by rational, common sense methods.

In accordance with the Federal government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against Employee or applicant for employment because of race, religion, color, age, sex, creed, national origin or disability.

-2-

**Exhibit C, p. 2**

| 3 | 1801-2700 | 3rd Semester Completed |
| 4 | 2701-3600 | 4th Semester Completed |
| 5 | 3601-4500 | 5th Semester Completed |
| 6 | 4501-5400 | 6th Semester Completed |
| 7 | 5401-6300 | 7th Semester Completed |
| 8 | 6301-7200 | 8th Semester Completed |

**Section   5.07.**   The Committee is authorized to and shall indenture sufficient new apprentices to provide for the availability of a total number of apprentices in the training area not to exceed a ratio of one (1) Apprentice to three (3) Journeyman Wiremen who are normally employed under the terms of this Agreement.

An individual Employer shall employ only apprentices assigned by the Committee. No Employer is guaranteed any specific number of apprentices.  The Committee will determine whether or not any individual Employer is entitled to an apprentice,  as well as the total number of apprentices to be assigned to that Employer.  The Committee shall allow each qualified employer a ratio as follows:

**Ratio**

| 1 Journeyman | 1 Apprentice* | 1 Transportation Systems Tech |
| 1 Journeyman | 1 Apprentice* | 1 Transportation Systems Tech or 7th or 8th Period Apprentice** |
| 1 Journeyman | 2 Apprentices** | 1 Transportation Systems Tech or 7th or 8th Period Apprentice** |

*Employer can request an apprentice in his/her probationary period (1st or 2nd period)
**If the supply of 7th and 8th period apprentices is exhausted, the next highest
   percentage apprentice available may be used.

The first person on a job shall be a Journeyman.

A first year apprentice, as used above, may be an indentured apprentice in his/her probationary period.

First year apprentice may perform all tasks assigned by a General Foreman, Foreman and/or Journeyman; however, they shall not work on or near live voltage circuits or systems.

If unable to furnish a first year indentured apprentice in accordance with the allowable ratio, the JATC shall assign the next available individual who was interviewed but not selected from the pool of applicants.  If such a list does not exist, an individual applicant who has met all basic requirements for apprenticeship shall be assigned to the employer.  The rate of pay for such employees shall be at the first period apprentice rate.

**Section 5.08.**   An Apprentice is to be under the supervision of a Journeyman Wireman at all times.  Journeymen are not required to constantly watch the Apprentice,  but are to lay out the work required and permit the Apprentice to perform the work on his/her own. Journeymen are permitted to leave the immediate work area without being accompanied by

-33-

the Apprentice.  Only an eighth period Apprentice shall be permitted to work alone on any job without supervision of a Journeyman Wireman.

**Section 5.09.**       The parties to this Agreement shall be bound by the Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947, as amended, ERISA and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby authorized to determine the reasonable value of any facilities, materials or services furnished by either party.  All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Section 5.10.**  All Employers subject to the terms of this agreement shall contribute the amount established under Section 3.05 of this agreement, for the purpose of maintaining the programs outlined in Section 5.01 of this Article.  This sum shall be forwarded monthly to the Trust Fund.

**Section 5.11.**  Each Journeyman and Transportation Systems Technician covered by the terms of this agreement shall contribute, through a payroll deduction, the amount established under Section 3.05 of this agreement for each hour worked, into the Local Union 11, IBEW-Los Angeles County Chapter, NECA Educational and Training Trust Fund.  Each Employer shall make the deduction for each hour worked and shall forward the total amount for all employees covered by this agreement and on a monthly basis, transmitted on a form furnished and prescribed by the Trustees of the Fund.

**Section 5.12.**  All employees working under this agreement who have not attained journeyman status, as prescribed in GROUP I, or GROUP II of Section 4.05 of this Agreement,  will be required to attend journeymen training classes as prescribed by the Electrical Training Trust.  (This section is not applicable to apprentices whose training is governed by the JATC.)

## ARTICLE VI
### National Employees Benefit Fund

**Section 6.01.**  It is agreed that in accord with the National Employees Benefit Agreement entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, that unless authorized otherwise by the National Employees Benefit Board, the individual Employer will forward monthly to the designated Local Secretary-Treasurer an amount equal to three percent (3%) of his gross monthly labor payroll, which he/she is obligated to pay to the employees  in  this bargaining unit,  and a completed payroll report prescribed by the National Board.  The payment shall be made by check or draft and shall constitute a debt due and owing to the National  Board on the last day of each calendar month, which may be recovered by suit initiated by the National Board or its assignee.  The payment and the payroll   report  shall  be  mailed  to  reach  the  office  of  the  appropriate  Local

-34-

**Exhibit C, p. 4**

Secretary-Treasurer not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having this agreement terminated upon seventy-two (72) hours' notice, in writing, being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his labor agreement.

### ARTICLE VII
### National Electrical Industry Fund

**Section 7.01.**   Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll, as determined by each Local Chapter and approved by the Trustees, with the following exclusions:

1.   Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year, but not exceeding 150,000 man-hours.

2.   One Hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages (including overtime) paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.   Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

-35-

## CONTRACT COMPLIANCE FUND

**Section 7.02** Contract Compliance Fund – Each employer shall contribute 0.5% of the productive payroll for work performed under this agreement.

The fund shall be administered solely by the Association and shall be utilized to pay for administration services performed on behalf of all signatory employers, such as marketing the benefits of IBEW contractors to construction users, promoting project labor agreements, and service on all funds as required by federal law.  The amount of this contribution is included in, and is not in addition to, the amount paid by NECA members to the NEIF.

The C.C.F. contribution shall be submitted with all other fringe benefits as delineated in the Labor Agreement by the fifteenth (15th) of the following month in which they are due to the Administrator receiving funds. In the event any employer is delinquent in submitting the required Contract Compliance Fund to the designated Administrator, the Administrator shall have the authority to recover any funds, along with attorney fees, court costs, interest and liquidated damages as required with all other fringe benefits as delineated in the Labor Agreement receiving such funds.  The enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the employer and not the Local union.  These monies shall not be used to the detriment of the IBEW.

## IBEW POLITICAL EDUCATION FUND

**Section 7.03** An IBEW Political Education (COPE) fund will be established upon adoption of mutually agreed to language by the parties, but administered solely by IBEW Local 11. Contributions to the fund will be employee deductions.

### Labor-Management Cooperation Committee

**Section 7.05.**   Each employee covered by the terms of the agreement shall contribute, through a payroll deduction, the amount established under Section 3.05 of this agreement, into the Local 11, I.B.E.W. - Los Angeles County Chapter, N.E.C.A. Labor-Management Cooperation Committee.  Each Employer shall make the deduction for each hour worked and shall forward the total amount for all employees covered by this agreement and on a monthly basis transmitted on a form furnished and prescribed by the Trustees of the Fund.

**Section 7.06.**   All Employers subject to the terms of this agreement shall contribute, the amount established under Section 3.05 of this agreement, per hour for each hour worked for the purpose of maintaining the Local 11,  I.B.E.W. -  Los Angeles County Chapter, N.E.C.A. Labor-Management Cooperation Committee.   This sum shall be forwarded monthly to the Trust.

**Section 7.07.**  A Board of Trustees for the Labor-Management Cooperation Committee is hereby established and shall consist of an equal number of members selected by the Union and the Chapter. The Board of Trustees is hereby authorized to  establish and implement such Trust Fund, Trust Fund Agreement, and reporting forms as they consider necessary to administer the plan.

-36-

**Exhibit C, p. 6**

**Payroll and Fringe Benefits Guarantee Trust Fund**

**Section 7.10.** Each electrical contractor employing workmen under the terms of this Agreement shall deposit One Hundred Dollars ($100.00), free of interest, for a payroll and fringe benefits guarantee (including Credit Union Fund) up to Seventy-Five Thousand Dollars ($75,000.00) of payroll, but not over that amount, with the Trustees who shall function under a Trust Agreement to be agreed upon between the parties. If at any time, the

interest accrued in the Payroll and Fringe Benefits Guarantee Trust Fund is depleted, each signatory contractor shall make an additional deposit into such fund of any amount up to One Hundred Dollars ($100.00), making a total of Two Hundred Dollars ($200.00) maximum. Notice of such additional deposit shall be given by the Labor-Management Committee.

Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Trust Fund to be agreed upon between the parties. Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Trust Fund in a total amount not to exceed Five Thousand Dollars ($5,000.00) maximum per employee.

A contractor who makes the payroll and fringe benefits deposit, and pays wages and fringe benefits to employees covered by this agreement, shall be absolved from all responsibilities with respect thereto. This payroll and fringe benefits deposit is in no respect a bond covering the contractor's payroll and fringe benefits obligation, but only an emergency fund to relieve employees' financial strain caused by issuing of bad checks or failure of contractors to meet payroll, or failure of contractors to make fringe benefit contributions as provided in this agreement. If the contractor defaults in the foregoing, his/her liability shall be as set forth in the Trust Agreement but shall, in any event, include the following:

(1) The contractor shall be liable for cost of enforcing collection, including but not limited to court costs, attorney fees, loss of earnings of an employee not paid, fringe benefits lost to an employee and any other expenses as determined by the Trustees to be the fault of such delinquent contractor.

(2) The Trustees are authorized to institute whatever federal or state, civil or criminal actions as are necessary to enforce collection. Upon collection of defaulted payroll, or bad check, employees must reimburse the Payroll and Fringe Benefits Guarantee Trust Fund. Employees shall cooperate in every manner in regard to the collection of defaulted payroll, as requested by the Trustees.

(3) The contractor must, within five (5) calendar days after notice from the Business Manager of Local Union No. 11, IBEW, make good any defaulted wages to his/her employees.

(4) On the first default of payroll payments and/or fringe benefit payments the defaulting contractor shall, upon notice from the Trustees, furnish a surety or cash bond in

-37-

an amount of Five Thousand Dollars ($5,000) as guarantee that wage payments and fringe benefit payments will be regularly made.  On the second default of payroll and/or fringe benefit payments, the defaulting contractor shall furnish a bond or equivalent of at least Ten Thousand Dollars ($10,000).  The amount of bond may also be set by the Trustees by using the following formula:

Four (4) times the weekly wages and fringe benefits for all of said signatory contractor's employees covered by this agreement.

However, the amount of bond required in this instance shall not be less than Ten Thousand Dollars ($10,000).  Failure to furnish the above-referred-to bond shall constitute cause for immediate cancellation of the Collective Bargaining Agreement at the option of the Local Union and the processing of all legal procedures necessary to enforce collection of defaulted amount, plus collection costs and interest involved.   It shall not be a violation of this Agreement for the Union to refuse to permit persons covered by this Agreement to work on said job or project until all such wages and/or fringe benefits have been paid.

(5)    Whenever a contractor has definite knowledge that he is taking over a contract for a job that has been partially completed by another contractor, he/she shall notify the Local Union, in writing, in the area before starting work.

(6)    It is understood and agreed that this Payroll and Fringe Benefits Guarantee Trust Fund is considered a joint fund covering both the Inside and Outside Agreements and groups of workmen.   Consequently, contractors who are engaged in both Inside and Outside work shall make only one payroll and fringe benefits deposit to this Trust.

.    Rules, regulations and operations of the Payroll and Fringe Benefits Guarantee Trust Fund are as set forth in the Trust Agreement.

Should the balance of the fund become lower than $500,000, the parties shall discuss and take further actions to protect the fund.

**Fringe Benefits**
**Pension Fund - Contributions**

**Section 7.20.**   Each signatory contractor shall contribute to the Southern California IBEW-NECA  Pension Trust Fund the amount established under Section 3.05 of this agreement per hour for each hour worked by each employee covered by this Agreement, except apprenticeship classifications. (See Wage Scales – Article III, Section 3.05)

**Section 7.21.**   A Board of Trustees for the Pension Trust Fund is hereby established, and shall consist of an equal number of members selected by the Union and the Chapter.   The Board of Trustees is hereby authorized to establish and implement such Trust Fund Pension Plan, Trust Agreement and reporting forms as they consider necessary to the finalization of the Pension Plan.

-38-

**Exhibit C, p. 8**

**Section 7.22.**  All disbursements shall be in accordance with the Trust Agreement.  The cost of implementing and the administration of the Pension Plan and Trust, including legal fees,  bonding of Trustees, postage, printing, etc., shall be borne by and from the Pension Trust Fund.

**Section 7.23.**  This Pension Fund, including employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement.  Mutual consent, as used herein is defined as:  A three-fourths (3/4) majority vote of the total employees covered by the plan, and a like vote of the Employers, with subsequent conformity to Section 1.03 of Article I. The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.24.**    Any signatory contractor that defaults in making contributions to the Pension Fund shall be liable for all collection and litigation expenses, including reasonable attorney's fees, court costs, liquidated damages and audit fees and expenses, as well as interest at the legal rate.

**Section 7.25.**   This Pension Fund and Trust Document will comply with and conform to all applicable laws.

### Health Fund Contributions

**Section 7.30.**  Each signatory contractor shall contribute to the Southern California IBEW-NECA Health Trust Fund the amount established under Section 3.05 of this agreement per hour for each hour worked for each employee covered by this Agreement. (See Wage Scales – Article III, Section 3.05)

**Section 7.31.**    A Board of Trustees for the Health Trust Fund is hereby established and shall consist of an equal number of members selected by the Union and the Chapter.  The Board of Trustees is hereby authorized to establish and implement such Trust Fund, Health Fund Trust Agreement and reporting forms as they consider necessary to the finalization of the Health Fund.

**Section 7.32.**  All disbursements shall be in accordance with the Trust Agreement.  The cost of implementing and the administration of the Health Fund and Trust, including legal fees, bonding of Trustees, postage, printing, etc., shall be borne by and from the Health Trust Fund.

**Section 7.33.**  This Health Fund Plan, including employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement.  Mutual consent, as used herein, is defined  as:  A three-fourths (3/4) majority vote of the total employees covered by the Plan, and a like vote of the Employers, with subsequent conformity to Section 1.03 of Article I.  The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.34.**  Any signatory contractor that defaults in making contributions to the Health Trust Fund shall be liable for all collection and litigation expenses, including reasonable

attorney's fees, court costs, liquidated damages and audit fees and expenses, as well as interest at the legal rate.

**Section 7.35.** This Health Plan and Trust Document will comply with and conform to all applicable laws.

### Supplemental Unemployment Benefit

**Section 7.36** The parties agree to develop a Supplemental Unemployment Benefit program, with the details to be mutually agreed upon by the parties.

### Credit Union Fund

**Section 7.40.** The Employer shall pay to each employee, by paying to an account maintained in his/her name at the Los Angeles Electrical Workers Credit Union (LAEWCU), a state chartered credit union, an amount equal to 12% (this percentage effective 7/28/2008) of the gross pay of each employee. This amount is not in excess of, but is a part of the wage scale, and shall be paid to the LAEWCU by remitting said amount along with other contributions to the existing "Lock Box" account.

**Section 7.41.** The accounts held in each employee's name by the LAEWCU shall be subject to such rules and regulations as the LAEWCU has adopted or may adopt pursuant to its charter.

**Section 7.42.** The employer's sole responsibility under this section shall be to pay the amounts described in Section 7.40 above.

### Union Dues Deduction

Section 7.4x The Employer shall deduct and forward to the Financial Secretary of the local union having jurisdiction, upon receipt of a voluntary written authorization, the working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union By-Laws of the local union having jurisdiction. Such amount shall be certified to the employer by the Local Union upon request by the Employer.

### Southern California IBEW, Local No. 11-NECA
### Defined Contribution Plan

**Section 7.45.** Each signatory contractor shall contribute to the Southern California IBEW Local No. 11-NECA Defined Contribution Plan the amount established under Section 3.05 of this agreement for each hour worked by each employee covered by this Agreement. This fund shall become Part "B" of the Southern California Board of Trustees that administer the

-40-

**Exhibit C, p. 10**

Southern California IBEW/NECA Pension Trust Fund. (See Wage Scale - Article III, Section 3.05).

**Section 7.46.** All disbursements shall be in accordance with the Plan adopted by the Board of Trustees. The cost of implementing and the administration of the Southern California IBEW, Local No. 11-NECA Defined Contribution Plan shall be borne by the Southern California IBEW, Local No. 11-NECA Defined Contribution Plan.

**Section 7.47.** This Southern California IBEW, Local No. 11-NECA Defined Contribution Plan, including Employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement. Mutual consent, as used herein, is defined as: A three-fourths (3/4) majority vote of the total employees covered by the Plan, and a like vote of the employers with subsequent conformity to Section 1.03 of Article I. The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.48.** This Southern California IBEW, Local No.11-NECA Defined Contribution Plan shall comply with and conform to all applicable laws.

## Southern California IBEW, Local No. 11-NECA
## 401(k) Plan

**Section 7.49.** A 401(k) or like plan (self directed plan, participation optional and tier selection and/or choice to participate may be made once a year) shall be implemented by the parties to this agreement upon full compliance with all state and federal laws. The plan shall establish two (2) tiers for journeyman wiremen at $1.00/hour and $3.00/hour and shall establish one (1) tier for apprentices at $1.00/hour.

