ALEXANDER B. CVITAN (CSB 81746)
J. DAVID SACKMAN (CSB 106703)
PETER A. HUTCHINSON (CSB 225399)
Members of REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Creditor Construction Laborers Trusts

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>STEINY AND COMPANY, INC.,<br><br>Debtor and Debtor in Possession | CASE NO.: 2:16-bk-25619-WB<br>Chapter 11<br><br>**RESPONSE BY CONSTRUCTION LABORERS TRUSTS IN SUPPORT OF MOTION BY IBEW-NECA FOR ADMINISTRATIVE EXPENSES; REQUEST TO CONTINUE MOTION**<br>[Docket No. 117]<br><br>Date: February 2, 2017<br>Time: 10:00 AM<br>Courtroom: 1375 (Roybal) |

Creditor Construction Laborers Trust Funds for Southern California Administrative Company, referred to by the Debtor as "Construction Laborers Trusts," hereby SUPPORTS the Motion by the Trustees of the Southern California IBEW-NECA Pension Plan (IBEW-NECA) for Administrative Expenses. Further, the Construction Laborers Trusts may file its own motion for administrative expenses on a similar basis, if the Debtor does not pay its post-petition contributions due by January 20, 2016, and therefore requests that the IBEW-NECA Motion be continued to allow both motions to be heard together. This Support and Request for Continuance is based upon the following Memorandum of Points and Authorities, and all of the papers and pleadings on file in this proceeding.

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

The IBEW-NECA brings this motion for the allowance and payment of post-petition administrative expenses – specifically benefit contributions owed to employees for work under collective bargaining agreements with the Debtor. Like the IBEW-NECA, the Debtor owes significant sums for both pre-petition and post-petition contributions to the Construction Laborers Trusts. Pursuant to its collective bargaining agreements with the Southern California District Council of Laborers and its Affiliated Locals (Laborers Union), the Debtor is required to contribute to the Construction Laborers Trusts on behalf of certain covered employees, as part of their overall agreed compensation, to pay for pension, medical, and other benefits. [*See* Omnibus Declaration of Vincent Mauch in Support of First Day Motions (Mauch Decl) ¶¶ 5, 14-16].

The IBEW-NECA Motion seems to concern only contributions for work in the month in which this bankruptcy was filed – November 2016. The Construction Laborers Trusts are also owed contributions for work by the Debtor's employees in that month, which we also intend to pursue.[1] In addition, contributions for work in December 2016 (all after the petition was filed) will become due to the Construction Laborers Trusts after January 20, 2017 – which is after the responsive papers to this motion are due. If these are not paid, we will bring our own motion to pay the administrative expense of both November and December contributions. We therefore ask that the IBEW-NECA motion be continued, so that all these motions may be heard together. In the meantime, we offer the following argument in support of this motion.

We agree with the IBEW-NECA that these claims must be allowed and paid as administrative expenses under both 11 U.S.C. § 503(b)(1)(A) as well as 11 U.S.C. §

---

[1] Counsel represents that the unpaid contributions (aside from any interest, liquidated damages or other damages) for November 2016 is $ 29,410.64. In our motion, we will provide proof of such, appropriately redacted.

-2-

313408v1

1113.  While collective bargaining agreements may be considered "executory" contracts, they can be rejected or altered "only in accordance with the provisions of" 11 U.S.C. § 1113.  *In re Trump Entm't Resorts*, 810 F.3d 161, 170 (3d Cir.), *cert. denied sub nom*. <u>Unite Here Local 54 v. Trump Entm't Resorts, Inc.</u>, 136 S. Ct. 2396 (2016) (provisions of § 1113 apply equally to expired collective bargaining agreements).  Particularly relevant here is the final subsection:

> "No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section."  11 U.S.C. § 1113(f).

Thus, the Debtor's "failure to perform its pension and health insurance obligations without the unions' consent and prior to court approval was a unilateral act, and as such, strictly prohibited by § 1113(f)."  *In re Hoffman Bros. Packing Co., Inc.*, 173 B.R. 177, 185 (B.A.P. 9th Cir. 1994) (retroactive change in pension and health obligations reversed).  This is what sets this type of debt apart from other administrative claims, what some courts have called "super-priority" claims.  *See, e.g.*, *In re Unimet Corp.*, 842 F.2d 879, 884 (6th Cir.), *cert. denied*, 488 U.S. 828 (1988) (debtor "cannot escape its obligations in this regard merely because the requirements of section 503 arguably have not been satisfied.")

Even if Section 1113 is not read to alter the priorities of Section 503 to create a "super-priority," those priorities must be interpreted consistent with Section 1113, because "subsection 1113(f) mandates that any conflict between § 1113 and other code sections must be resolved in favor of § 1113 as a whole."  *In re World Sales, Inc.*, 183 B.R. 872, 878 (B.A.P. 9th Cir. 1995).

The *World Sales* case involved the same issue presented by the IBEW-NECA motion here: where work for which benefit contributions were due was performed both before and after the petition date, while the whole month of contributions

-3-

313408v1

became payable under the collective bargaining agreement in the following, post-petition month.  Construing sections 503(b) and 1113 of the Code together, the Bankruptcy Appellate Panel reversed the bankruptcy court for splitting the monthly contributions, and instead held that the entire month of contributions, as well as interest, liquidated damages and attorney fees called for by the agreement and mandated by 29 U.S.C. § 1132(g)(2), were all administrative expenses, and the failure to pay them a "post-petition" breach.  The "debtor's unperformed post-petition obligations under an unmodified or unrejected CBA are beyond the scope of § 365(g), and claims based on such post-petition breaches must be given administrative status, . . . . ." Id.

As in *World Sales*, the contributions for work performed in November, both before and after the petition date, were all due in December under the applicable collective bargaining agreements.  As in *World Sales*, that means the payment of those post-petition obligations must be treated as an administrative expense.

The Debtor may attempt to distinguish *World Sales*.  But even if it could do so, that would only mean that the priority status of November contributions would have to be allocated by the date worked.  In that situation, it would be the burden of the Debtor to prove how it is apportioned, since it has the records which it is required to maintain as to those hours.  *See* *Motion Picture Ind. Pens. & Health Plans v. N.T. Audio Visual*, 259 F. 3d 1063, 1066 (9th Cir. 2001) (*citing* *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338-39 (9th Cir. 1988).[2/]

Regardless of how the contributions for work performed in November are treated, there can be no question that the compensation for post-petition work performed in December 2016 must be given administrative priority status.  This is

---

[2/] These decisions follow the Eleventh Circuit decision of *Combs v. King*, 764 F.2d 818 (11th Cir. 1985).  All are based on the principles stated by the United States Supreme Court in interpreting the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

-4-

313408v1

why we ask that the motion be continued so that any contributions for December work be included.  Otherwise, the Court will face a series of successive motions every month to deal with these delinquencies.  As we noted in response to the Motion to Use Cash Collateral (Docket No. 102), not enough was budgeted to pay for the monthly contributions due, without incurring late fees.  In order to generate income to pay creditors and maintain good will for any sale, the Debtor needs its field employees working.  If they are not being paid, they do not have to work. *See* Amendment 13 to U.S. Constitution.  Complete and timely payment of all compensation to field employees is thus essential to a successful reorganization, in addition to the moral mandate to "*pay wages before the sun sets*."  Deut. 24:15.

                              Respectfully Submitted,

Dated:  January 19, 2017      REICH, ADELL, & CVITAN,
                                     A Professional Law Corporation

                               By:  /s/ J. David Sackman
                                   J. DAVID SACKMAN
                                   Attorneys for Creditor
                                Construction Laborers Trusts

313408v1