## Time of Contributions and Monthly Reports, Delinquency
## or Failure to Make Contributions or to File Reports of all Funds

**Section 7.51.** Contributions to each of the foregoing Funds shall be due and payable on or before the tenth (10th) day of each month covering hours worked by each employee through the last payroll period in the prior calendar month. Each contractor shall file a monthly report with each Fund in the form established by the Fund, and such report shall be filed regardless of whether a contractor has employed any employees in the month covered by the report.

**Section 7.52.** Any contractor who fails to report or to make contributions due to any foregoing Fund before the fifteenth (15th) day of the month in which it is due, or who issues a non-sufficient check shall be considered delinquent and, therefore, obligated and liable and subject to the following:

Each delinquent contractor shall pay to the Fund involved liquidated damages in the amount:

-41-

1½% of the principal if late 1-30 days;
3% of the principal if late 31-60 days;
1½% will accrue for each additional thirty days late,
up to a maximum of 18% per annum.

The Trustees of the Fund involved shall, within sixty (60) days after a contractor is delinquent, instruct legal counsel to institute legal action to enforce collection. A delinquent contractor shall pay all collection and litigation expenses, including reasonable attorney's fees, court costs, liquidated damages, audit fees and expenses, as well as interest and other expenses incurred in the enforcing of collection from such contractor, and each contractor shall make applicable books and records available for such purpose.  Collection actions may be brought by the Trustees of the Fund in the name of the Fund, or in the name of the Trustees or in the name of any assignee, or agent as determined by the Trustees.

A delinquent contractor shall be liable to any employee affected by such delinquency for a sum equal to the value of the benefits lost to the employee by reason of delinquency of such contractor. A delinquent contractor shall be liable to reimburse any Fund for the cost or value of any benefits which may be made available by the Trustees to any employee affected by the failure of the delinquent contractor to contribute or to report to the Health Fund or to the Pension Fund or to any other Fund.

Individual Employers who fail to remit as provided above shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours notice, in writing, being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the Local Secretary-Treasurer.

A contractor may be absolved of any or all of the foregoing  liabilities if he/she satisfies the Trustees that he/she failed to pay any contributions or to report because of honest mistake, clerical error, or other reasons satisfactory to the Board of Trustees.

Whenever a contractor claims that his/her failure to make the required contributions was due to honest mistake or clerical error, and requests relief for that reason, it shall be considered provided the contractor agrees in writing to an audit of his/her records by an auditor appointed by the Board of Trustees.  If the audit reveals to the Trustees that such failure to pay was not due to honest mistake or clerical error, then the contractor shall pay the cost of the audit; otherwise, the Trust Fund will pay for the cost of the audit.  Any contractor shall be entitled to credit for or refund of money paid to any Trust Fund by reason of clerical error or mistake and the Trustees are authorized to refund such monies.  The acceptance of any contributions from any contractor shall not release or discharge him/her from the obligations to contribute for all hours worked under this Agreement for which no contribution has actually been received notwithstanding any statement, restriction or qualification appearing on any check from any contractor.

The following Trust Agreements are binding on all contractors employing persons covered by this Agreement:

-42-

1.  Pension Trust Agreement;  Health Trust Agreement;  Joint Apprenticeship and Educational and Training Trust Agreement; Payroll and Fringe Benefits Guarantee Trust Fund Agreement;   Credit Union Fund Agreement; the Labor-Management Cooperation Committee.

2.  Each contractor party hereto agrees to be bound by all of the obligations imposed upon the individual contractor by said Agreement.  Each contractor making contributions to each of said Funds hereby agrees that by so doing, and hereby does irrevocably designate and appoint the Employer-designated Trustees mentioned in each of said Trust Agreements, as Trustees authorized to act in his behalf pursuant to said Trust Agreements, and irrevocably ratifies the designation, selection, appointment, removal and substitution of Trustees as provided in each of said Trust Agreements.  Each contractor becoming a party to this Agreement authorizes the Trustees functioning under said Trust Agreements and the parties hereto to obtain rulings before any court or agency concerning any tax or other aspect of this Agreement, or any of the foregoing Trust Agreements, and to comply with the filing or reporting requirements of any applicable law, in behalf of all persons covered thereby.

**Section 7.53.**  It is contemplated and understood that the Pension Plan and Health Plan created  hereunder, and any trust which may be established in connection therewith, shall at all times.

(a)   Be and remain a qualified plan, payments to which are deductible to the contractors, and not current income to the employees, under the United States Internal Revenue  Act of 1954, the Revenue and Taxation  Code of the State of California, and the Bank and Corporation Tax Law of the State of California.

(b)   Be and remain such that it complies with the provisions of the California Retirement Systems Act (if applicable), the Labor-Management Relations Act of 1947, as amended, the Federal Welfare and Pension Plans Disclosure Act, and this Agreement, and as they may be amended from time to time, together with any other applicable valid State  laws or rules or regulations.

(c)  Be and remain such that contributions to the Pension Plan and Health Plan shall not be a part of the "regular rate" at which any employee is employed, according to the terms of the United States Fair Labor Standards Act and the Regulations and Interpretations of it, and shall not be subject to deductions for state or federal income tax purposes, or under or for the purposes of the California Unemployment and Disability Insurance Act, the Federal Unemployment Tax Act, the Social Security Act, or the Federal Insurance Contributions Act, or any similar legislation.

(d)  To this end,  the parties agree that they will, from time to time, promptly adopt such amendments or take such other steps as to make the provisions of the Pension Plan and Health Plan and its administration clearly conform to these laws, rules and regulations including, if necessary, amendments with retroactive effect as the circumstances may require.

-43-

**Exhibit C, p. 13**

(e)  It is further understood that the contractor's sole obligation  hereunder, and under each Plan and Trust, shall be to make such contributions as are required hereunder, and that benefits payable under the Pension Plan and Health Plan and Trusts shall be determined on a money purchase basis, or on any other basis that is actuarially sound in relation to the required contributions.

Section  7.54.   A delinquent contractor shall be cited before the Labor-Management Committee in accord with Article VII, Section 7.55 by the  Trustees or their designated representative, or any authorized party to the Agreement under the following circumstances:

1.   Issuing a check with insufficient funds in payment of wages, fringe benefits or other contributions as required by the terms and conditions of this agreement.

2.   Failure to transmit a contribution report form when due.

3.   Refusing to permit audit entry upon the request of the trustees of any trust.

4.   Failure to pay wages or contributions as disclosed by an audit performed at the request of the trustees of any trust.

(a)   Notice of hearing shall be sent at least ten (10) days prior to the scheduled hearing date.

(b)  Notice shall be sent to the Employer at the address appearing on this Agreement or any Letter of Assent, or on the list of the Secretary of the Labor-Management Committee, which address shall be the recognized address for the giving of notice.  The signatory parties hereto agree that service of the charges, the notice of hearing before the Labor-Management Committee and notice of the decision of the Labor-Management Committee shall be deemed to have been properly served upon the party cited if it is sent by Certified Mail, return receipt requested, to said Employer's recognized address.  The signatory parties hereto agree that the recognized address shall be the last known address of the person cited, and the person cited agrees that service at the recognized address will be deemed sufficient both for notice of hearing and of the decision of the Labor-Management Committee.   It shall be the affirmative duty of each signatory party hereto to keep the Local Union advised of said person's last known address if said address is different from that appearing on this Agreement or any Letter of Assent.  The signatory parties hereto waive any claim that they were not served properly if service as described above was made in accord with this Section.

Section  7.55.   The procedures of the Labor-Management Committee,  with regard to the failure to pay contributions or refusal to permit audit entry upon request of the Trustees of any Trust are set forth in Article VII, Section 7.54.

Section 7.56.   The Labor-Management Committee shall have the right not only to determine whether there has been a violation of this Agreement, but shall also have the right to devise

-44-

**Exhibit C, p. 14**

an appropriate remedy consistent with the interpretation and applicable of this Agreement, including allowance of attorney's fees, cost of enforcement and interest from the date of decision, if court proceedings are required to enforce the decision.  In addition, the Labor-Management Committee shall have the right to determine whether a party cited before these bodies has been properly cited and whether the provisions for notice have been complied with.  The Labor-Management Committee shall have the further right to determine whether a party is signatory to this Agreement, whether any particular dispute is subject to the grievance procedure of this Agreement; and shall have the right to determine any and all defenses and contentions, legal or otherwise, raised by any person.  Upon the rendering of the decision by the Labor-Management Committee,  the Chairman and Secretary may execute any written award on behalf of all the members of the Committee.

**Section 7.57.**  The Labor-Management Committee may delegate any or all of its powers and duties to the Labor-Management Subcommittee which body shall have authority to hear and determine grievances with the same force and effect of the Labor-Management Committee. Any decision of the Labor-Management Subcommittee may be appealed to the Labor-Management Committee within ten (10) days of rendition of the Arbitration Award, but where contributions are found due, the full sum of the award must be posted prior to appeal. If no appeal is taken, or if the requisite deposit is not given,  the decision of the Labor-Management Committee shall be final and binding at the end of ten (10) days.

### ARTICLE VIII
### Safety - Job Safety

**Section 8.01.**  On all energized circuits or equipment carrying 480 volts or over, as a safety measure, two (2) or more journeymen must work together, one (1) standing by wearing rubber gloves.

**Section  8.02.**  All drivers and passengers riding in Company vehicles must comply with CAL/OSHA Safety Standards.

### Insurance

**Section  8.05.**  Electrical contractors shall post in every truck, and on every job, the name of their Workers' Compensation and Disability Insurance Carriers, and a list of doctors and medical facilities available in case of job injury.

### Drug and Alcohol Policy

**Section 8.06.** The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component.  The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all

-45-

**Exhibit C, p. 15**

applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

**Section 8.08.** This Collective Bargaining Agreement shall supersede the requirements of Chapter 2.203 (Contractor Employee Jury Service) of the Los Angeles County Code.

**Section 8.09.** Fringe benefits provided under this Collective Bargaining Agreement shall conform to the requirements of the City of Los Angeles' Equal Benefits Ordinance.

## Separability Clause

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

## General Savings Clause

If any portion of this Agreement may not be put into effect because of applicable Legislation, Executive Orders or Regulations, then such portions, or any part thereof, shall become effective at such time, in such amounts, and for such periods, as will be permitted by law at any time during the life of this Agreement and any extension thereof.

Whenever the masculine gender is used in this Agreement, the female gender is also intended.

## Article XII

## Code Of Excellence

Section 12.01. The Parties to this agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism and productivity. The Code of Excellence has proven to be a vital element in meeting the customer's expectations. Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The Program shall include the minimum standards as designed by the IBEW and NECA. Specific Program language subject to approval by both parties to this agreement.

-46-

**Exhibit C, p. 16**

Negotiated by Local Union 11, IBEW and Los Angeles County Chapter, National Electrical Contractors Association.

Effective Date: July 1, 2014.

Signed For:

LOCAL UNION NO. 11, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

_____ /ss
Business Manager
Marvin Kropke

_____ /ss
President
Richard Reed


Signed For:

LOS ANGELES COUNTY CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION

_____ /ss
Chapter Manager
James M. Willson

_____ /ss
President
Fred Neubauer

-47-

**Exhibit C, p. 17**

# INSIDE WIREMEN'S AGREEMENT

## BETWEEN

## LOCAL UNION 11
## INTERNATIONAL BROTHERHOOD OF
## ELECTRICAL WORKERS

## AND

## LOS ANGELES COUNTY CHAPTER
## NATIONAL ELECTRICAL CONTRACTORS
## ASSOCIATION

## 2014 – 2019

more than one hundred feet in length from a plug-in box for the use of not more than two (2) lamps, temporary power or power devices to the source of temporary wiring) provided for under this Agreement.

Performs rigging, forklift operations, movement and transport of all electrical equipment and material by any means.

Performs high voltage cable splicing and terminations, breaker testing, commission and decommission of electrical control systems.

Cleans, services, repairs, operates and adjusts high and low voltage switchgear, transformers, conductors, connectors, fuses, and buses.    Performs operations, maintenance and repair of wharf-side high voltage electrical power connections, circuit protection devices and associated switchgear, ship based electrical power connections, barge mounted high voltage electrical equipment, and other related systems to facilitate the Alternative Maritime Power (AMP) ship to shore electrical power and other high voltage, marine terminal electrical power distribution and control systems.

Installs boxes, components, fittings, fastners, vaults, grounding, ground rods, ground clamps, building automated systems, and lighting controls. Performs cadwelding.

Installs DC power system, micro grids, batteries, energy storage systems, energy management system, racking and stacking of all electrical components, wireless systems and controls, metering, measurement and verification of systems, control dashboards, WLAN systems, lightning suppression grounding systems, acceptance testing, conduit duct banks, subsurface imaging, radar and radiographing, infrared controls and testing, IP addressing, plug load controls, parking lot lighting and systems, chasing and channeling, solar and photovoltaic systems, racking and stacking of solar/PV panels, and all electrical systems in their entirety that require electrical inspection is covered under this agreement.

### BASIC PRINCIPLES

The Chapter and the Union have a common and sympathetic interest in the Electrical Industry.  Therefore, a working system and harmonious relations are necessary to improve the relationship between the Chapter, the Union and the Public.  Progress in the industry demands a mutuality of confidence between the Chapter and the Union.  All will benefit by continuous peace and by adjusting any difference by rational, common sense methods.

In accordance with the Federal Government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against employee or applicant for employment because of race, religion, color, age, sex, creed, national origin or disability.

The Employers recognize the Union as the sole collective bargaining agency between itself and the employees covered under this Agreement.

**Section 5.04**. There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunication apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

**Section 5.05**. The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualification, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

**Section 5.06**. To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprentices with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

**Section 5.07**. All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures. An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at some time in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

**Section 5.08**. The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture a total number of apprentices not to exceed a ratio of one (1) apprentice to (3) Journeyman Wiremen normally employed under a collective bargaining agreement. The JATC shall indenture a larger number of apprentices provided the individuals are entering the program as the result of direct-entry through organizing; as provided for in the registered apprenticeship standards.

**Section 5.09**. Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make reasonable efforts to

honor the request. If the JATC is unable to fill the request within ten (10) working days, and if the JATC has fewer indentured apprentices than permitted by its allowable ratio, they shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

**Section 5.10.** To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualification for apprenticeship. Unindentured workers shall not remain employed if apprentices become available for OJT assignment. Unindentured workers shall be used to meet job site ratios except on wage and hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the employer, agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that are not to work on wage and hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship. The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

**Section 5.11.** The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured. Contributions to other benefit plans may be addressed in other sections of this agreement.

**Section 5.12.** Each job site shall be allowed a ratio of two (2) apprentices for every three (3) Journeyman Wiremen or fraction thereof as illustrated below.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| 7 to 9 | 6 |
| 97 to 99, etc. | 66, etc. |

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

34

**Section 5.13.** An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices, who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeymen Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Section 5.14.** Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this Agreement.

**Section 5.15.** The parties to this Agreement shall be bound by the Local Joint Apprenticeship Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Section 5.16.** All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties' signatory to the local apprenticeship and training trust agreement. For the current rate of contribution refer to Article III, Section 3.05 of this agreement. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

### ARTICLE VI
### National Employees Benefit Fund

**Section 6.01.** It is agreed that in accord with the National Employees Benefit Agreement entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, that unless authorized otherwise by the National Employees Benefit Board, the individual Employer will forward monthly to the designated Local Secretary-Treasurer an amount equal to three

35

percent (3%) of his gross monthly labor payroll, which he/she is obligated to pay to the employees in this bargaining unit, and a completed payroll report prescribed by the National Board. The payment shall be made by check or draft and shall constitute a debt due and owing to the National Board on the last day of each calendar month, which may be recovered by suit initiated by the National Board or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate Local Secretary-Treasurer not later than fifteen (15) calendar days following the end of each calendar month.

Individual Employers who fail to remit as provided above shall be additionally subject to having this agreement terminated upon seventy-two (72) hours' notice, in writing, being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the Local Secretary-Treasurer. The failure of an individual Employer to comply with the applicable provisions of the National Employees Benefit Agreement shall also constitute a breach of this Labor Agreement.

## ARTICLE VII
### National Electrical Industry Fund

**Section 7.01**. Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll, as determined by each Local Chapter and approved by the Trustees, with the following exclusions:

    1. Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year, but not exceeding 150,000 man-hours.

    2. One Hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages (including overtime) paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted).

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

### CONTRACT COMPLIANCE FUND

**Section 7.02** Contract Compliance Fund – Each employer shall contribute 0.5% of the productive payroll for work performed under this agreement.

**Exhibit D, p. 6**

The fund shall be administered solely by the Association and shall be utilized to pay for administration services performed on behalf of all signatory employers, such as marketing the benefits of IBEW contractors to construction users, promoting project labor agreements, and service on all funds as required by federal law. The amount of this contribution is included in, and is not in addition to, the amount paid by NECA members to the NEIF.

The C.C.F. contribution shall be submitted with all other fringe benefits as delineated in the Labor Agreement by the fifteenth (15th) of the following month in which they are due to the Administrator receiving funds. In the event any employer is delinquent in submitting the required Contract Compliance Fund to the designated Administrator, the Administrator shall have the authority to recover any funds, along with attorney fees, court costs, interest and liquidated damages as required with all other fringe benefits as delineated in the Labor Agreement receiving such funds. The enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the employer and not the Local union. These monies shall not be used to the detriment of the IBEW.

### IBEW Political Education Fund

**Section 7.03** An IBEW Political Education (COPE) fund will be established upon adoption of mutually agreed to language by the parties, but administered solely by IBEW Local 11. Contributions to the fund will be employee deductions.

### Labor-Management Cooperation Committee

**Section 7.05.** Each employee covered by the terms of the agreement shall contribute, through a payroll deduction, the amount specified by Article III Section 3.05, into the Local 11, I.B.E.W.-Los Angeles County Chapter, N.E.C.A. Labor-Management Cooperation Committee. Each Employer shall make the deduction for each hour worked and shall forward the total amount for all employees covered by this agreement and on a monthly basis transmitted on a form furnished and prescribed by the Trustees of the Fund.

**Section 7.06** All Employers subject to the terms of this agreement shall contribute, the amount specified by Article III Section 3.05, for each hour worked for the purpose of maintaining the Local 11, I.B.E.W.- Los Angeles County Chapter, N.E.C.A. Labor-Management Cooperation Committee. This sum shall be forwarded monthly to the Trust.

**Section 7.07.** A Board of Trustees for the Labor-Management Cooperation Committee is hereby established and shall consist of an equal number of members selected by the Union and the Chapter. The Board of Trustees is hereby authorized to establish and implement such Trust Fund, Trust Fund Agreement, and reporting forms as they consider necessary to administer the plan.

37

**Exhibit D, p. 7**

**Payroll and Fringe Benefits Guarantee Trust Fund**

**Section 7.10**. Each electrical contractor employing workmen under the terms of this Agreement shall deposit One Hundred Dollars ($100.00), free of interest, for a payroll and fringe benefits guarantee (including Credit Union Fund) up to Seventy-Five Thousand Dollars ($75,000.00) of payroll, but not over that amount, with the Trustees who shall function under a Trust Agreement to be agreed upon between the parties. If at any time, the interest accrued in the Payroll and Fringe Benefits Guarantee Trust Fund is depleted, each signatory contractor shall make an additional deposit into such fund of any amount up to One Hundred Dollars ($100.00), making a total of Two Hundred Dollars ($200.00) maximum. Notice of such additional deposit shall be given by the Labor-Management Committee.

Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Trust Fund to be agreed upon between the parties. Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Trust Fund in a total amount not to exceed Five Thousand Dollars ($5,000.00) maximum per employee.

A contractor who makes the payroll and fringe benefits deposit, and pays wages and fringe benefits to employees covered by this agreement, shall be absolved from all responsibilities with respect thereto. This payroll and fringe benefits deposit is in no respect a bond covering the contractor's payroll and fringe benefits obligation, but only an emergency fund to relieve employees' financial strain caused by issuing of bad checks or failure of contractors to meet payroll, or failure of contractors to make fringe benefit contributions as provided in this agreement. If the contractor defaults in the foregoing, his/her liability shall be as set forth in the Trust Agreement but shall, in any event, include the following:

(1) The contractor shall be liable for cost of enforcing collection, including but not limited to court costs, attorney fees, loss of earnings of an employee not paid, fringe benefits lost to an employee and any other expenses as determined by the Trustees to be the fault of such delinquent contractor.

(2) The Trustees are authorized to institute whatever federal or state, civil or criminal actions as are necessary to enforce collection. Upon collection of defaulted payroll, or bad check, employees must reimburse the Payroll and Fringe Benefits Guarantee Trust Fund. Employees shall cooperate in every manner in regard to the collection of defaulted payroll, as requested by the Trustees.

(3) The contractor must, within five (5) calendar days after notice from the Business Manager of Local Union No. 11, IBEW, make good any defaulted wages to his/her employees.

(4) On the first default of payroll payments and/or fringe benefit payments the defaulting contractor shall, upon notice from the Trustees, furnish a surety or cash bond in an amount of Five Thousand Dollars ($5,000) as guarantee that wage payments and fringe benefit payments will be regularly made. On the second default of payroll and/or fringe

38

benefit payments, the defaulting contractor shall furnish a bond or equivalent of at least Ten Thousand Dollars ($10,000).  The amount of bond may also be set by the Trustees by using the following formula:

Four (4) times the weekly wages and fringe benefits for all of said signatory contractor's employees covered by this agreement.

However, the amount of bond required in this instance shall not be less than Ten Thousand Dollars ($10,000).  Failure to furnish the above-referred-to bond shall constitute cause for immediate cancellation of the Collective Bargaining Agreement at the option of the Local Union and the processing of all legal procedures necessary to enforce collection of defaulted amount, plus collection costs and interest involved.  It shall not be a violation of this Agreement for the Union to refuse to permit persons covered by this Agreement to work on said job or project until all such wages and/or fringe benefits have been paid.

(5) Whenever a contractor has definite knowledge that he is taking over a contract for a job that has been partially completed by another contractor, he/she shall notify the Local Union, in writing, in the area before starting work.

(6) It is understood and agreed that this Payroll and Fringe Benefits Guarantee Trust Fund is considered a joint fund covering both the Inside and Outside Agreements and groups of workmen.    Consequently, contractors who are engaged in both Inside and Outside work shall make only one payroll and fringe benefits deposit to this Trust.

Rules, regulations and operations of the Payroll and Fringe Benefits Guarantee Trust Fund are as set forth in the Trust Agreement.

Should the balance of the fund become lower than $500,000, the parties shall discuss and take further actions to protect the fund.

### Fringe Benefits
### Pension Fund - Contributions

**Section 7.20**. Each signatory contractor shall contribute to the Southern California IBEW-NECA Pension Trust Fund the amount established under Section 3.05 of this agreement per hour for each hour worked by each employee covered by this Agreement, except apprenticeship classifications.  (See Wage Scales - Article III, Section 3.05)

**Section 7.21**. A Board of Trustees for the Pension Trust Fund is hereby established, and shall consist of an equal number of members selected by the Union and the Chapter.  The Board of Trustees is hereby authorized to establish and implement such Trust Fund Pension Plan, Trust Agreement and reporting forms as they consider necessary to the finalization of the Pension Plan.

**Section 7.22.** All disbursements shall be in accordance with the Trust Agreement.  The cost of implementing and the administration of the Pension Plan and Trust, including legal fees,

39

bonding of Trustees, postage, printing, etc., shall be borne by and from the Pension Trust Fund.

**Section 7.23**. This Pension Fund, including employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement. Mutual consent, as used herein is defined as: A three-fourths (3/4) majority vote of the total employees covered by the plan, and a like vote of the Employers, with subsequent conformity to Section 1.03 of Article I. The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.24**. Any signatory contractor that defaults in making contributions to the Pension Fund shall be liable for all collection and litigation expenses, including reasonable attorney's fees, court costs, liquidated damages and audit fees and expenses, as well as interest at the legal rate.

**Section 7.25**. This Pension Fund and Trust Document will comply with and conform to all applicable laws.

### Health Fund Contributions

**Section 7.30.** Each signatory contractor shall contribute to the Southern California IBEW-NECA Health Trust Fund the amount established under Section 3.05 of this agreement for each hour worked by each employee covered by this Agreement. (See Wage Scales - Article III, Section 3.05)

**Section 7.31**. A Board of Trustees for the Health Trust Fund is hereby established and shall consist of an equal number of members selected by the Union and the Chapter. The Board of Trustees is hereby authorized to establish and implement such Trust Fund, Health Fund Trust Agreement and reporting forms as they consider necessary to the finalization of the Health Fund.

**Section 7.32**. All disbursements shall be in accordance with the Trust Agreement. The cost of implementing and the administration of the Health Fund and Trust, including legal fees, bonding of Trustees, postage, printing, etc., shall be borne by and from the Health Trust Fund.

**Section 7.33**. This Health Fund Plan, including employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement. Mutual consent, as used herein, is defined as: A three-fourths (3/4) majority vote of the total employees covered by the Plan, and a like vote of the Employers, with subsequent conformity to Section 1.03 of Article I. The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.34**. Any signatory contractor that defaults in making contributions to the Health Trust Fund shall be liable for all collection and litigation expenses, including reasonable

40

attorney's fees, court costs, liquidated damages and audit fees and expenses, as well as interest at the legal rate.

**Section 7.35**. This Health Plan and Trust Document will comply with and conform to all applicable laws.

## Supplemental Unemployment Benefit

The parties agree to develop a Supplemental Unemployment Benefit program, with the details to be mutually agreed upon by the parties.

## Credit Union Fund

**Section   7.40**.  The Employer shall pay to each employee, by paying to an account maintained in his/her name at the Los Angeles Electrical Workers Credit Union (LAEWCU), a state chartered credit union, an amount equal to 12% of the gross pay of each employee. This amount is not in excess of, but is a part of the wage scale, and shall be paid to the LAEWCU by remitting said amount along with other contributions to the existing "Lock Box" account.

**Section 7.41**. The accounts held in each employee's name by the LAEWCU shall be subject to such rules and regulations as the LAEWCU has adopted or may adopt pursuant to its charter.

**Section 7.42**. The employer's sole responsibility under this section shall be to pay the amounts described in Section 7.40 above.

## Union Dues Deduction

**Section 7.44.**  The Employer shall deduct and forward to the Financial Secretary of the local union having jurisdiction, upon receipt of a voluntary written authorization, the working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union By-Laws of the local union having jurisdiction. Such amount shall be certified to the employer by the Local Union upon request by the Employer.

## Southern California IBEW, Local No. 11-NECA
## Defined Contribution Plan

**Section 7.45**. Each signatory contractor shall contribute to the Southern California IBEW Local Union 11-NECA Defined Contribution Plan the amount established under Section 3.05 of this agreement for each hour worked by each employee covered by this Agreement. This fund shall become Part "B" of the Southern California Board of Trustees that administers the

41

Southern California IBEW/NECA Pension Trust Fund. (See Wage Scale - Article III, Section 3.05).

**Section 7.46**. All disbursements shall be in accordance with the Plan adopted by the Board of Trustees. The cost of implementing and the administration of the Southern California IBEW, Local Union 11-NECA Defined Contribution Plan shall be borne by the Southern California IBEW, Local Union 11-NECA Defined Contribution Plan.

**Section 7.47**. This Southern California IBEW, Local Union 11-NECA Defined Contribution Plan, including Employer contributions, shall be irrevocable except by mutual consent of the parties to this Collective Bargaining Agreement. Mutual consent, as used herein, is defined as: A three-fourths (3/4) majority vote of the total employees covered by the Plan, and a like vote of the employers with subsequent conformity to Section 1.03 of Article I. The provisions of the plan trust and documents shall have control as to plan benefits and rights not specifically addressed herein.

**Section 7.48**. This Southern California IBEW, Local Union 11-NECA Defined Contribution Plan shall comply with and conform to all applicable laws.

### Southern California IBEW, Local No. 11-NECA
### 401(k) Plan

**Section 7.49.**  A 401(k) or like plan (self directed plan, participation optional and tier selection and/or choice to participate may be made once a year) shall be implemented by the parties to this agreement upon full compliance with all state and federal laws. The plan shall establish two (2) tiers for journeyman wiremen at $1.00/hour and $3.00/hour and shall establish one (1) tier for apprentices at $1.00/hour.

### Time of Contributions and Monthly Reports, Delinquency
### or Failure to Make Contributions or to File Reports of all Funds

**Section 7.51**. Contributions to each of the foregoing Funds shall be due and payable on or before the tenth (10th) day of each month covering hours worked by each employee through the last payroll period in the prior calendar month. Each contractor shall file a monthly report with each Fund in the form established by the Fund, and such report shall be filed regardless of whether a contractor has employed any employees in the month covered by the report.

**Section 7.52**. Any contractor who fails to report or to make contributions due to any foregoing Fund before the fifteenth (15th) day of the month in which it is due, or who issues a non-sufficient check shall be considered delinquent and, therefore, obligated and liable and subject to the following:

Each delinquent contractor shall pay to the Fund involved liquidated damages in the amount of 1½% of the principal if late 1-30 days; 3% of the principal if late 31-60 days; 1½% will

42

**Exhibit D, p. 12**

accrue for each additional thirty days late, up to a maximum of 18% per annum of the indebtedness or ten dollars ($10.00) for each month of delinquency, whichever is the greater.

The Trustees of the Fund involved shall, within sixty (60) days after a contractor is delinquent, instruct legal counsel to institute legal action to enforce collection. A delinquent contractor shall pay all collection and litigation expenses, including reasonable attorney's fees, court costs, liquidated damages, audit fees and expenses, as well as interest and other expenses incurred in the enforcing of collection from such contractor, and each contractor shall make applicable books and records available for such purpose. Collection actions may be brought by the Trustees of the Fund in the name of the Fund, or in the name of the Trustees or in the name of any assignee, or agent as determined by the Trustees.

A delinquent contractor shall be liable to any employee affected by such delinquency for a sum equal to the value of the benefits lost to the employee by reason of delinquency of such contractor. A delinquent contractor shall be liable to reimburse any Fund for the cost or value of any benefits which may be made available by the Trustees to any employee affected by the failure of the delinquent contractor to contribute or to report to the Health Fund or to the Pension Fund or to any other Fund.

Individual Employers who fail to remit as provided above shall be additionally subject to having this Agreement terminated upon seventy-two (72) hours notice, in writing, being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the Local Secretary-Treasurer.

A contractor may be absolved of any or all of the foregoing liabilities if he/she satisfies the Trustees that he/she failed to pay any contributions or to report because of honest mistake, clerical error, or other reasons satisfactory to the Board of Trustees.

Whenever a contractor claims that his/her failure to make the required contributions was due to honest mistake or clerical error, and requests relief for that reason, it shall be considered provided the contractor agrees in writing to an audit of his/her records by an auditor appointed by the Board of Trustees. If the audit reveals to the Trustees that such failure to pay was not due to honest mistake or clerical error, then the contractor shall pay the cost of the audit; otherwise, the Trust Fund will pay for the cost of the audit. Any contractor shall be entitled to credit for or refund of money paid to any Trust Fund by reason of clerical error or mistake and the Trustees are authorized to refund such monies. The acceptance of any contributions from any contractor shall not release or discharge him/her from the obligations to contribute for all hours worked under this Agreement for which no contribution has actually been received notwithstanding any statement, restriction or qualification appearing on any check from any contractor.

The following Trust Agreements are binding on all contractors employing persons covered by this Agreement:

    1. Pension Trust Agreement; Health Trust Agreement; Joint Apprenticeship and Educational and Training Trust Agreement; Payroll and Fringe Benefits Guarantee Trust

Fund Agreement;   Credit Union Fund Agreement; the Labor-Management Cooperation Committee.

2. Each contractor party hereto agrees to be bound by all of the obligations imposed upon the individual contractor by said Agreement.  Each contractor making contributions to each of said Funds hereby agrees that by so doing, and hereby does irrevocably designate and appoint the Employer-designated Trustees mentioned in each of said Trust Agreements, as Trustees authorized to act in his behalf pursuant to said Trust Agreements, and irrevocably ratifies the designation, selection, appointment, removal and substitution of Trustees as provided in each of said Trust Agreements.  Each contractor becoming a party to this Agreement authorizes the Trustees functioning under said Trust Agreements and the parties hereto to obtain rulings before any court or agency concerning any tax or other aspect of this Agreement, or any of the foregoing Trust Agreements, and to comply with the filing or reporting requirements of any applicable law, in behalf of all persons covered thereby.

**Section 7.53**. It is contemplated and understood that the Pension Plan and Health Plan created  hereunder, and any trust which may be established in connection therewith, shall at all times:

(a) Be and remain a qualified plan, payments to which are deductible to the contractors, and not current income to the employees, under the United States Internal Revenue Act of 1954, the Revenue and Taxation Code of the State of California, and the Bank and Corporation Tax Law of the State of California.

(b) Be and remain such that it complies with the provisions of the California Retirement Systems Act (if applicable), the Labor-Management Relations Act of 1947, as amended, the Federal Welfare and Pension Plans Disclosure Act, and this Agreement, and as they may be amended from time to time, together with any other applicable valid State laws or rules or regulations.

(c) Be and remain such that contributions to the Pension Plan and Health Plan shall not be a part of the "regular rate" at which any employee is employed, according to the terms of the United States Fair Labor Standards Act and the Regulations and interpretations of it, and shall not be subject to deductions for state or federal income tax purposes, or under or for the purposes of the California Unemployment and Disability Insurance Act, the Federal Unemployment Tax Act, the Social Security Act, or the Federal Insurance Contributions Act, or any similar legislation.

(d) To this end, the parties agree that they will, from time to time, promptly adopt such amendments or take such other steps as to make the provisions of the Pension Plan and Health Plan and its administration clearly conform to these laws, rules and regulations including, if necessary, amendments with retroactive effect as the circumstances may require.

44

(e) It is further understood that the contractor's sole obligation hereunder, and under each Plan and Trust, shall be to make such contributions as are required hereunder, and that benefits payable under the Pension Plan and Health Plan and Trusts shall be determined on a money purchase basis, or on any other basis that is actuarially sound in relation to the required contributions.

**Section 7.54**. A delinquent contractor shall be cited before the Labor-Management Committee in accord with Article VII, Section 7.55 by the Trustees or their designated representative, or any authorized party to the Agreement under the following circumstances:

1. Issuing a check with insufficient funds in payment of wages, fringe benefits or other contributions as required by the terms and conditions of this agreement.

2. Failure to transmit a contribution report form when due.

3. Refusing to permit audit entry upon the request of the trustees of any trust.

4. Failure to pay wages or contributions as disclosed by an audit performed at the request of the trustees of any trust.

(a) Notice of hearing shall be sent at least ten (10) days prior to the scheduled hearing date.

(b) Notice shall be sent to the Employer at the address appearing on this Agreement or any Letter of Assent, or on the list of the Secretary of the Labor-Management Committee, which address shall be the recognized address for the giving of notice. The signatory parties hereto agree that service of the charges, the notice of hearing before the Labor-Management Committee and notice of the decision of the Labor-Management Committee shall be deemed to have been properly served upon the party cited if it is sent by Certified Mail, return receipt requested, to said Employer's recognized address. The signatory parties hereto agree that the recognized address shall be the last known address of the person cited, and the person cited agrees that service at the recognized address will be deemed sufficient both for notice of hearing and of the decision of the Labor-Management Committee. It shall be the affirmative duty of each signatory party hereto to keep the Local Union advised of said person's last known address if said address is different from that appearing on this Agreement or any Letter of Assent. The signatory parties hereto waive any claim that they were not served properly if service as described above was made in accord with this Section.

**Section 7.55**. The procedures of the Labor-Management Committee, with regard to the failure to pay contributions or refusal to permit audit entry upon request of the Trustees of any Trust are set forth in Article VII, Section 7.54.

**Section 7.56**. The Labor-Management Committee shall have the right not only to determine whether there has been a violation of this Agreement, but shall also have the right to devise an appropriate remedy consistent with the interpretation and applicable of this Agreement,

**Exhibit D, p. 15**

Negotiated by Local Union 11, IBEW and Los Angeles County Chapter, National Electrical Contractors Association.

Effective Date:   July 1, 2014

Signed For:

LOCAL UNION NO. 11, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

_____ /ss
Business Manager
Marvin Kropke

_____ /ss
President
Richard Reed


Signed For:

LOS ANGELES COUNTY CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION

_____ /ss
Chapter Manager
James M. Willson

_____ /ss
President
Fred Neubauer

50

**Exhibit D, p. 16**

September 1, 2014 – August 31, 2019

# INSIDE WIREMAN'S

# AGREEMENT

Between

## Orange County Chapter

National Electrical Contractors Association, Inc.

and

## Local Union No. 441

International Brotherhood of Electrical Workers

Inside Wireman Agreement                                           September 1, 2014 through August 31, 2019
Local 441 IBEW – Orange County, NECA

## AGREEMENT

Agreement by and between the Orange County Chapter, National Electrical Contractors Association and Local Union 441, International Brotherhood of Electrical Workers. It shall apply to all firms who sign a letter of Assent to be bound by the terms of this Agreement. As used hereinafter in this Agreement, the term "Chapter" shall mean the Orange County Chapter, National Electrical Contractors Association and the term "Union" shall mean Local Union 441, IBEW. The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union and the public. Progress in industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences by rational common-sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## SCOPE OF WORK

### ELECTRICAL - ELECTRONIC WORK

This agreement covers the installation, construction and maintenance of any electrical system that is covered by the National Electrical Code. The contractor and the workers employed under the terms of this agreement shall perform the following work: The handling and moving of all electrical or electronic material, equipment, apparatus or appliances; install all raceways; temporary or permanent whether inside, outdoors, underground, concealed, surface or overhead, and poles specifically used to support electrical fixtures or equipment. Raceways are to include any enclosed metallic or nonmetallic materials designed expressly for holding electrical wires, cables or bus bars. The installation of bonding and grounding systems, current carrying conductors, fiber optic conductors, photo-voltaic systems, cables, pull ropes or wires and the operation of equipment to install such; all electrical or electronic construction and erection work; installation and connecting of motors, generators, all fixtures, area light diffusing systems, appliances, and electrical maintenance thereon. The work shall also include such work as installing new light bulbs and lamps, ballasts, adjusting, focusing or refocusing or operation of any permanent or temporary flood lighting systems, including parking lot lighting. Installation of all electrical and electronic equipment, electronic systems, communication systems with all related control wiring and devices, up to and including the final running test and any related instrumentation work or radiation monitoring under the prevailing scale. Such work as welding, burning, brazing, bending, drilling and shaping of all copper, channel iron, angle iron, I beams and brackets to be used in connection with the installation and erection of electrical wiring or equipment. The installation of chasing and channeling necessary to any electrical or electronic work, the installation and maintenance of all temporary wiring and of all electrical lighting, heating and power equipment. The cutting, threading, bending of all conduit by hand or machine and installation of such conduit. The work also covers the installation of street lighting, traffic signals and intelligent transportation systems and all associated work.

### MAINTENANCE AND TEMPORARY WIRING

Workmen employed under the terms of this Agreement shall do all electrical construction, installation or erection work and all electrical maintenance thereon, including the final running tests. This shall include the installation and maintenance of temporary wiring and the installation and maintenance of all electrical lighting, heat and power equipment.

**Routine Maintenance and Repair**; including replacing existing electrical, electronic systems, equipment, appliances, lighting fixtures and lamps. No new additions to existing facilities or

1

Inside Wireman Agreement                                       September 1, 2014 through August 31, 2019
Local 441 IBEW – Orange County, NECA

If the registration list is exhausted and the Local Union is unable to refer a Transportation Systems Technician or a 7th or 8th period apprentice for employment to the employer within forty-eight (48) hours from the time of receiving the Employer's request, Saturdays, Sundays, holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure but, such applicants, if hired shall have the status of "temporary employee."

The Employer shall notify the Business Manager promptly of the names and social security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

"Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto, which includes the area from which the normal labor supply is secured:

**ORANGE COUNTY IN ITS ENTIRETY.**

The above geographical area is agreed upon by the parties to include areas defined by the Secretary of Labor to be the appropriate prevailing wage area under the Davis Bacon Act to which this Agreement applies.

## ARTICLE I
## EFFECTIVE DATE / CHANGES / GRIEVANCES / DISPUTES

**EFFECTIVE DATE**
**SECTION 1.1**  This Agreement shall take effect September 1, 2014, and shall remain in effect until August 31, 2019, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from September 1 through August 31, of each year, unless changed or terminated in the way later provided herein.

**CHANGES**
**SECTION 1.2**
(a)   Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b)   Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c)   The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)   Unresolved issues or disputes arising out of failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication.  Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date.  The Council's decision shall be final and binding.

(e)   When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f)   Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**SECTION 1.3**  This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the I.B.E.W. for approval, the same as this Agreement.

6

Inside Wireman Agreement
Local 441 IBEW – Orange County, NECA

September 1, 2014 through August 31, 2019

**REBATE OF WAGES**
**SECTION 9.8**  No Employer or workman or their agents shall give or accept, directly or indirectly, any rebate of wages. Any Employer found violating this provision shall be subject to having this Agreement terminated upon written notice thereof being given by the Union.

## ARTICLE X
## FRINGE BENEFITS

### 10.1  TIME AND METHOD OF PAYMENT  -  DELINQUENT EMPLOYER
Contributions to the Funds listed below shall be due and payable on or before the tenth (10th) day of each month covering hours worked by each employee through the last payroll period in the prior calendar month. Each Employer shall file a monthly report in the form established by the parties to this Agreement, and such report shall be filed regardless of whether an Employer has employed any employees in the month covered by the report.  The funds are:

> National Electrical Benefit Fund,
> Southern California IBEW – NECA Pension Fund,
> Orange County IBEW – NECA Electrical Workers Defined Contribution Plan,
> NECA – IBEW Family Medical Care Plan,
> National Electrical Industry Fund, Vacation Fund,
> Orange County Electrical Joint Apprenticeship and Training Trust Fund,
> Orange County IBEW – NECA Labor Management Cooperative Trust ,
> National Labor Management Cooperation Fund,
> IBEW Local Union #441 Dues Deduction,
> IBEW Education Fund, Electrical Industry Administrative Maintenance Fund,
> and if applicable, National Electrical Contractors Association service charges.

Each Employer shall file a monthly payroll report for all funds using the NECA-STAR reporting system. Reports shall be filed with the Electrical Industry accounts department of the Orange County Chapter, NECA.

Any Employer who fails to report or to make contributions due to any of the listed Funds before the fifteenth (15th) day of the month in which they are due shall be considered delinquent. The Union may, with 24 hours notice to the delinquent Employer, withdraw the bargaining unit employees in order to protect against further loss until delinquencies are resolved.

The Funds shall be entitled to collect from the delinquent employer Liquidated Damages in the amount of 1.5% of any amounts delinquent for 1-31 calendar days.  Liquidated Damages shall accrue thereafter at 1.5% of the principal amount per month past due. The Funds may recover from the delinquent employer reasonable collection costs, attorneys' fees, and interest.

**NEBF**
**SECTION 10.2**  It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF.  The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee.  The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

21

Inside Wireman Agreement
Local 441 IBEW – Orange County, NECA

September 1, 2014 through August 31, 2019

The individual employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An individual employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this labor agreement.

**DEFINED BENEFIT PLAN**
**SECTION 10.3**   Each Employer shall contribute to the Southern California IBEW – NECA Pension Fund on behalf of each employee covered by this Agreement the amount shown in Appendix 1.   This Pension Fund and Trust Document shall comply with and conform to all applicable laws.

**DEFINED CONTRIBUTION PLAN**
**SECTION 10.4**   Each employer shall make contributions to the Orange County IBEW – NECA Electrical Workers Defined Contribution Plan for all classifications as shown in Appendix 1.   All disbursements shall be in accordance with the Plan adopted by the Board of Trustees.

This Plan, including Employer contributions, shall be irrevocable except by mutual consent of the parties to this collective bargaining agreement.   The provisions of the plan trust and documents shall control as to plan benefits and rights not specifically addressed herein. This Plan shall shall comply with and conform to all applicable laws.

**HEALTH AND WELFARE**
**SECTION 10.5**   The Employer agrees to pay Health & Welfare benefits for all workmen employed under the terms of this Agreement, the amounts shown in Appendix 1.   These payments shall be made each month into the NECA – IBEW Family Medical Care Plan, jointly established for this purpose and administered in compliance with Federal and State regulations governing health and welfare plans.

**NATIONAL ELECTRICAL INDUSTRY FUND (NEIF)**
**SECTION 10.6**   Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

(1)   Twenty-five (25%) percent of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one (1) calendar year but not exceeding 150,000 man-hours.

(2)   One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one (1) calendar year.

(Productive electrical payroll is defined as the total wages including overtime paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual employer.

**VACATION FUND**
**SECTION 10.7**   Each individual Employer, upon substantiation of voluntary authorization, shall withhold seven percent (7%) of each covered employee's gross pay to be forwarded monthly to the

22

American First Credit Union. These deductions shall be deposited to individual accounts at the American First Credit Union, (AFCU) maintained in the name of each individual covered employee.

The accounts held in each employee's name by AFCU shall be subject to such rules and regulations as adopted by the AFCU after approval by the parties to this Agreement. The employer's sole responsibility under this Section shall be to pay the amounts described above.

Requests for a change in the withholding of vacation deduction shall be made to the Local Union by April 15th of each year on an approved form and in accordance with the rules and regulations adopted by the Union and approved by the Chapter. The Union, upon receipt of a request to change vacation withholding shall notify the employer of such change by May 1st for implementation on the first day of the first payroll period of June. New employees may elect to have vacation deductions withheld at the time of dispatch.

Any employee not providing an approved request for vacation deduction shall not have any monies withheld.

## APPRENTICESHIP CONTRIBUTION
**SECTION 10.8**   Each Employer subject to the terms of this Agreement shall contribute the amount designated in Appendix 1, per hour, for each hour worked by all employees covered under the terms of this Agreement into the Orange Country Electrical Joint Apprenticeship and Training Trust Fund.

## JOINT COOPERATIVE TRUST (Orange County LMCC)
**SECTION 10.9**   There shall be an Employer contribution and an employee wage deduction in the amounts shown in Appendix 1.

## ORANGE COUNTY IBEW-NECA LABOR MANAGEMENT COOPERATIVE COMMITTEE
**SECTION 10.10**   The parties agree to participate in a Labor-Management Cooperation Fund, under authority of Section 6 (b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175 (a) and Section 302 (c) (9) of the Labor-Management Relations Act, 29 U.S.C. §186 (c) (9).  The purposes of this Fund include the following:

1) to improve communications between representatives of Labor and Management;
2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;
6) to engage in research and development programs concerning various aspects of the industry including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
7) to engage in public education and other programs to expand the economic development of the electrical construction industry;
8) to enhance the involvement of workers in making decisions that affect their working lives; and,
9) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**SECTION 10.11**  The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and any amendments thereto and any other of its governing documents.  Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

23

**SECTION 10.12**  Each Employer shall contribute the amount shown in Appendix I.  Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  The Orange County Chapter, NECA, or its designee, shall be the collection agent for this Fund.

**SECTION 10.13**  If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.  In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at a rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

### NATIONAL LABOR - MANAGEMENT COOPERATION COMMITTEE (NLMCC)

**SECTION 10.14**  The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6 (b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175 (a) and Section 302 (c) (9) of the Labor-Management Relations Act, 29 U.S.C. §186 (c) (9).

The purposes of this Fund include the following:

1) to improve communications between representatives of Labor and Management;

2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;

6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

8) to engage in public education and other programs to expand the economic development of the electrical construction industry;

9) to enhance the involvement of workers in making decisions that affect their working lives; and,

10) to engage in any other lawful activities incidental or related to the accomplishments of these purposes and goals.

**SECTION 10.15**  The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and any amendments thereto and any other of its governing documents.  Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

**SECTION 10.16**  Each Employer shall contribute one cent (1¢) per hour worked under this Agreement up to a maximum of 150,000 hours per year.  Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in

24

which the labor was performed. The Orange County Chapter, NECA, or its designee, shall be the collection agent for this Fund.

**SECTION 10.17**  If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at a rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

**SECTION 10.18**  The one cent (1¢) per hour contribution for the National LMCC is to be paid from the local LMCC Fund. There will be no increase in the wage/fringe package for this contribution.

**DUES DEDUCT**
**SECTION 10.19**  The Employer agrees to deduct and forward to the Financial Secretary of the Local Union --upon receipt of voluntary authorization – the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the employer by the Local Union upon request by the Employer.

**EDUCATION FUND**
**SECTION 10.20**  The employer agrees to deduct and transmit to IBEW Education Fund five cents (5¢) per hour from the wages of each employee who voluntarily authorizes such contribution on the forms provided for that purpose. These transmittals shall occur monthly and shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each employee.

**ELECTRICAL INDUSTRY ADMINISTRATIVE MAINTENANCE FUND**
**SECTION 10.21**  Each employer shall contribute the amount designated in Appendix I for all hours worked by all employees covered by this agreement to the AMF. The fund shall be administered solely by the Association and shall be utilized to pay for the association's costs of the labor contract administration including receiving of trust funds, negotiations, labor relations, disputes and grievance representation performed on behalf of signatory employers, as well as all other administrative functions required of management such as service on all funds as required by federal law. These monies shall not be used to the detriment of the IBEW or the Local Union. Enforcement for delinquent payments to the fund shall be the sole responsibility of the Chapter and not the Local Union.

**DELINQUENT WAGE AND FRINGE PAYMENTS BOND**
**SECTION 10.22**  Any employer who fails to report or to make contributions due pursuant to any or all Sections in Article X by the fifteenth (15th) day of the month in which it is due shall be considered delinquent.

The parties to this Agreement reserve the right to establish the requirement for a fringe benefit bond in an amount considered sufficient to guarantee fringe benefit payment. Any Employer failing to provide a bond as required above, shall be required to pay wages and fringe benefits by
cashier's check until said bond is posted. Employees of any Employer required to post a bond shall be notified by the Local Union.

Effective June 1, 2010, any newly signatory employer and any delinquent employer shall be required to post a $100,000 fringe benefit bond in favor of the Trust Funds.

25

It shall not be a violation of this agreement for the Union to refuse to permit persons covered by this agreement to work for a delinquent employer until all such wages and fringes are paid, subject to the notification of the Chapter by the Local Union.

## ARTICLE XI
## SUPERVISION

**FOREMAN TO DIRECT**
**SECTION 11.1**  On jobs having a Foreman, workmen are not to take directions or orders or accept the layout of any job from anyone except the Foreman.

**FOREMAN QUALIFICATIONS**
**SECTION 11.2**  A Foreman is a Journeyman who is designated by the Employer to lay out work and supervise a job and accept the responsibility of acting in this capacity under the terms of this Agreement.

A Foreman must be qualified as a Journeyman Wireman and shall be a workman covered by the terms of this Agreement.

**FOREMAN LIMITATIONS**
**SECTION 11.3**  A Foreman of one (1) job or section shall not at the same time supervise another job or section or take orders from a Foreman of another job or section.

**FOREMAN TRANSFER REGARDING OVERTIME**
**SECTION 11.4**  A Foreman shall not be transferred from one (1) job to another for the purpose of working as a Journeyman on overtime work.

**FOREMAN CREW**
**SECTION 11.5**  A Foreman is an employee in charge of a job or a section of a job. A Foreman shall be employed on all shop to job and job to shop work where there is in excess of one (1) Journeyman and an apprentice and on all site work projects where the duration of the job exceeds five (5) consecutive work days, exclusive of holidays, which eventually will require two (2) or more Journeymen. A Foreman may work with the tools. No Foreman may direct more than nine (9) Journeymen.

**GENERAL FOREMAN TO DIRECT**
**SECTION 11.6**  On jobs having a General Foreman, Foremen are not to take orders, directions or accept layout of work from anyone other than their General Foreman.

**DRIVING TRUCKS BY SUPERVISION**
**SECTION 11.7**  General Foremen and Foremen may drive Employer's vehicles and carry blueprints, specifications, plans and other paper work and equipment necessary to the proper control and management of a job or jobs. It shall be permissible and proper for them to transport men, tools, materials, and equipment. The occasional handling of light tools and materials shall not be construed as working with the tools.

**GENERAL FOREMAN CREW**
**SECTION 11.8**  A General Foreman is an employee in charge of a job or jobs. General Foremen shall be employed on all jobs having in excess of nine (9) Journeymen, and one (1) Foreman and on all jobs having more than one (1) Foreman regardless of the size of his crew. A General Foreman shall be permitted to supervise a second crew, not to exceed four (4) Journeymen.  A General Foreman shall at no time have under his direct supervision more than forty-four (44) men, including Foremen. On jobs having in excess of forty-four (44) men, a second (2nd) General Foreman shall be employed. A General Foreman shall act in a supervisory capacity only. He shall be a Journeyman Wireman and shall be a workman covered under the terms of this Agreement.

26

Inside Wireman Agreement
Local 441 IBEW – Orange County, NECA

September 1, 2014 through August 31, 2019

**SIGNED FOR THE EMPLOYER:**

Orange County Chapter, National Electrical Contractors Association

Ted Kristensen
President

Date
9/5/14

Stephen E. Brown
Manager

Date
9/5/14

**SIGNED FOR THE EMPLOYEE:**

Local Union 441, International Brotherhood of Electrical Workers

Douglas M. Chappell
President

Date
9-5-2014

Richard Samaniego
Business Manager

Date
9-5-2014

34

# INSIDE WIREMAN'S AGREEMENT

BETWEEN

## LOCAL UNION 477 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

AND

## SOUTHERN SIERRAS CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION

COVERING

**SAN BERNARDINO, INYO AND MONO COUNTIES IN CALIFORNIA**

JUNE 1, 2015 – MAY 31, 2020

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

## AGREEMENT GENERAL

Agreement by and between the Southern Sierras Chapter of the National Electrical Contractors Association (NECA) and Local Union No. 477, IBEW.

It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Southern Sierras Chapter of NECA and the term "Union" Shall mean Local Union No. 477, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to the Agreement.

## ARTICLE I

### EFFECTIVE DATE – CHANGES – GRIEVANCES – DISPUTES

#### Effective Date

**Sec. 1.01.**    This Agreement shall take effect June 1, 2015, and shall remain in effect until May 31, 2020 unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or terminated in the way later provided herein.

#### Changes

**Sec. 1.02.**    (a)    Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b)    Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the firs negotiating meeting unless mutually agreed otherwise.

(c)    The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)    Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decision shall be final and binding.

(e)    When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to meeting the Council.

(f)    Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

2

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

**Sec. 5.13.** An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the

development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman.

An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Sec. 5.14.** Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this Agreement.

**Sec. 5.15.** The parties to this Agreement shall be bound by the Local Joint Apprenticeship Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Sec. 5.16.** All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local apprenticeship and training trust agreement. The current rate of contribution is $.68 per each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

## ARTICLE VI

### NEBF - REGULAR

**Sec. 6.01.** It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF") as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated

28

<u>INSIDE WIREEMAN'S AGREEMENT  - JUNE 1, 2015 – MAY 31, 2020</u>

as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the Individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF.  The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee.  The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The Individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An Individual Employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this labor agreement.

## ARTICLE VII

### INDUSTRY FUND

**Sec. 7.01.**          Each individual Employer shall contribute an amount not  to exceed  one percent (1%) nor less than .2 of 1% of the productive  electrical payroll, as determined by each local Chapter and approved by  the Trustees, with the following exclusions:

1.  Twenty-five percent (25%) of all productive electrical payrolls in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year, but not exceeding 150,000 man-hours.

2.  One Hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive  electrical payroll is defined as  the  total wages, including overtime, paid with respect to all hours worked by  all classes  of  electrical  labor for which a rate is  established  in  the prevailing labor area where the business is transacted.)

Payment  shall be forwarded monthly to the National Electrical Industry Fund in  a  form and manner prescribed by the Trustees  no  later  than fifteen (15) calendar days following the last day of the month in

29

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

# ARTICLE VIII

## LABOR-MANAGEMENT COOPERATION COMMITTEE
### The Inland Empire

**Sec. 8.01.**     The parties agree to participate in the Labor Management Cooperation Fund under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Taft-Hartley Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

1) to improve communication between representatives of Labor and Management;

2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;

6) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

7) to engage in public education and other programs to expand the economic development of the electrical construction industry;

8) to enhance the involvement of workers in making decisions that affect their working lives; and

9) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

30

INSIDE WIREEMAN'S AGREEMENT  - JUNE 1, 2015 – MAY 31, 2020

**Sec. 8.02.**    The Fund shall function in accordance with, and as provided in, it's Agreement and Declaration of Trust and any amendments thereto and any other of its governing documents.   Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

**Sec. 8.03.**    Each employer shall contribute $.28 cents for each hour worked.   Payments shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.   The Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Each employee shall contribute $.05 cents for each hour worked which, shall be deducted from the hourly wage and submitted by the employer.   Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees.

**Sec. 8.04.**    If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.   In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20.00), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.   Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.   The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE IX
### NATIONAL LABOR MANAGEMENT COOPERATION COMMITTEE (NLMCC)

**Sec. 9.01.**    The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under the authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9).   The purposes of this fund include the following:

1) to improve communication between representatives of labor and management;

2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;

3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

4) to study and explore ways of eliminating potential problems with reduce the competitiveness and inhibit the economic development of the electrical construction industry;

31

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

8) to engage in public education and other programs to expand the economic development of the electrical construction industry;

9) To enhance the involvement of workers in making decisions that affect their working lives; and

10) To engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**Sec. 9.02.** The Fund shall function in accordance with, and as provided in, it's Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

**Sec. 9.03.** Each employer shall contribute one cent ($0.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Southern Sierras Chapter, NECA, or its designee, shall be the collection agent for this Fund.

**Sec. 9.04.** If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorney's fees.

**Sec. 9.05.** The 1 cent-per-hour contribution for the National LMCC is to be paid from the Local LMCC Fund. There will be no increase in the wage/fringe package for his contribution.

32

INSIDE WIREEMAN'S AGREEMENT – JUNE 1, 2015 – MAY 31, 2020

## Article X
### Dues Check Off

**Sec. 10.01**      The Employer agrees to deduct and forward to the Financial Secretary of the Local Union – upon receipt of a voluntary written authorization---the additional working dues from the pay of each IBEW member.  The amount to be deducted shall be the amount specified in the approved Local Union Bylaws.  Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

### Local Fringe Benefits and Training Fund

**Sec. 10.02**      Each Employer bound by a Letter of Assent agrees to be bound by all the terms and conditions of the Agreement and Declaration of Trusts establishing the Southern California IBEW-NECA Pension Trust Fund, Inland Empire IBEW-NECA Defined Contribution Trust Fund, Inland Empire IBEW-NECA Health Trust and the San Bernardino County Electrical Education and Training Trust Fund.

**Sec. 10.03**      The Employers signatory to this Agreement agrees to contribute the following sum, for each employee covered under the terms of this Agreement, to the Inland Empire IBEW-NECA Health Trust Fund.  Should the hourly contribution rate exceed the allowable tax exempt contribution rate, as per the A.C.A. law, the Plan will be solely responsible for the payment of the "Cadillac Tax".

6/1/15................$9.32 per hour

**Sec. 10.04.**      The Employers signatory to this Agreement agree to contribute the following sum, for each employee, covered under the terms of this Agreement, to the Southern California IBEW-NECA Pension Trust Fund:

6/1/15................$6.76 per hour

*Contributions to the Pension Trust for apprentices shall be based on the same percentage as their wage is to the journeyman wage specified in Sec. 3.13.

**Sec. 10.05.**      The Employers signatory to this Agreement agree to contribute the following sum to the Defined Contribution Plan for each employee covered under the terms of this Agreement to the Inland Empire IBEW-NECA Defined Contribution Trust Fund.

6/1/15...................$4.05 per hour

**Sec. 10.06.**      The Employers signatory of this Agreement agree to contribute the sum of sixty eight cents ($.68) per hour for each employee covered under the terms of this Agreement, to the San Bernardino County Electrical Education and Training Trust Fund.

The San Bernardino County Electrical Education and Training trust Fund shall be responsible for the financing of the Joint Apprenticeship and Training Trust Fund, and any other educational and training programs approved by the Education and Training Trust.

Included in the sixty eight cents ($.68) is a five cent an hour ($.05) contribution to establish and maintain a Tool Replacement Fund (see Sec.2.36.).

33

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

**Sec. 10.07.**    The address to which the above mentioned contributions are to be mailed is: P.O. Box 12149, San Bernardino, CA 92423.

Contributions to each of the foregoing funds shall be due and payable on or before the tenth (10th) day of each month covering hours worked by each employee through the last payroll period in the prior calendar month. Each Contractor shall file a monthly report with each Fund in the form established by the Funds, and such reports shall be filed regardless of whether a Contractor has employed any employees in the month covered by the report.

Any Contractor who fails to report to make contributions due to any of the foregoing Funds before the fifteenth (15th) day of the month in which it is due or who issues a non-sufficient check shall be considered delinquent.

**Sec. 10.08.**    If an Employer fails to make the required contributions to the Funds, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable and subject to the following:

> 1 ½ % of the principal if late 1-30 days;
> 3 % of the principal if late 31-60 day;
> 1 ½ % will accrue for each additional thirty days late;
> Up to a maximum of 18 % per annum;

such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of eight percent (8%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorney's fees.

**Sec. 10.09.**    Any part of wages may be used for established trust contributions. The Local Union may be required to give up to ninety (90) days notice of its intention to divert wage to fringe benefits.

The parties to the Agreement agree to vary the "effective date" for wage & fringe benefit increase/changes, up to one week before or after the dates stated in this Agreement, in order to coincide with the start of a payroll period.

## ARTICLE XI

### ADMINISTRATIVE MAINTENANCE FUND A.M.F.

**Sec. 11.01.**    Effective June 1, 1996, employers signatory to this labor agreement with the Southern Sierras Chapter, NECA, designated as their collective bargaining agent shall contribute .4 % of the rate of pay per hour for each hour worked by each employee covered by this labor agreement to the Administrative Maintenance Fund. The monies are for the purpose of administration of the collective bargaining, negotiations, labor relations, grievance handling and all other management duties and responsibilities in this agreement. The Administrative Maintenance Fund contribution shall be submitted

34

**Exhibit F, p. 9**

INSIDE WIREEMAN'S AGREEMENT - JUNE 1, 2015 – MAY 31, 2020

with all other fringe benefits covered in the labor agreement by the 15th of the month and shall be bound to the same delinquency requirements under this labor agreement. The fund is to be administered solely by the Chapter. Enforcement for delinquent payments to the fund is the sole responsibility of the fund and/or the administrator or the fund. The fund will not be used to the detriment of the IBEW or the Local Union.

# ARTICLE XII

## PAYROLL AND FRINGE BENEFITS GUARANTEE TRUST FUND

**Sec. 12.01.**    Each electrical contractor employing workers under the terms of this agreement shall deposit One Hundred Dollars ($100.00), free of interest, for a Payroll and Fringe Benefits Guarantee up to Thirty-two Thousand Dollars ($32,000.00) of payroll, but not over that amount, with the Trustees who shall function under a Trust Agreement to be agreed upon between the parties. If, at any time, the interest accrued in the Payroll and Fringe Benefits Guarantee Trust Fund is depleted, each signatory contractor shall make an additional deposit into such fund of any amount up to One Hundred Dollars ($100.00), making a total of Two Hundred Dollars ($200.00) maximum.

Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Trust Fund as agreed upon between the parties. Net payroll checks shall be paid by the Electrical Industry Payroll and Fringe Benefits Guarantee Fund in a total amount not to exceed Fifteen Hundred Dollars ($1,500.00) maximum per employee.

A contractor who makes the Payroll and Fringe Benefits deposit, and pays wages and fringe benefits to employees covered by this agreement, shall be absolved from all responsibilities with respect thereto. This Payroll and Fringe Benefits deposit is in no respect a bond covering the contractor's payroll and fringe benefits obligation, but only an emergency fund to relieve employees' financial strain caused by the issuing of bad checks, or failure of contractors to meet payroll, or failure of contractors to make fringe benefit contributions as provided in this agreement. If the contractor defaults in the foregoing, his/her liability shall be as set forth in the Trust Agreement but shall, in any event, include the following:

(1) The contractor shall be liable for cost of enforcing collection, including but not limited to court costs, attorney fees, loss of earnings of an employee not paid, fringe benefits lost to an employee and any other expenses as determined by the Trustees to be the fault of such delinquent contractor.

(2) The Trustees   are authorized to institute whatever federal or state, civil or criminal actions as are necessary to enforce collection. Upon collection of defaulted payroll, or bad check, employees must reimburse the Payroll and Fringe Benefit Guarantee Trust Fund. Employees shall cooperate in every manner in regard to the collection of defaulted payroll, as requested by the Trustees.

(3) The  contractor must, within five (5) calendar days  after  notice from the Business Manager of Local Union 477, IBEW, make good  any  defaulted wages to his/her employees.

(4) On the first default of payroll payments and/or fringe benefit payments the defaulting contractor shall, upon notice from the Trustees, furnish a surety or cash bond in the amount of Five Thousand Dollars ($5,000.00) as guarantee that wage payments and fringe benefit payments will be regularly made. On the

35

INSIDE WIREEMAN'S AGREEMENT  - JUNE 1, 2015 – MAY 31, 2020

Second default of payroll and/or fringe benefit payments, the defaulting contractor shall furnish a  bond or equivalent of at least Ten Thousand Dollars ($10,000.00).  The amount of bond also may be set by the Trustees by using the following formula:

Four (4) times the weekly wages and fringe benefits for all of said signatory contractor's employees covered by this agreement.

However, the amount of bond required in this instance shall not be less than Ten Thousand Dollars ($10,000.00).  Failure to furnish the above referred to bond shall constitute cause for immediate cancellation of the Collective Bargaining Agreement, at the option of the Local Union, and the processing of all legal procedures necessary to enforce collection of defaulted amount, plus collection costs and interest involved.  It shall not be a violation of this agreement for the Union to refuse to permit persons covered by this agreement to work on said job or project until all such wages and/or fringe benefits have been paid.

(1)     Whenever a contractor has definite knowledge that he is taking over a contract for a job that has been partially completed by another contractor, he/she shall notify the Local Union, in writing, in the area before starting work.

(2)     It is understood and agreed that this Payroll and Fringe Benefits Guarantee Trust Fund is considered a joint fund covering both the Inside and Outside Agreements and groups of workers. Consequently, contractors who are engaged in both inside and outside work shall make only one Payroll and Fringe Benefits deposit to this Trust.

## ARTICLE XIII

### SAFETY

Sec. 13.01.     Electrical contractors shall post on every job the name of their Worker's Compensation and Disability Insurance carriers and a list of doctors and medical facilities available in case of job injury, as required by CAL OSHA. An adequate first aid kit shall be mandatory on every job or truck.

Adequate safety and protective devices shall be supplied workmen by the Employer on all hazardous work in accord with the Safety Order of CAL OSHA and rules of the Union.  They shall also observe instructions of the Employer in matters of safety, provided instructions are not in conflict with Safety Order of CAL OSHA and recognized practices of the trade.

Sec. 13.02.     On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two or more journeymen must work together, one standing by wearing rubber gloves.

Sec. 13.03.     The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant.  The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component.  The local parties recognize that the implementation of a drugs and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations.  Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural

36

INSIDE WIREEMAN'S AGREEMENT  - JUNE 1, 2015 – MAY 31, 2020

## ARTICLE XVI

### Code of Excellence

**Sec. 16.01.**    The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.  Therefore each IBEW Local Union and NECA Chapter shall implement a Code of Excellence Program.  The program shall include minimum standards as designed by the IBEW and NECA.

### SEPARABILITY

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

Date   5-19-2015

SIGNED FOR THE UNION
LOCAL UNION #477, IBEW

John A. Brown

SIGNED FOR THE EMPLOYER
SOUTHERN SIERRAS CHAPTER, NECA

David A. Shankle

41

**Exhibit F, p. 12**

 NECA

**Southern California IBEW-NECA Trust Funds**
P.O. Box 910918
Los Angeles, CA 90091

**Payment Coupon for STEINY & COMPANY INC**

## Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
#### Together With
##### National Electrical Benefit Fund and National Electrical Industry Fund

*(handwritten: 11|16 11 IW  EXP0 7)*

| | | |
|---|---|---|
| Employer ID: | 90170100 | |
| Contractor: | STEINY & COMPANY INC | |
| Address: | 12907 E Garvey Ave | |
| | Baldwin Park, CA 91706 | |
| Phone: | 626-962-1055 Ext: | |
| Fax: | 626-337-6899 | |
| Contractor License: | 161273 | |
| Business Type: | Corporation | |

| | | |
|---|---|---|
| Federal ID Number: | 95-1889828 | |
| Report Period: | 11/01/2016 | |
| EDI Reference Number: | 0001-4816-5103-8100 | |
| Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates | |
| Report Type: | Regular | |
| Job Class Type: | All | |
| Date Report Finalized: | 12/13/2016 | |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 132.00 | 5,471.40 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 656.57 | 834.24 | 357.72 | 678.48 | 1,516.68 | 52.80 | 59.40 | 87.12 |
| Grand Totals: | | 132.00 | $ 5,471.40 | $ 656.57 | $ 834.24 | $ 357.72 | $ 678.48 | $ 1,516.68 | $ 52.80 | $ 59.40 | $ 87.12 |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 26.40 | 59.40 | 164.14 | 27.36 | 4,520.31 |
| Grand Totals: | | $ 26.40 | $ 59.40 | $ 164.14 | $ 27.36 | $ 4,520.31 |

## REPORT DUE ON THE 10th OF THE MONTH

Be sure to include the EDI Reference Number 0001-4816-5103-8100 in the Memo portion of check(s).

**Make Payment(s) As Follows:**

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 4,328.81 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank P.O. Box 515643 Los Angeles, CA 90051 |
| Ck #2 | | $ 191.50 | National Funds | For NEIF, CCF, & NEBF. Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA National Funds P.O. Box 459 Pasadena, CA 911020459 |
| Ck #3 | | $ 0.00 | | For FMCP. Mail check to Family Medical Care Trust Fund with one copy of report. | NECA/IBEW Family Medical Care Plan NIFMCP Mellon Bank, Dept AT 40305 Atlanta, GA 31192 |

*(signature: Cynthia Yuar)*

**WebERF** Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5103-8100

**Exhibit G, p. 1**



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

## Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

*EXPO  3105*
*11*

| | | | |
|---|---|---|---|
| **Employer ID:** | 90170100 | **Federal ID Number:** | 95-1889828 |
| **Contractor:** | STEINY & COMPANY INC | **Report Period:** | 11/01/2016 |
| **Address:** | 12907 E Garvey Ave | **EDI Reference Number:** | 0001-4816-5103-8100 |
| | Baldwin Park, CA 91706 | **Agreement:** | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates |
| **Phone:** | 626-962-1055  Ext: | | |
| **Fax:** | 626-337-8899 | **Report Type:** | Regular |
| | | **Job Class Type:** | All |

☐ 1st Report in Area    ☐ Last Report in Area    ☐ Supplemental Report

### Employees

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|---|---|---|---|---|---|---|---|---|
| 1 | | Flores | Jorge | | J | EXPO-2 | 56.00 | 2,321.20 |
| 2 | | Martinez | Salvador | | J | EXPO-2 | 76.00 | 3,150.20 |
| | | | | Totals: | | | 132.00 | $ 5,471.40 |
| | | | | Grand Totals: | | | 132.00 | $ 5,471.40 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 132.00 | 5,471.40 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 656.57 | 834.24 | 357.72 | 678.48 | 1,516.68 | 52.80 | 59.40 | 87.12 |
| **Grand Totals:** | | 132.00 | $ 5,471.40 | $ 656.57 | $ 834.24 | $ 357.72 | $ 678.48 | $ 1,516.68 | $ 52.80 | $ 59.40 | $ 87.12 |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 26.40 | 59.40 | 164.14 | 27.36 | 4,520.31 |
| **Grand Totals:** | | $ 26.40 | $ 59.40 | $ 164.14 | $ 27.36 | $ 4,520.31 |

 Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5103-8100

**Exhibit G, p. 2**



**Payment Coupon for STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

11/16  11 IW

**Monthly Payroll Report for Electrical Contractors**
**Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.**
**Together With**
**National Electrical Benefit Fund and National Electrical Industry Fund**

Job # 8100
LA-Regional Connector Corridor

| | | | |
|---|---|---|---|
| Employer ID: | 90170100 | Federal ID Number: | 95-1889828 |
| Contractor: | STEINY & COMPANY INC | Report Period: | 11/01/2016 |
| Address: | 12907 E Garvey Ave | EDI Reference Number: | 0001-4816-5148-0158 |
| | Baldwin Park, CA  91706 | Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates |
| Phone: | 626-962-1055  Ext: | | |
| Fax: | 626-337-6899 | Report Type: | Regular |
| Contractor License: | 161273 | Job Class Type: | All |
| Business Type: | Corporation | Date Report Finalized: | 12/13/2016 |

8100 LA Reg. Connector

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 384.00 | 17,126.60 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 2,055.19 | 2,426.88 | 1,040.64 | 1,973.76 | 4,412.16 | 153.60 | 172.80 | 253.44 |
| **Grand Totals:** | | **384.00** | **$ 17,126.60** | **$ 2,055.19** | **$ 2,426.88** | **$ 1,040.64** | **$ 1,973.76** | **$ 4,412.16** | **$ 153.60** | **$ 172.80** | **$ 253.44** |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 76.80 | 172.80 | 513.80 | 85.63 | 13,337.50 |
| **Grand Totals:** | | **$ 76.80** | **$ 172.80** | **$ 513.80** | **$ 85.63** | **$ 13,337.50** |

### REPORT DUE ON THE 10th OF THE MONTH

Be sure to include the EDI Reference Number 0001-4816-5148-0158 in the Memo portion of check(s).

**Make Payment(s) As Follows:**

| Payment | Date | Amount Due | Payable To: | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 12,738.07 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank<br>P.O. Box 515643<br>Los Angeles, CA  90051 |
| Ck #2 | | $ 599.43 | National Funds | For NEIF, CCF, & NEBF. Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA<br>National Funds<br>P.O. Box 459<br>Pasadena, CA  911020459 |
| Ck #3 | | $ 0.00 | | For FMCP. Mail check to Family Medical Care Trust Fund with one copy of report. | NECA/IBEW Family Medical Care Plan<br>NIFMCP<br>Mellon Bank, Dept AT 40305<br>Atlanta, GA  31192 |

*Cynthia Yuan*

**WebERF**  Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5148-0158

**Exhibit G, p. 3**



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

### Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

| | | | |
|---|---|---|---|
| Employer ID: | 90170100 | Federal ID Number: | 95-1889828 |
| Contractor: | STEINY & COMPANY INC | Report Period: | 11/01/2016 |
| Address: | 12907 E Garvey Ave | EDI Reference Number: | 0001-4816-5148-0158 |
| | Baldwin Park, CA 91706 | Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD)  - Current Rates |
| Phone: | 626-962-1055 Ext: | | |
| Fax: | 626-337-6899 | Report Type: | Regular |
| | | Job Class Type: | All |

☐ 1st Report In Area    ☐ Last Report In Area    ☐ Supplemental Report

**Employees**

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|---|---|---|---|---|---|---|---|---|
| 1 | | Martinez | Salvador | | J | 8100 | 16.00 | 663.20 |
| 2 | | Sanner | Travis | | J | 8100 | 152.00 | 6,300.40 |
| 3 | | Willerford | Casey | S | J | 8100 | 200.00 | 9,334.00 |
| 4 | | Flores | Jorge | | J | 8100 | 8.00 | 331.60 |
| 5 | | Quintero | Jesus | R | J | 8100 | 8.00 | 497.40 |
| | | | | | | Totals: | 384.00 | $ 17,126.60 |
| | | | | | | Grand Totals: | 384.00 | $ 17,126.60 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 384.00 | 17,126.60 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 2,055.19 | 2,426.88 | 1,040.64 | 1,973.76 | 4,412.16 | 153.60 | 172.80 | 253.44 |
| Grand Totals: | | 384.00 | $ 17,126.60 | $ 2,055.19 | $ 2,426.88 | $ 1,040.64 | $ 1,973.76 | $ 4,412.16 | $ 153.60 | $ 172.80 | $ 253.44 |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 76.80 | 172.80 | 513.80 | 85.63 | 13,337.50 |
| Grand Totals: | | $ 76.80 | $ 172.80 | $ 513.80 | $ 85.63 | $ 13,337.50 |

 Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5148-0158

**Exhibit G, p. 4**



**Payment Coupon for STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

11/16    11 ITS

8100    LA Regional Connects

Make Payment(s) As Follows:

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 2,667.90 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank<br>P.O. Box 515643<br>Los Angeles, CA  90051 |
| Ck #2 | | $ 150.67 | National Funds | For NEIF, CCF, & NEBF. Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA<br>National Funds<br>P.O. Box 459<br>Pasadena, CA  911020459 |

**Signature**   *Cynthia Yuan*          ☐ 1st Report in Area      ☐ Last Report in Area      ☐ Supplemental Report

Cynthia Yuan -

$2818.57



**Exhibit G, p. 5**



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

## Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

**Employer ID:** 90170100
**Contractor:** STEINY & COMPANY INC
**Address:** 12907 E Garvey Ave
Baldwin Park, CA 91706
**Phone:** 626-962-1055  Ext:
**Fax:** 626-337-6899

**Federal ID Number:** 95-1889828
**Report Period:** 11/01/2016
**EDI Reference Number:** 0001-4816-5164-2240
**Agreement:** INTELLIGENT TRANSPORTATION SYSTEMS AGREEMENT (MASTER-STANDARD)  - Current Rates

**Report Type:** Regular
**Job Class Type:** All

☐ 1st Report in Area    ☐ Last Report in Area    ☐ Supplemental Report

### Employees

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|-----|-----|-----------|------------|-----|-----|---------|-------|-------|
| 1 | | Bravo Jr | Edward | | J | 8100 | 17.00 | 1,036.25 |
| 2 | | Medina | Ricardo | V | J | 8100 | 13.00 | 632.71 |
| 3 | | Starks | Freddie | A | J | 8100 | 14.00 | 1,077.70 |
| 4 | | Velazquez | Osvaldo | | J | 8100 | 8.00 | 347.60 |
| 5 | | Diaz | Jesus | | 75 | 8100 | 4.00 | 186.54 |
| 6 | | Prince | Derrick | S | 50 | 8100 | 20.00 | 787.74 |
| 7 | | Zamora | Reuben | | 45 | 8100 | 4.00 | 111.90 |
| 8 | | Ysais | Aaron | M | 75 | 8100 | 4.00 | 124.36 |
| | | | | | **Totals:** | | 84.00 | $ 4,304.80 |
| | | | | | **Grand Totals:** | | 84.00 | $ 4,304.80 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|----|-----|-------|-------|-----|-------|------|-----|-----|--------|--------|--------|
| 90170100 | 45 | 4.00 | 111.90 | 0.1200 | 2.8700 | 1.2200 | 2.2900 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 13.43 | 11.48 | 4.88 | 9.16 | 45.96 | 1.60 | | 2.84 |
| 90170100 | 50 | 20.00 | 787.74 | 0.1200 | 3.1800 | 1.3600 | 2.5500 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 94.53 | 63.60 | 27.20 | 51.00 | 229.80 | 8.00 | | 14.20 |
| 90170100 | 75 | 8.00 | 310.90 | 0.1200 | 6.3700 | 2.7100 | 5.0900 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 37.31 | 50.96 | 21.68 | 40.72 | 91.92 | 3.20 | | 5.68 |
| 90170100 | J | 52.00 | 3,094.26 | 0.1200 | 6.3700 | 2.7100 | 5.0900 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 371.31 | 331.24 | 140.92 | 264.68 | 597.48 | 20.80 | 23.40 | 34.32 |
| **Grand Totals:** | | 84.00 | $ 4,304.80 | $ 516.58 | $ 457.28 | $ 194.68 | $ 365.56 | $ 965.16 | $ 33.60 | $ 23.40 | $ 57.04 |

 Payroll Report - INTELLIGENT TRANSPORTATION SYSTEMS AGREEMENT (MASTER-STANDARD)  - Current Rates - 0001-4816-5164-2240

**Exhibit G, p. 6**



**NECA**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

**Payment Coupon for STEINY & COMPANY INC**

### Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

Job# 3686
Bernards – LAPD North East Police
Station

*11/16  11 IW*

*3686 LAPD*

| | | |
|---|---|---|
| Employer ID: | 90170100 | |
| Contractor: | STEINY & COMPANY INC | |
| Address: | 12907 E Garvey Ave | |
| | Baldwin Park, CA 91706 | |
| Phone: | 626-962-1055 Ext: | |
| Fax: | 626-337-6899 | |
| Contractor License: | 161273 | |
| Business Type: | Corporation | |

| | |
|---|---|
| Federal ID Number: | 95-1889828 |
| Report Period: | 11/01/2016 |
| EDI Reference Number: | 0001-4816-5127-6809 |
| Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates |
| Report Type: | Regular |
| Job Class Type: | All |
| Date Report Finalized: | 12/13/2016 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 208.00 | 8,955.68 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 1,074.68 | 1,314.56 | 563.68 | 1,069.12 | 2,389.92 | 83.20 | 93.60 | 137.28 |
| **Grand Totals:** | | **208.00** | **$ 8,955.68** | **$ 1,074.68** | **$ 1,314.56** | **$ 563.68** | **$ 1,069.12** | **$ 2,389.92** | **$ 83.20** | **$ 93.60** | **$ 137.28** |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 41.60 | 93.60 | 268.67 | 44.78 | 7,174.69 |
| **Grand Totals:** | | **$ 41.60** | **$ 93.60** | **$ 268.67** | **$ 44.78** | **$ 7,174.69** |

### REPORT DUE ON THE 10th OF THE MONTH

Be sure to include the EDI Reference Number 0001-4816-5127-6809 in the Memo portion of check(s).

Make Payment(s) As Follows:

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 6,861.24 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank<br>P.O. Box 515643<br>Los Angeles, CA 90051 |
| Ck #2 | | $ 313.45 | National Funds | For NEIF, CCF, & NEBF, Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA<br>National Funds<br>P.O. Box 459<br>Pasadena, CA 911020459 |
| Ck #3 | | $ 0.00 | | For FMCP. Mail check to Family Medical Care Trust Fund with one copy of report. | NECA/IBEW Family Medical Care Plan<br>NIFMCP<br>Mellon Bank, Dept AT 40305<br>Atlanta, GA 31192 |

*Cynthia Yuan*

**WebEDF** Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5127-6809

**Exhibit G, p. 7**



Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

**STEINY & COMPANY INC**

## Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

| | | | |
|---|---|---|---|
| Employer ID: | 90170100 | Federal ID Number: | 95-1889828 |
| Contractor: | STEINY & COMPANY INC | Report Period: | 11/01/2016 |
| Address: | 12907 E Garvey Ave | EDI Reference Number: | 0001-4816-5127-6809 |
| | Baldwin Park, CA  91706 | Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD)  - Current Rates |
| Phone: | 626-962-1055  Ext: | | |
| Fax: | 626-337-6899 | Report Type: | Regular |
| | | Job Class Type: | All |

☐ 1st Report in Area        ☐ Last Report in Area        ☐ Supplemental Report

**Employees**

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|---|---|---|---|---|---|---|---|---|
| 1 | | Flores | Jorge | | J | 3686 | 88.00 | 3,647.60 |
| 2 | | Moreno | Louis | S | J | 3686 | 64.00 | 2,986.88 |
| 3 | | Martinez | Salvador | | J | 3686 | 56.00 | 2,321.20 |
| | | Totals: | | | | | 208.00 | $ 8,955.68 |
| | | Grand Totals: | | | | | 208.00 | $ 8,955.68 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 208.00 | 8,955.68 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 1,074.68 | 1,314.56 | 563.68 | 1,069.12 | 2,389.92 | 83.20 | 93.60 | 137.28 |
| Grand Totals: | | 208.00 | $ 8,955.68 | $ 1,074.68 | $ 1,314.56 | $ 563.68 | $ 1,069.12 | $ 2,389.92 | $ 83.20 | $ 93.60 | $ 137.28 |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 41.60 | 93.60 | 268.67 | 44.78 | 7,174.69 |
| Grand Totals: | | $ 41.60 | $ 93.60 | $ 268.67 | $ 44.78 | $ 7,174.69 |


**Exhibit G, p. 8**

 **NECA**

**Payment Coupon for STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

*11/16 11 IW*

*All other Jobs*

### Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

| | | |
|---|---|---|
| Employer ID: | 90170100 | |
| Contractor: | STEINY & COMPANY INC | |
| Address: | 12907 E Garvey Ave | |
| | Baldwin Park, CA 91706 | |
| Phone: | 626-962-1055 Ext: | |
| Fax: | 626-337-6899 | |
| Contractor License: | 161273 | |
| Business Type: | Corporation | |

| | |
|---|---|
| Federal ID Number: | 95-1889828 |
| Report Period: | 11/01/2016 |
| EDI Reference Number: | 0001-4816-5197-1686 |
| Agreement: | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates |
| Report Type: | Regular |
| Job Class Type: | All |
| Date Report Finalized: | 12/13/2016 |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 75.00 | 3,696.75 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 443.61 | 474.00 | 203.25 | 385.50 | 861.75 | 30.00 | 33.75 | 49.50 |
| **Grand Totals:** | | **75.00** | **$ 3,696.75** | **$ 443.61** | **$ 474.00** | **$ 203.25** | **$ 385.50** | **$ 861.75** | **$ 30.00** | **$ 33.75** | **$ 49.50** |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 15.00 | 33.75 | 110.90 | 18.48 | 2,659.49 |
| **Grand Totals:** | | **$ 15.00** | **$ 33.75** | **$ 110.90** | **$ 18.48** | **$ 2,659.49** |

### REPORT DUE ON THE 10th OF THE MONTH

Be sure to include the EDI Reference Number 0001-4816-5197-1686 in the Memo portion of check(s).

Make Payment(s) As Follows:

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 2,530.11 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank<br>P.O. Box 515643<br>Los Angeles, CA 90051 |
| Ck #2 | | $ 129.38 | National Funds | For NEIF, CCF, & NEBF. Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA<br>National Funds<br>P.O. Box 459<br>Pasadena, CA 911020459 |
| Ck #3 | | $ 0.00 | | For FMCP. Mail check to Family Medical Care Trust Fund with one copy of report. | NECA/IBEW Family Medical Care Plan<br>NIFMCP<br>Mellon Bank, Dept AT 40305<br>Atlanta, GA 31192 |

*Cynthia Yuan*

**WebERF** Payroll Report - INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD) - Current Rates - 0001-4816-5197-1686

**Exhibit G, p. 9**



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

### Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

| | | | |
|---|---|---|---|
| **Employer ID:** 90170100 | | **Federal ID Number:** | 95-1889828 |
| **Contractor:** STEINY & COMPANY INC | | **Report Period:** | 11/01/2016 |
| **Address:** 12907 E Garvey Ave | | **EDI Reference Number:** | 0001-4816-5197-1686 |
| Baldwin Park, CA  91706 | | **Agreement:** | INSIDE WIREMEN'S AGREEMENT - 11 (MASTER-STANDARD)  - Current Rates |
| **Phone:** 626-962-1055 Ext: | | | |
| **Fax:** 626-337-6899 | | **Report Type:** | Regular |
| | | **Job Class Type:** | All |

☐ 1st Report in Area    ☐ Last Report in Area    ☐ Supplemental Report

**Employees**

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|---|---|---|---|---|---|---|---|---|
| 1 | | Elliott | Jeffrey | M | J | | 40.00 | 2,246.00 |
| 2 | | Martinez | Carlos | A | J | | 32.00 | 1,326.40 |
| 3 | | Peregrina-Nunez | Jose | | J | | 3.00 | 124.35 |
| | | | | | | **Totals:** | 75.00 | **$ 3,696.75** |
| | | | | | | **Grand Totals:** | 75.00 | **$ 3,696.75** |

| ID | J/C | Hours | Wages | Vac | 11-DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 90170100 | J | 75.00 | 3,696.75 | 0.1200 | 6.3200 | 2.7100 | 5.1400 | 11.4900 | 0.4000 | 0.4500 | 0.6600 |
| | | | | 443.61 | 474.00 | 203.25 | 385.50 | 861.75 | 30.00 | 33.75 | 49.50 |
| **Grand Totals:** | | 75.00 | $ 3,696.75 | $ 443.61 | $ 474.00 | $ 203.25 | $ 385.50 | $ 861.75 | $ 30.00 | $ 33.75 | $ 49.50 |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|---|---|---|---|---|---|---|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 15.00 | 33.75 | 110.90 | 18.48 | 2,659.49 |
| **Grand Totals:** | | $ 15.00 | $ 33.75 | $ 110.90 | $ 18.48 | $ 2,659.49 |


**Exhibit G, p. 10**

 **NECA**

**Payment Coupon for STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

11/16   11 MS

All other Jobs

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|----|-----|--------|--------|------|-----|--------|
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 376.60 | 847.35 | 2,795.14 | 465.86 | 66,826.63 |
| Grand Totals: | | $ 581.00 | $ 1,307.25 | $ 3,736.98 | $ 622.84 | $ 97,591.76 |

### REPORT DUE ON THE 10th OF THE MONTH

Be sure to include the EDI Reference Number 0001-4816-5216-0363 in the Memo portion of check(s).

**Make Payment(s) As Follows:**

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---------|------|-----------|-----------|--------------|---------|
| Ck #1 | | $ 93,231.94 | Electrical Industry Accounts | For EIA. Mail to Bank with two copies of report | Amalgamated Bank P.O. Box 515643 Los Angeles, CA 90051 |
| Ck #2 | | $ 4,359.82 | National Funds | For NEIF, CCF, & NEBF. Mail check to National Funds with two copies of report. | LA COUNTY CHAPTER NECA National Funds P.O. Box 459 Pasadena, CA 911020459 |

**Signature**   *Cynthia Yuan*        ☐ 1st Report in Area        ☐ Last Report in Area        ☐ Supplemental Report

Cynthia Yuan -

 **WebERF**   Payroll Report - INTELLIGENT TRANSPORTATION SYSTEMS AGREEMENT (MASTER-STANDARD) - Current Rates - 0001-4816-5216-0363

Page 2 of 2
Report Created Tuesday, December 13, 2016

### Exhibit G, p. 11



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

### Monthly Payroll Report for Electrical Contractors
### Electrical Industry Accounts - I.B.E.W. L.U.#11 - L.A. County N.E.C.A.
### Together With
### National Electrical Benefit Fund and National Electrical Industry Fund

| | |
|---|---|
| **Employer ID:** 90170100 | |
| **Contractor:** STEINY & COMPANY INC | |
| **Address:** 12907 E Garvey Ave | |
| Baldwin Park, CA  91706 | |
| **Phone:** 626-962-1055 Ext: | |
| **Fax:** 626-337-6899 | |

| | |
|---|---|
| **Federal ID Number:** | 95-1889828 |
| **Report Period:** | 11/01/2016 |
| **EDI Reference Number:** | 0001-4816-5216-0363 |
| **Agreement:** | INTELLIGENT TRANSPORTATION SYSTEMS AGREEMENT (MASTER-STANDARD)  – Current Rates |
| **Report Type:** | Regular |
| **Job Class Type:** | All |

☐ 1st Report in Area      ☐ Last Report in Area      ☐ Supplemental Report

**Employees**

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|---|---|---|---|---|---|---|---|---|
| 1 | | Velazquez | Osvaldo | | J | | 8.00 | 456.72 |
| 2 | | Bueno | Nicholas | F | 40 | | 4.00 | 66.32 |
| 3 | | Helgren | Keith | | J | | 97.00 | 5,053.62 |
| 4 | | Maciel | Rafael, Jr. | | J | | 16.00 | 497.44 |
| 5 | | Bravo Jr | Edward | | J | | 71.00 | 2,942.95 |
| 6 | | Britt | Corey | A | J | | 8.00 | 495.36 |
| 7 | | Cobern | Slade | D | J | | 144.00 | 5,968.80 |
| 8 | | Galvez | Artemio | | J | | 24.00 | 1,120.08 |
| 9 | | Garduno | John V., Jr. | V | J | | 200.00 | 12,910.00 |
| 10 | | Gidney | John | H | J | | 200.00 | 10,382.00 |
| 11 | | Gomez | Jorge | J | J | | 200.00 | 10,382.00 |
| 12 | | Llarena | Elmer | J | J | | 156.00 | 7,373.86 |
| 13 | | Lopez | Rafael | | J | | 168.00 | 7,840.56 |
| 14 | | Medina | Ricardo | V | J | | 67.00 | 3,260.89 |
| 15 | | Panter | Gary | E | J | | 200.00 | 10,598.00 |
| 16 | | Pena | Ulises | | J | | 88.00 | 4,106.98 |
| 17 | | Peregrina-Nunez | Jose | L | J | | 72.00 | 2,984.40 |
| 18 | | Quintero | Jesus | R | J | | 8.00 | 331.60 |
| 19 | | Rivas | Ruben | C | J | | 144.00 | 5,968.80 |
| 20 | | Diaz | Jesus | | 75 | | 168.00 | 5,223.12 |
| 21 | | Doss | Michael | R | 75 | | 154.00 | 6,424.75 |
| 22 | | Hoffman | Ian | A | 45 | | 152.00 | 2,834.80 |



**Exhibit G, p. 12**



**STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA  90091

### Employees

| No. | SSN | Last Name | First Name | MI | J/C | Project | Hours | Wages |
|-----|-----|-----------|------------|-----|-----|---------|-------|-------|
| 23 | | Mojica | Kevin | J | 85 | | 100.00 | 3,523.00 |
| 24 | | Ortiz | Noel | A | 75 | | 168.00 | 6,068.16 |
| 25 | | Ysais | Aaron | M | 75 | | 148.00 | 4,601.32 |
| 26 | | Prince | Derrick | D | 50 | | 128.00 | 2,653.44 |
| 27 | | Mojica | Kevin | J | J | | 12.00 | 497.40 |
| | | | | | | **Totals:** | **2,905.00** | **$ 124,566.35** |
| | | | | | | **Grand Totals:** | **2,905.00** | **$ 124,566.35** |

| ID | J/C | Hours | Wages | Vac | 11 DB | DB-F | DC | HW | 11 SUB | ETI-EE | ETI-ER |
|----|-----|-------|-------|-----|-------|------|-----|-----|--------|--------|--------|
| 90170100 | 40 | 4.00 | 66.32 | 0.1200 | 2.5500 | 1.0800 | 2.0400 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 7.96 | 10.20 | 4.32 | 8.16 | 45.96 | 1.60 | | 2.84 |
| 90170100 | 45 | 152.00 | 2,834.80 | 0.1200 | 2.8700 | 1.2200 | 2.2900 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 340.18 | 436.24 | 185.44 | 348.08 | 1,746.48 | 60.80 | | 107.92 |
| 90170100 | 50 | 128.00 | 2,653.44 | 0.1200 | 3.1800 | 1.3600 | 2.5500 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 318.41 | 407.04 | 174.08 | 326.40 | 1,470.72 | 51.20 | | 90.88 |
| 90170100 | 75 | 638.00 | 22,317.35 | 0.1200 | 6.3700 | 2.7100 | 5.0900 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 2,678.08 | 4,064.06 | 1,728.98 | 3,247.42 | 7,330.62 | 255.20 | | 452.98 |
| 90170100 | 85 | 100.00 | 3,523.00 | 0.1200 | 6.3700 | 2.7100 | 5.0900 | 11.4900 | 0.4000 | | 0.7100 |
| | | | | 422.76 | 637.00 | 271.00 | 509.00 | 1,149.00 | 40.00 | | 71.00 |
| 90170100 | J | 1,883.00 | 93,171.44 | 0.1200 | 6.3700 | 2.7100 | 5.0900 | 11.4900 | 0.4000 | 0.4500 | 0.7100 |
| | | | | 11,180.57 | 11,994.71 | 5,102.93 | 9,584.47 | 21,635.67 | 753.20 | 847.35 | 1,242.78 |
| **Grand Totals:** | | **2,905.00** | **$ 124,566.35** | **$ 14,947.96** | **$ 17,549.25** | **$ 7,466.75** | **$ 14,023.53** | **$ 33,378.45** | **$ 1,162.00** | **$ 847.35** | **$ 1,968.40** |

| ID | J/C | LMC-EE | LMC-ER | NEBF | CCF | Totals |
|----|-----|--------|--------|------|-----|--------|
| 90170100 | 40 | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 0.80 | 1.80 | 1.99 | 0.33 | 85.96 |
| 90170100 | 45 | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 30.40 | 68.40 | 85.04 | 14.17 | 3,423.15 |
| 90170100 | 50 | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 25.60 | 57.60 | 79.60 | 13.27 | 3,014.80 |
| 90170100 | 75 | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 127.60 | 287.10 | 669.52 | 111.59 | 20,953.15 |
| 90170100 | 85 | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 20.00 | 45.00 | 105.69 | 17.62 | 3,288.07 |
| 90170100 | J | 0.2000 | 0.4500 | 0.0300 | 0.0050 | |
| | | 376.60 | 847.35 | 2,795.14 | 465.86 | 66,826.63 |


**Exhibit G, p. 13**



**Payment Coupon for STEINY & COMPANY INC**

Southern California IBEW-NECA Trust Funds
P.O. Box 910918
Los Angeles, CA 90091

### Sound Unit Monthly Payroll Reporting Form
### IBEW Local Unions 11, 440, 441, 477, 413, 428, 639, 952

| | |
|---|---|
| Employer ID: | 90170100 |
| Contractor: | STEINY & COMPANY INC |
| Address: | 12907 E Garvey Ave |
| | Baldwin Park, CA 91706 |
| Phone: | 626-962-1055 Ext: |
| Fax: | 626-337-6899 |
| Contractor License: | 161273 |
| Business Type: | Corporation |

| | |
|---|---|
| Federal ID Number: | 95-1889828 |
| Report Period: | 11/01/2016 |
| EDI Reference Number: | 0001-4816-5256-1404 |
| Agreement: | SO CA 9TH DISTRICT SOUND & COMM AGREEMENT (MASTER-STANDARD) - Current Rates |
| Report Type: | Regular |
| Job Class Type: | All |
| Date Report Finalized: | 12/13/2016 |

*(handwritten: 11/16  11 Sound  no work in any jobs)*

### REPORT DUE ON THE 10TH OF THE MONTH
Be sure to include the EDI Reference Number 0001-4816-5256-1404 in the Memo portion of check(s).

Make Payment(s) As Follows:

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 0.00 | | For EIA - Mail Check #1 with 1 copy of report. | Amalgamated Bank P.O. Box 515643 Los Angeles, CA 90051 |
| Ck #2 | | $ 0.00 | | For National Funds In all locals except 11, 40, and 952 - Mail Check #2 with 1 copy of report. | Amalgamated Bank P.O. Box 515643 Los Angeles, CA 90051 |
| Ck #3 | | $ 0.00 | | For National Funds in Locals 11, 40, and 952 only - Mail Check #3 with 1 copy of report. | LA COUNTY CHAPTER NECA National Funds P.O. Box 459 Pasadena, CA 911020459 |

**Signature**  *Cynthia Yuan*

Cynthia Yuan -

☐ 1st Report In Area    ☐ Last Report In Area    ☐ Supplemental Report

### REPORT DUE ON THE 10TH OF THE MONTH
Be sure to include the EDI Reference Number 0001-4816-5256-1404 in the Memo portion of check(s).

Make Payment(s) As Follows:

| Payment | Date | Amount Due | Payable To | Instructions | Mail To |
|---|---|---|---|---|---|
| Ck #1 | | $ 0.00 | | For EIA - Mail Check #1 with 1 copy of report. | Amalgamated Bank P.O. Box 515643 Los Angeles, CA 90051 |

 iWebERF   Payroll Report - SO CA 9TH DISTRICT SOUND & COMM AGREEMENT (MASTER-STANDARD) - Current Rates - 0001-5256-1404

Page 1 of 2
Report Created Tuesday, December 13, 2016

### Exhibit G, p. 14

Payroll Report

*90170100*

*11/16  440 IN*

 **Electronic Payroll Reporting System**

| Fund Administration ▼ | Auditing ▼ | My Reports | Store ▼ |

## Payroll Report

Employer:      Steiny & Company Inc
Agreement:     440 Inside
Work month:    11/2016
Submitted on:  12/13/2016

No employees have been added to this report.

Notes:

Done

Version 2.5.0
Copyright 2008-2016, by Corellian Software Inc. All rights reserved.
Unauthorized use prohibited. For support: (844) 267-3542

f

https://eprlive.com/Auditing/PayrollReport.aspx                                    12/13/2016

**Exhibit G, p. 15**

NecaStar Payroll Report - IBEW Local #441 Inside Agreement                    Page 1 of 1

PAYROLL REPORT FOR ELECTRICAL CONTRACTORS

## ORANGE COUNTY ELECTRICAL INDUSTRY FUNDS

TOGETHER WITH NATIONAL ELECTRICAL BENEFIT FUND

2020158                                                                    N-90170100    11/16

441 IW

| Contractor: | Steiny and Company, Inc. | Federal Registration Number: | 95-1889828 |
|---|---|---|---|
| Street Address: | 12907 E. Garvey Avenue | Journeyman Wage Rate: | $42.34 |
| City, State, Zip: | Baldwin Park, CA 91706 | Total Employed This Period: | 14 |
| Phone: | (626) 543-2046 | Certification code: | 2914 3797 3849 0010 |
| C-10 Number: | 161273 | Report type: | NORMAL |
| MONTH: | NOVEMBER 2016 | | |
| This transmittal covers payroll weeks ending the last Sunday of the month. | | IBEW LOCAL 441 INSIDE AGREEMENT | |

### Grand Totals All Pages

| Grand Totals All Pages | | Total Clock Hours: | 1,650.00 | Total Gross Earnings: | $70,013.87 |
|---|---|---|---|---|---|

| Health | DB Pension | DC Pension | Vacation | Dues | IBEW EDU | Training | LMCC | EIAMF | NECA S/C (1.00%) | NEBF |
|---|---|---|---|---|---|---|---|---|---|---|
| $11,451.00 | $8,657.40 | $4,820.70 | $943.51 | $1,861.00 | $0.00 | $412.50 | $247.50 | $280.50 | $0.00 | $2,100.42 |
| CWCE Health | | | | | | | | | | |
| $0.00 | | | | | | | | | Total EIA | $30,774.62 |

**Please Include with Payment:**
1 Copy of the Cover Page
1 Copy of the Employee Page(s)

**Mail One Check Payable to:**
Orange County Electrical
Industry
265 S. Anita Dr, Suite 215
Orange, CA 92868

| REPORT DUE ON THE 10th, LATE IF NOT RECEIVED BY THE 15th. | Amount Due This Report |
|---|---|
| TOTAL EIA THIS REPORT | $30,774.62 |

The employer reporting herein recognizes that it is bound by the Restated Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to employer contributions (pursuant to Article 8 of the Agreement). The employer further certifies that if contributions are made on behalf of non-bargaining unit employees, it is making such contribution in accordance with Article 6 of the Agreement and it is either covering all such non-bargaining employees or alumni employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that if it is reporting on behalf of a related organization as defined in Article 6 of the Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded pursuant to Section 6.3 of the NEBF Agreement.

Signature: *Cynthia Yuan*                              Date: 12/12/16

Preparer of Report: Cynthia Yuan

DB = $8657.40

**Exhibit G, p. 16**

Payroll Report - IBEW Local #441 Inside Agreement                    Page 1 of 1

PAYROLL REPORT FOR ELECTRICAL CONTRACTORS

**ORANGE COUNTY ELECTRICAL**
**INDUSTRY FUNDS**

TOGETHER WITH NATIONAL ELECTRICAL BENEFIT FUND

2020158                                                         N-90170100

| Contractor: | Steiny and Company, Inc. |
| Street Address: | 12907 E. Garvey Avenue |
| City, State, Zip: | Baldwin Park, CA 91706 |
| Phone: | (626) 543-2046 |
| C-10 Number: | 161273 |
| MONTH: | **NOVEMBER 2016** |

This transmittal covers payroll weeks ending the last Sunday of the month.

| Federal Registration Number: | 95-1889828 |
| Journeyman Wage Rate: | $42.34 |
| Total Employed This Period: | 14 |
| Certification code: | 2914 3797 3849 0010 |
| Report type: | NORMAL |

**IBEW LOCAL 441 INSIDE AGREEMENT**

NEBF CLASS CODE TO BE USED IN COLUMN NO. 3
1. Inside Wireman   6. Inside Apprentice   22. Residential Wireman
24. Storekeeper   26. Other   27. Alumni

CLASS LEVEL TO BE USED IN COLUMN NO. 4
JW I - Journeyman Class I   % - Apprentice Rate   IJW - Intermediate JW
SK - Storekeeper   NBA - Non Bargaining Admin   ALM - Alumni

| | SSN | Last, First Name | Class | Level | Clock Hours | Gross Earnings | Health | DB Pension | DC Pension | Vacation Fund | Union Dues | IBEW EDU |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | | Britt, Corey A. | 1 | JW I | 94.00 | $4,276.32 | $682.44 | $577.16 | $296.10 | $0.00 | $138.98 | $0.00 |
| 2. | | Campa, Gabriel Anthony | 1 | JW TR | 136.00 | $4,901.92 | $987.36 | $835.04 | $428.40 | $0.00 | $159.31 | $0.00 |
| 3. | | Enloe, Frank J. | 1 | JW I | 148.00 | $8,039.36 | $1,074.48 | $908.72 | $466.20 | $0.00 | $261.28 | $0.00 |
| 4. | | Helgren, Keith A. | 1 | JW TR | 44.00 | $2,671.87 | $319.44 | $270.16 | $138.60 | $0.00 | $0.00 | $0.00 |
| 5. | | Helgren, Paul C | 6 | 50% TN | 104.00 | $2,201.68 | $526.24 | $0.00 | $164.32 | $0.00 | $0.00 | $0.00 |
| 6. | | Leske, Norman G. | 1 | JW I | 144.00 | $6,785.28 | $1,045.44 | $884.16 | $453.60 | $474.97 | $220.52 | $0.00 |
| 7. | | Maciel, Rafael Jr. | 1 | JW I | 40.00 | $1,693.60 | $290.40 | $245.60 | $126.00 | $0.00 | $0.00 | $0.00 |
| 8. | | Maciel, Rafael Jr. | 1 | JW TR | 104.00 | $3,303.04 | $755.04 | $638.56 | $327.60 | $0.00 | $0.00 | $0.00 |
| 9. | | Peregrina-Nunez, Jose Luis | 1 | JW I | 8.00 | $445.04 | $58.08 | $49.12 | $25.20 | $0.00 | $14.46 | $0.00 |
| 10. | | Richardson, Eric P. | 1 | JW I | 184.00 | $9,551.44 | $1,335.84 | $1,129.76 | $579.60 | $0.00 | $310.42 | $0.00 |
| 11. | | Sagaste, Adam L. | 1 | JW TR | 138.00 | $6,693.48 | $1,001.88 | $847.32 | $434.70 | $468.54 | $217.54 | $0.00 |
| 12. | | Seymour, David B. | 1 | JW I | 114.00 | $4,826.76 | $827.64 | $699.96 | $359.10 | $0.00 | $156.87 | $0.00 |
| 13. | | Starks, Freddie A. Jr. | 1 | JW I | 128.00 | $5,419.52 | $929.28 | $785.92 | $403.20 | $0.00 | $176.13 | $0.00 |
| 14. | | Velazquez, Osvaldo | 1 | JW I | 128.00 | $6,325.44 | $929.28 | $785.92 | $403.20 | $0.00 | $205.58 | $0.00 |
| 15. | | Zamora, Reuben | 6 | 50% TN | 136.00 | $2,879.12 | $688.16 | $0.00 | $214.88 | $0.00 | $0.00 | $0.00 |
| | | **GRAND TOTALS** | | | 1,680.00 | $70,013.87 | $11,451.00 | $8,657.40 | $4,820.70 | $943.51 | $1,861.09 | $0.00 |

**Certification code: 2914 3797 3849 0010**

**Exhibit G, p. 17**

Print                                                                                    Page 2 of 2

*9017 0100*

*11/16*
*477 IW*

### Remittance Instructions

**Employer:** Steiny & Company Inc
**EIN:** 951889828
**Address:** 12907 E Garvey Blvd , Baldwin Park , California - 91706
**Phone Number:** 626-962-1055
**Agreement:** 477 Inside
**Work Month:** 11/2016

Make Check Payable to: Electrical Industry Accounts

Mail Payment to: Electrical Industry Accounts
P.O. Box 12149
San Bernardino, CA 92423

| | |
|---|---|
| 477 DB Plan | $3,151.68 |
| 477 DC Plan | $1,728.60 |
| 477 ETT | $273.36 |
| 477 Health | $3,847.14 |
| 477 LMCC EE | $20.10 |
| 477 LMCC ER | $112.56 |
| 477 Union Dues | $717.58 |
| AMF | $71.75 |
| NEBF | $538.17 |
| Subtotal: | $10,460.94 |

This report was generated by ePR.Live. To learn more about ePR.Live visit
www.eprlive.com
Copyright 2008, by Corellian Software Inc.. All rights reserved.

*DB*
*$3,151.68*
*11/16*
*477 IW*

https://www.eprlive.com/PrintPage.aspx                                          12/13/2016

Payroll Report

Page 1 of 1

Welcome cynthiamedina    Logout    My EPR Account

 **Electronic Payroll Reporting System**

| Fund Administration ▾ | Auditing ▾ | My Reports | Store ▾ |

## Payroll Report

Employer:    Steiny & Company Inc
Agreement:    477 Inside
Work month:    11/2016
Submitted on:    12/13/2016

| Employee | SSN | Classification | Hours Worked | Gross Wages | 477 DB Plan | 477 DC Plan | 477 ETT | 477 Health | 477 LMCC EE | 477 LMCC ER | 477 Union Dues | AMF | NEBF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Britt, Corey A. | | 1:Foreman | 8.00 | 565.44 | $62.72 | $34.40 | $5.44 | $76.56 | $0.40 | $2.24 | $22.62 | $2.26 | $16.96 |
| Catatayud, Juan N | | 1:Journeyman | 152.00 | 6300.40 | $1,191.68 | $653.60 | $103.36 | $1,454.64 | $7.60 | $42.56 | $252.02 | $25.20 | $189.01 |
| Llarena, Elmer James | | 1:Foreman | 8.00 | 373.36 | $62.72 | $34.40 | $5.44 | $76.56 | $0.40 | $2.24 | $14.93 | $1.49 | $11.20 |
| Peregrina-Nunez, Jose Luis | | 1:Journeyman | 64.00 | 2818.64 | $501.76 | $275.20 | $43.52 | $612.48 | $3.20 | $17.92 | $112.75 | $11.27 | $84.56 |
| Williams, Arthur L. | | 1:Foreman | 170.00 | 7881.40 | $1,332.80 | $731.00 | $115.60 | $1,626.90 | $8.50 | $47.60 | $315.26 | $31.53 | $236.44 |
| | | | 402.00 | 17939.24 | $3,151.68 | $1,728.60 | $273.36 | $3,847.14 | $20.10 | $112.56 | $717.58 | $71.75 | $538.17 |

Notes:

| Done |

Version 2.5.0
Copyright 2008-2016, by Corellian Software Inc. All rights reserved.
Unauthorized use prohibited. For support: (844) 267-3542



**Exhibit G, p. 19**

Printed on:  12/20/2016

**Steiny and Company, Inc.**

| | |
|---|---:|
| Total Contributions Billed: | $    139,911.40 |
| Total Contributions Paid: | $    - |
| Contributions Due: | $    139,911.40 |
| Accrued Interest: | $    398.32 |
| Accrued Liquidated Damages: | $    2,098.67 |
| **Contributions + Interest + Liquidated Damages Due:** | **$    142,408.39** |

### Prejudgment Interest

P ( 1 + R / Days in Year ) ^ T - P =

| Work Month | Contribution Due Date, Payment Date, or IRS Rate Change Date | Amount Due or Payment Received | Interest Rate from This Date Forward | Starting Principal (P) | Interest Rate (R) | No. of Days (T) | Interest Earned Since Prior Transaction | Ending Principal |
|---|---|---|---|---|---|---|---|---|
| | 4/1/2016 | | 4.00% | 0.00 | - | - | - | - |
| Nov 2016 | 12/10/2016 | $ 139,911.40 | | 0.00 | 4.00% | 253 | - * | 139,911.40 |
| | 1/5/2017 | | | 139,911.40 | 4.00% | 26 | 398.32 * | 140,309.72 |

### Liquidated Damages

P * [ T / 30 ] * .015 - Σ% = %        P * %

| Work Month | Contribution Due Date or Payment Date | Amount Due or Payment Received | Balance Due (P) | No. of Days (T) | LD Rate (%) | Accrued Liquidated Damages |
|---|---|---|---|---|---|---|
| Nov 2016 | 12/10/2016 | 139,911.40 | 139,911.40 | 26 | 1.5% | 2,098.67 |
| | 1/5/2017 | | 139,911.40 | | | |

\* Interest calculation range includes a leap year.

‡ Split payment.

**Exhibit H, p. 1**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

225 South Lake Avenue, Suite 200, Pasadena, CA 91101

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF RAUL RODRIGUEZ IN
SUPPORT OF MOTION FOR ADMINISTRATIVE EXPENSES
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/23/2016_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached Service Information

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __12/23/2016_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Luke N Eaton
PEPPER HAMILTON LLP
350 S Grand Ave, Ste 3400
Los Angeles, CA 90071

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __12/23/2016_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
255 E. Temple Street, Courtroom 1375, 13th Floor, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | | |
|---|---|---|---|
| 12/23/2016 | Gina Marston | | /s/ Gina Marston |
| *Date* | *Printed Name* | | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**In Re: Steiny and Company, Inc.**
**Case No. 2:16-bk-25619-WB**

## SERVICE INFORMATION

*Matthew T Bechtel on behalf of Creditor Trustees of the Southern California IBEW-NECA Pension Plan, et al.,*
*Bechtel@luch.com, cheryl@luch.com,kimberley@luch.com,gina@luch.com*

*Ron Bender on behalf of Debtor Steiny and Company, Inc.*
*rb@lnbyb.com*

*Ron Bender on behalf of Plaintiff STEINY AND COMPANY, INC.*
*rb@lnbyb.com*

*Robert J Berens on behalf of Creditor Liberty Mutual Insurance Company*
*rjb@smtdlaw.com, srodriguez@smtdlaw.com*

*Robert J Berens on behalf of Creditor Safeco Insurance Company Of America*
*rjb@smtdlaw.com, srodriguez@smtdlaw.com*

*William S Brody on behalf of Interested Party Courtesy NEF*
*wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com*

*Caroline Djang on behalf of Interested Party Courtesy NEF*
*cdjang@rutan.com*

*Luke N Eaton on behalf of Creditor Consolidated Electrical Distributors, Inc.*
*eatonl@pepperlaw.com*

*Anne K Edwards on behalf of Creditor Rodi Pollock Pettker Christian & Pramov*
*aedwards@rodipollock.com*

*Kerry K Fennelly on behalf of Creditor Inland Empire IBEW-NECA Trust Funds*
*kfennelly@donaldsonandcornwell.com,*
*fileclerk@donaldsonandcornwell.com;lsheridan@donaldsonandcornwell.com;kditty@donaldsonandcornwell.com;vmindirgasova@donaldsonandcornwell.com;jbaldwin@donaldsonandcornwell.com*

*Jon F Gauthier on behalf of Interested Party Flatiron West, Inc.*
*jgauthier@ftblaw.com, jrobinson@ftblaw.com*

*Michael I Gottfried on behalf of Creditor Enterprise Rent-A-Car of Los Angeles, dba Enterprise Fleet Service*
*mgottfried@lgbfirm.com,*
*kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com;mmocciaro@lgbfirm.com*

*Jacqueline L James on behalf of Debtor Steiny and Company, Inc.*
*jlj@lnbyb.com*

*Jacqueline L James on behalf of Interested Party Courtesy NEF*
*jlj@lnbyb.com*

*Jacqueline L James on behalf of Plaintiff STEINY AND COMPANY, INC.*
*jlj@lnbyb.com*

*Michael Y Jung on behalf of Interested Party Courtesy NEF*
*jung@luch.com, gina@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Creditor Trustees of the Southern California IBEW-NECA Pension Plan, et al.,*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant CONTRACT COMPLIANCE FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant THE LOS ANGELES WORKERS CREDIT UNION ADMINISTRATIVE MAINTENANCE FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE INLAND EMPIRE IBEW-NECA LABOR MANAGEMENT COOPERATION COMMITTEE*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE LOS ANGELES COUNTY ELECTRICAL EDUCATIONAL AND TRAINING TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE NATIONAL IBEW-NECA LABOR MANAGEMENT COOPERATION COMMITTEE*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE RIVERSIDE COUNTY ELECTRICAL EDUCATION AND TRAINING TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE RIVERSIDE COUNTY HEALTH AND WELFARE TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE SOUTHERN CALIFORNIA IBEV/-NECA SUPPLEMENTAL UNEMPLOYMENT BENEFIT TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA HEALTH TRUST FUND*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA LABOR-MANAGEMENT COOPERATION COMMITTEE*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Susan Graham Lovelace on behalf of Defendant TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN*
*lovelace@luch.com, jason@luch.com,kimberley@luch.com*

*Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)*
*alvin.mar@usdoj.gov*

*David W. Meadows on behalf of Interested Party Courtesy NEF*
*david@davidwmeadowslaw.com*

*Donna T Parkinson on behalf of Creditor ZB, N.A. dba Zions Bank*
*donna@parkinsonphinney.com*

Thomas Phinney on behalf of Creditor ZB, N.A. dba Zions Bank
tom@parkinsonphinney.com

Raymond A Policar on behalf of Creditor Quinn Rental Services, Inc.
policarlaw@att.net

Jeffry D Sackman on behalf of Creditor Construction Laborers Trusts
jds@rac-law.com

Ali Salamirad on behalf of Creditor Liberty Mutual Insurance Company
as@smtdlaw.com, rb@smtdlaw.com

Ali Salamirad on behalf of Creditor Safeco Insurance Company Of America
as@smtdlaw.com, rb@smtdlaw.com

Lindsey L Smith on behalf of Debtor Steiny and Company, Inc.
lls@lnbyb.com, lls@ecf.inforuptcy.com

Lindsey L Smith on behalf of Interested Party Courtesy NEF
lls@lnbyb.com, lls@ecf.inforuptcy.com

Lindsey L Smith on behalf of Plaintiff STEINY AND COMPANY, INC.
lls@lnbyb.com, lls@ecf.inforuptcy.com

Nicholas Starkman on behalf of Creditor Cement Masons Trust Funds
nstarkman@wkclegal.com, syoung@wkclegal.com

Jolene Tanner on behalf of Creditor UNITED STATES OF AMERICA on behalf of the
INTERNAL REVENUE SERVICE
jolene.tanner@usdoj.gov, USACAC.criminal@usdoj.gov

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Kirsten A Worley on behalf of Creditor Clark Construction Company
kw@wlawcorp.com, admin@wlawcorp.com

Kirsten A Worley on behalf of Creditor Mass. Electric Construction Company
kw@wlawcorp.com, admin@wlawcorp.com

Beth Ann R Young on behalf of Plaintiff STEINY AND COMPANY, INC.
bry@lnbyb.com