ALEXANDER B. CVITAN (CSB 81746),
J. DAVID SACKMAN (CSB 106703) and
PETER A. HUTCHINSON (CSB 225399), Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Email: jds@rac-law.com
Attorneys for Creditor Construction Laborers Trusts

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>STEINY AND COMPANY, INC.,<br><br>Debtor and Debtor in Possession<br><br>CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, LLC,<br><br>Creditor and Moving Party,<br><br>v.<br><br>STEINY AND COMPANY, INC,.<br><br>Debtor-in-Possession and Responding Party | CASE NO.: 2:16-bk-25619-WB<br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CONSTRUCTION LABORERS TRUST FUNDS FOR A) ALLOWANCE OF ADMINISTRATIVE EXPENSES; B) DETERMINATION THAT CONTRIBUTIONS ARE NOT ASSETS OF THE ESTATE; C) INJUNCTION FOR PAYMENT OF EMPLOYEE BENEFIT CONTRIBUTIONS**<br>[11 U.S.C. §§ 105(a), 503(b), 1113(f) and 1114; 29 U.S.C. §§ 1109(a), 1132(a)(2) and 1132(g)(2)]<br><br>Date: March 30, 2017<br>Time: 10:00 AM<br>Courtroom: 1375 (Roybal) |

# TABLE OF CONTENTS

PAGE(s)

I. INTRODUCTION ..... 1

II. SUMMARY OF FACTS ..... 2

III. ARGUMENT ..... 4

A. EMPLOYEE BENEFIT CONTRIBUTIONS DUE POST-PETITION MUST BE ALLOWED AS ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. §§ 503(B), 1113(b) AND 1114, TOGETHER WITH THE DAMAGES MANDATED BY ERISA ..... 4

1. Contributions For Post-Petition Work In December 2016 and January 2017 ..... 4

2. Contributions for November 2016 Work Due Post-Petition ..... 4

3. Section 1114 of the Bankruptcy Code Gives Administrative Status To Contributions For Retiree Health Benefits ..... 5

4. Damages Mandated By ERISA Must Also Be Given Administrative Priority ..... 6

B. VACATION DEDUCTIONS FROM WAGES AND PREVAILING WAGE PAYMENTS ARE ASSETS OF THE TRUST FUNDS, NOT THE ESTATE ..... 7

1. ERISA Regulations Define Trust Assets ..... 7

2. Deductions from Wages to the Vacation Trust ..... 8

3. Prevailing Wages ..... 8

## TABLE OF CONTENTS

PAGE(s)


4. These Portions of Contributions Are Not Assets of the Estate Subject To Secured Claims, But Assets of the Trust Fund, Which the Debtor Holds as a Fiduciary ....................9

C. AN INJUNCTION SHOULD ISSUE TO REQUIRE PAYMENT OF NOVEMBER AND DECEMBER DELINQUENT CONTRIBUTIONS, AND ALL SUBSEQUENT CONTRIBUTIONS WHEN THEY BECOME DUE ....................10

D. TO THE EXTENT ANY OTHER PRIOR ORDERS OF THIS COURT ARE TO THE CONTRARY, SUCH ORDERS SHOULD BE MODIFIED TO COMPLY WITH THE ABOVE LEGAL REQUIREMENTS....................11

IV. CONCLUSION ....................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE(s)

*Auer v. Robbins*,
519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ....................................10

*Bos v. Bd. of Trustees*,
795 F.3d 1006 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1452 (2016) ..................10

*In re Certified Air Techs., Inc.*,
300 B.R. 355 (Bankr. C.D. Cal. 2003) .......................................................... 6

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ....................................10

*Gomez v. Rossi Concrete, Inc.*,
270 F.R.D. 579 (S.D. Cal. 2010) ................................................................. 9

*Gould v. Lambert Excavating, Inc.*,
870 F.2d 1214 (7th Cir. 1989) ....................................................................11

*In re Harris*,
561 B.R. 726 (B.A.P. 8th Cir. 2017) ............................................................10

*In re Hoffman Bros. Packing Co., Inc.*,
173 B.R. 177 (B.A.P. 9th Cir. 1994) ............................................................10

*Northwest Administrators, Inc. v. Albertsons, Inc.*,
104 F.3d 253 (9th Cir. 1996) ...................................................................... 6

*Solis v. Explore Gen., Inc.*,
No. 1:10-CV-01157-AWI, 2011 WL 6749769 (E.D. Cal. Dec. 22, 2011) ............ 9

*Trustees of S. California Bakery Drivers Secuity Fund v. Middleton*,
474 F.3d 642 (9th Cir. 2007), *cert. denied*, 552 U.S. 949 (1997) ......................... 7

*U.S. v. Carter,*
353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) ........................................... 4

# TABLE OF AUTHORITIES

## FEDERAL CASES *continued*

PAGE(s)

*U.S. v. Whiting*,
471 F.3d 792 (7th Cir. 2006) .................... 8

*In re World Sales, Inc.*,
183 B.R. 872 (B.A.P. 9th Cir. 1995) .................... 4-7

*WSB Elec., Inc. v. Curry*,
88 F.3d 788 (9th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997) .................... 8

## STATUTES

Bankruptcy Code

11 U.S.C. § 105 .................... 1

11 U.S.C. § 105(a) .................... 10

11 U.S.C. § 503(b) .................... 1, 4, 5

11 U.S.C. § 503(b)(1)(A)(i) .................... 4

11 U.S.C. § 507(a)(2) .................... 4

11 U.S.C. § 523(a)(4) .................... 10

11 U.S.C. § 1113(b) .................... 4

11 U.S.C. § 1113(f) .................... 1, 5, 10

11 U.S.C. § 1114 .................... 1, 4

11 U.S.C. § 1114(a) .................... 6

11 U.S.C. § 1114(e)(2) .................... 5

Employee Retirement Income Security Act (ERISA)

ERISA § 3(21)(A), 29 § U.S.C. 1002(21)(A) .................... 7

ERISA § 409(a), 29 U.S.C. § 1109(a) .................... 1, 11

# TABLE OF AUTHORITIES

## STATUTES *continued*

Employee Retirement Income Security Act (ERISA)


ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .......... 10-11

ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2) .......... 1-2, 5, 6

ERISA § 502(g)(2)(A)-(D), 29 U.S.C. § 1132(g)(2)(A)-(D) .......... 3, 6

ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D) .......... 7, 12

ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E) .......... 1, 11


## REGULATIONS


75 F.R. 2068 .......... 8

75 F.R. 2068-2077 (1/14/2010) .......... 7

29 C.F.R. § 2510.3-102 .......... 9

29 C.F.R. § 2510.3-102(a)(1) .......... 7

29 C.F.R. § 2510.3-102(b) .......... 8

29 C.F.R. § 2510.3-102(b)(1) .......... 8

# I. INTRODUCTION

Debtor-In-Possession Steiny and Company, Inc. (Employer) is a construction contractor. Since filing this Chapter 11 bankruptcy petition, it has continued to employ construction workers on numerous projects throughout the state. While its employees continue to give their labor, the Employer has failed to pay them. Specifically, the Employer has failed to pay any contributions for employee benefits, which is part of its employees' required compensation, since filing this petition. This is an intolerable situation. Therefore, Creditor Construction Laborers Trust Funds for Southern California Administrative Company referred to by the Debtor as "Construction Laborers Trusts," brings this motion for an Order against the Employer, for:

A) Allowance of employee benefit contributions due post-petition as administrative expenses under 11 U.S.C. §§ 503(b), 1113(f) and 1114, together with interest, liquidated damages, attorney fees (to be determined by subsequent motion) and costs required by 29 U.S.C. § 1132(g)(2);

B) Determination that certain portions of these employee benefit contributions are assets of employee benefits plans, to be restored by the Debtor-In-Possession, under 29 U.S.C. § 1109(a); and

C) For an injunction to turn over certain employee benefit contributions due post-petition, and to order the Debtor-In-Possession to pay all future contributions as they become due, pursuant to 11 U.S.C. §§ 105, 1113(f) and 29 U.S.C. §§ 1109(a), 1132(a)(2) and 1132(g)(2)(E).

Further, to the extent any of the above conflicts with prior orders, those orders shold be modified accordingly.

## II. SUMMARY OF FACTS

At the time it filed this Chapter 11 petition, the Employer was signatory to collective bargaining agreements with several unions, including the Southern California District Council of Laborers and its Affiliated Locals (Laborers Union). [Declaration of Richard Quevedo (Quevedo Decl) ¶ 8]. That agreement requires contributions to employee benefit plans[1/] as part of the agreed compensation for workers covered by that agreement. [Quevedo Decl ¶ 9; Ex. 2 (MLA)]. On public works, those contributions are part of the "per diem" prevailing wage required by law to be paid workers on those projects. Calif. Labor Code § 1773.1.

One of the Trust Funds is the Construction Laborers Vacation Trust For Southern California (Vacation Trust). Contributions to the Vacation Trust are deducted, pre-tax, from employees' wages, to be transmitted along with other contributions to the Construction Laborers Trusts. [Quevedo Decl ¶ 10; Ex. 3].

Another of the Trust Funds is the Laborers Health And Welfare Trust Fund For Southern California (Health Trust). Contributions to the Health Trust include a subsidy for health benefits for retirees. [Quevedo Decl ¶ 11; Ex. 4].

Contributions for work performed in each calendar month are due, along with reports detailing the work and workers, on the 15th day, and are considered delinquent if not received by the 20th day of the following month. [Quevedo Decl ¶ 9; Ex. 2]. In the case of this Employer, it submits reports broken down by project. [Quevedo

---

1/ Laborers Health And Welfare Trust Fund For Southern California (Health Trust), Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California (Vacation Trust), Laborers Training And Re-Training Trust Fund For Southern California, Landscape Industry Promotion Fund, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California , San Diego County Construction Laborers Pension Trust Fund And San Diego Construction Advancement Fund 2003; (referred to collectively as "Trust Funds"). The Construction Laborers Trusts is a fiduciary and collection agent for the Trust Funds. [Quevedo Decl ¶¶ 2-5].

Decl ¶ 13]. In accordance with Section 502(g)(2)(A)-(D) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(g)(2)(A)-(D), the mandatory damages for failure to submit contributions and reports on time includes interest, liquidated damages, and if necessary, attorney fees and costs. [Quevedo Decl ¶ 12; MLA (Ex. 2) Art. XXV.L].

When the Employer filed this petition on November 28, 2016, it was already severely delinquent in contributions to the Construction Laborers Trusts. [Quevedo Decl ¶ 14; Ex. 5; Declaration of J. David Sackman (Sackman Decl) ¶¶ 2-3]. When contributions for work performed, both pre- and post-petition, in November 2016 became due in December 2016, the Employer reported, but failed to pay, $29,410.64 in contributions. [Quevedo Decl ¶ 15; Ex. 6]. When contributions for post-petition work performed in December 2016 became due in January 2017, the Employer reported, but failed to pay, $19,420.10 in contributions. [Quevedo Decl ¶ 16; Ex. 7]. When contributions for post-petition work performed in January 2017 became due in February 2017, the Employer reported, but failed to pay $21,083.86 in contributions. [Quevedo Decl ¶ 17; Ex. 8]. The above amounts include pay deducted pre-tax from wages for the Vacation Trust, contributions for retiree health insurance, and amounts required by prevailing wage law. [Quevedo Decl ¶ 23; Ex. 9]. Based on this pattern, we expect that the Employer will become delinquent for February contributions as well, due before this hearing.

The field agents and attorneys for the Construction Laborers Trusts have spent a considerable amount of time issuing releases, and trying to collect from third parties, through stop payments notices, mechanic liens and bond claims. [Quevedo Decl ¶ 19; Sackman Decl ¶¶ 4-5]. Despite these efforts, only a small amount has been collected. Currently, over $100,000 is at issue here (not counting pre-petition claims or attorney fees); and that amount is expected to grow before this motion can be heard. [Quevedo Decl ¶ 23; Ex. 9]. This motion is thus necessary to stop the bleeding.

# III. ARGUMENT

## A. EMPLOYEE BENEFIT CONTRIBUTIONS DUE POST-PETITION MUST BE ALLOWED AS ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. §§ 503(B), 1113(b) AND 1114, TOGETHER WITH THE DAMAGES MANDATED BY ERISA

### 1. Contributions For Post-Petition Work In December 2016 and January 2017

> "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— (1)(A) the actual, necessary costs and expenses of preserving the estate including— (i) wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b).

Payment for labor performed by the Employer's employees after "commencement of the case" (11/28/2016) comes literally and clearly within the definition of administrative expenses under 11 U.S.C. § 503(b)(1)(A)(i), entitled to priority under 11 U.S.C. § 507(a)(2). It was long ago established that, "Not until the required contributions have been made will [the Employer's] employees have been 'paid in full' for their labor in accordance with the collective bargaining agreements." *U.S. v. Carter*, 353 U.S. 210, 217-218, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) (employee benefit contributions can be recovered from Miller Act bond). *See In re World Sales, Inc.*, 183 B.R. 872 (B.A.P. 9th Cir. 1995) (post-petition benefit contributions must be given administrative priority status, along with "ancillary" damages).

There can be no question that the contributions work in December 2016 and January 2017 have administrative priority. The amount of contributions comes directly from the Employer's own reports. [Quevedo Decl ¶¶ 16-17; Ex.s 7 and 8].

### 2. Contributions for November 2016 Work Due Post-Petition

Contributions for work performed in November 2016, payable in December 2017, are also entitled to administrative priority under 11 U.S.C. § 503(b). *See In re*

World Sales, *supra*. The World Sales case involved the same issue presented here for November contributions due in December 2016: where work for which benefit contributions were due was performed both before and after the petition date, while the whole month of contributions became payable under the collective bargaining agreement in the following, post-petition month. Construing sections 503(b) and 1113(f)[2/] of the Code together, the Bankruptcy Appellate Panel reversed the bankruptcy court for splitting the monthly contributions, and instead held that the entire month of contributions, as well as interest, liquidated damages and attorney fees called for by the agreement and mandated by 29 U.S.C. § 1132(g)(2), were all administrative expenses, and the failure to pay them a "post-petition" breach, which "must be given administrative status, . . . . ." Id.

As in World Sales, the contributions for work performed in November, both before and after the petition date, were all due in December under the applicable collective bargaining agreements. As in World Sales, that means the payment of those post-petition obligations must be treated as an administrative expense.

3. Section 1114 of the Bankruptcy Code Gives Administrative Status To Contributions For Retiree Health Benefits

> "Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title." 11 U.S.C. § 1114(e)(2).

Interpreting this provision, another Judge in this Bankruptcy Court has held that "contributions to multi-employer health plans, such as ARITF's Health Fund, mandated by a collective bargaining agreement are "retiree benefits" within the

---

2/ "No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. § 1113(f).

meaning of § 1114(a)." *In re Certified Air Techs., Inc.*, 300 B.R. 355, 371 (Bankr. C.D. Cal. 2003). The situation there was exactly the same as here in all relevant respects – contributions were required under a collective bargaining agreement, on an hourly basis, to a health fund, which was used, in part, to subsidize retiree health benefits. [Quevedo Decl ¶ 11; Ex. 4]. "The fact that [the Employer] may not currently have retired employees receiving benefits from the Health Fund does not change the fact that its contributions to the Health Fund are covered by § 1114(a)." 300 B.R. 355, 371–72.

Therefore, contributions to the Health Fund payable after the petition date must be given administrative status, including contributions for pre-petition work. *See Certified Air Tech*, *supra*.

4. Damages Mandated By ERISA Must Also Be Given Administrative Priority

The administrative priority discussed above includes, not just the contributions, but the "ancillary" damages of interest, liquidated damages, and attorney fees in enforcing this obligation. These damages are mandatory, not discretionary, under the statute. ERISA §§ 502(g)(2)(B) (interest), (C) (liquidated damages) and (D) (attorney fees and costs), 29 U.S.C. §§ 1132(g)(2)(B)-(D). *See Northwest Administrators, Inc. v. Albertsons, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996). The Ninth Circuit Bankruptcy Appellate Panel has held that:

> "As to the issues relative to ancillary damages incurred by the debtor under the CBA and ERISA—liquidated damages, interest, and attorneys fees—which accrued based on the debtor's post-petition conduct, it appears that appellant should recover same. The terms of the CBA imposed on the debtor certain obligations if contributions were not timely paid. These obligations were incurred post-petition." *In re World Sales, Inc.*, 183 B.R. 872, 878 (B.A.P. 9th Cir. 1995).

The interest and liquidated damages due are set out in paragraph 18 of the Quevedo Declaration, and summarized in Exhibit 9. Interest is calculated to the hearing date. The mandatory attorney fees for prosecuting this motion should be determined by a subsequent motion, as they were in World Sales. *See* ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D).

B. VACATION DEDUCTIONS FROM WAGES AND PREVAILING WAGE PAYMENTS ARE ASSETS OF THE TRUST FUNDS, NOT THE ESTATE

Portions of the contributions at issue here must be turned over to the Trust Funds, not just because of their priority under the Bankruptcy Code, but because they are not part of the estate. Rather, these amounts are assets of the Trust Funds, which the Employer only holds as a fiduciary.

1. ERISA Regulations Define Trust Assets

"Under ERISA, a person is a fiduciary with respect to an ERISA-qualified plan to the extent he "exercises any authority or control respecting management or disposition of its assets." *Trustees of S. California Bakery Drivers Secuity Fund v. Middleton*, 474 F.3d 642, 645 (9th Cir. 2007), *cert. denied*, 552 U.S. 949 (1997), *citing* ERISA § 3(21)(A), 29 § U.S.C. 1002(21)(A). While ERISA contains no definition of plan assets, the Department of Labor (DOL) has issued regulations defining plan assets. 75 F.R. 2068-2077 (1/14/2010). Specifically:

> "[T]he **assets of the plan include** amounts (other than union dues) that a participant or beneficiary pays to an employer, or **amounts that a participant has withheld from his wages by an employer, for contribution** . . . as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a)(1).

But, "in no event shall the date determined pursuant to paragraph (a)(1) of this section occur later than . . . the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from a participant's wages). 29 C.F.R. § 2510.3-102(b)(1) (*emphasis added*).[3/]

2. Deductions from Wages to the Vacation Trust

The deductions made by the Employer, pre-tax, from its employees' wages, which are supposed to be turned over to the Vacation Trust, fit squarely within the DOL definition of "plan assets." [Quevedo Decl ¶ 10; Ex. 3]. "Once the contributions are withheld, the money no longer belongs to the company; rather, the funds belong to the employees." U.S. v. Whiting, 471 F.3d 792, 799 (7th Cir. 2006) (citing this regulation).

The Employer has already deducted these amounts from its employee's wages, and those employees have already paid taxes on those amounts, which the Employer was supposed to turn over to the Vacation Trust. These amounts are separately shown on the reports (Ex.s 6-8) and summarized on Exhibit 9.

3. Prevailing Wages

On public works in California, "prevailing wages" or "per-diem" wages, are required to be paid to employees. Calif. Labor Code § 1773.1. This "law is concerned with guaranteeing a minimum cash wage for employees on public works contracts." WSB Elec., Inc. v. Curry, 88 F.3d 788, 794 (9th Cir. 1996), *cert. denied*,

3/ In adopting these rules, the Department of Labor commented that: "the time frames established in collective bargaining, employer participation and similar agreements must be taken into account . . . provided that any such time frames do not extend beyond the maximum period prescribed in § 2510.3-102(b)." 75 FR 2068, 2071. The agreements here prescribe that the contributions are due by the 15th (the same as the outer limit of the regulations) and delinquent by the 20th of the following month. [Quevedo Decl ¶ 9].

519 U.S. 1109 (1997). Under this statutory scheme, "the employer must pay employees the prevailing wage, and it may do so through a combination of cash and benefits." Id., at 791.

The DOL has taken the position that the total compensation package required by California prevailing wage law constitutes the wages due employees, and so the the portion required to be turned over to ERISA funds constitute "assets" of those funds under this regulation. 29 C.F.R. § 2510.3-102. The courts have agreed. In an action for fiduciary breach brought by the DOL against an employer for (among other things) the fringe benefit portion of the California prevailing wage the employer failed to pay, and relying on this regulation, the court found "under the foregoing approach, the unpaid fringe benefit contributions owed to Explore General employees became Plan assets as soon as they were due under the terms of the Plan." *Solis v. Explore Gen., Inc.*, No. 1:10-CV-01157-AWI, 2011 WL 6749769, at *5 (E.D. Cal. Dec. 22, 2011). *See also*, *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579 (S.D. Cal. 2010) (certifying sub-class on claim that failure to pay total prevailing wage to pension plan was a fiduciary breach under ERISA).

Here, the public works jobs to which this prevailing wage requirement applies can be identified from the Employer's reports and project information it has provided to the Trust Funds. [Quevedo Decl ¶ 13]. Based on this information, the amount of contributions required by prevailing wage law on public works has been calculated for each month. [Quevedo Decl ¶ 18; Ex. 9].

4. These Portions of Contributions Are Not Assets of the Estate Subject To Secured Claims, But Assets of the Trust Fund, Which the Debtor Holds as a Fiduciary

When those portions of contributions became plan assets under DOL regulations and ERISA, they no longer belonged to the bankruptcy estate of the

Employer, but are assets of the Trust Funds. Thus, "a trust is created when the employer withholds wages for payments to a plan providing benefits to employees." In re Harris, 561 B.R. 726, 734 (B.A.P. 8th Cir. 2017).

The Employer will probably point to the decision in Bos v. Bd. of Trustees, 795 F.3d 1006 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1452 (2016), in which the Ninth Circuit found that an employer was not a fiduciary as to unpaid contributions for purposes of determining dischargeability under 11 U.S.C. § 523(a)(4). However, the only theory of "plan assets" at issue in the Bos case was "when the plan document expressly defines the fund to include future payments." Id. at 1009. The Ninth Circuit did not consider the DOL regulations, which is the issue here. If it did, it would have to defer to those regulations, "so long as it is "based on a permissible construction of the statute." *Auer v. Robbins*, 519 U.S. 452, 457, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997), *quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Therefore, it is the DOL regulations, not any decision on a different theory, which are controlling here.

C. AN INJUNCTION SHOULD ISSUE TO REQUIRE PAYMENT OF NOVEMBER AND DECEMBER DELINQUENT CONTRIBUTIONS, AND ALL SUBSEQUENT CONTRIBUTIONS WHEN THEY BECOME DUE

This Bankruptcy Court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[4/] As an adjunct of the district court, this Court is also authorized by ERISA §

---

4/ The Debtor's "failure to perform its pension and health insurance obligations without the unions' consent and prior to court approval was a unilateral act, and as such, strictly prohibited by § 1113(f)." *In re Hoffman Bros. Packing Co., Inc.*, 173 B.R. 177, 185 (B.A.P. 9th Cir. 1994) Thus, injunctive relief is appropriate to enforce this provision of the Code.

502(a)(2), 29 U.S.C. § 1132(a)(2) to issue injunctive relief to remedy violation of fiduciary duties in ERISA § 409(a), 29 U.S.C. § 1109(a). Further, ERISA authorizes injunctive relief specifically as to delinquent contributions. ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E). *See* Gould v. Lambert Excavating, Inc., 870 F.2d 1214 (7th Cir. 1989) (affirming preliminary injunction to pay prospective contributions). This Court therefore has the authority, and should, order injunctive relief. We request an injunction to both order the Employer to pay past contributions[5/] due for November and December 2016 and January 2017, as well as to prospectively pay its contributions on time going forward. Immediate payment is required, because of the irreparable harm to employees and their families from the loss of benefit coverage, especially as to health insurance. [Quevedo Dec. ¶ 21].

D. TO THE EXTENT ANY OTHER PRIOR ORDERS OF THIS COURT ARE TO THE CONTRARY, SUCH ORDERS SHOULD BE MODIFIED TO COMPLY WITH THE ABOVE LEGAL REQUIREMENTS

To the extent past orders of this Court may conflict with the relief sought here, we ask that this Order supersede, and if necessary, amend those orders. This may include the Order Authorizing Use of Cash Collateral on a Final Basis (Docket No. 146), which budgeted an insufficient amount to pay benefit contributions. As discussed above, portions of the contributions at issue are not part of estate property subject to secured claims, but assets of the Trust Funds, held in trust by the Debtor. This may also include the pending motion to give Liberty Mutual a "super-priority" administrative claim. [Docket No. 208]. A non-human insurance company should not be paid before human workers.

---

5/ We do not seek injunctive relief as to interest, liquidated damages or attorney fees.

## IV. CONCLUSION

The post-petition work of the Employer's laborers must be allowed as an administrative expense. The contributions past due must be paid immediately,[6/] and the contributions going forward must be paid on time. The remaining damages of interest, liquidated damages and attorney fees, mandated by ERISA, must be added to the administrative claim of the Construction Laborers Trusts. Attorney fees may be determined by subsequent motion, pursuant to ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D). A Proposed Order to that effect accompanies this motion.

Respectfully Submitted,

Dated: March 9, 2017

REICH, ADELL, & CVITAN,
A Professional Law Corporation

By: /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Creditor
Construction Laborers Trusts

6/ As shown in Exhibit 9, these contributions are $55,152.89. This amount may change as February 2017 contributions become due, and more joint checks are received towards the November 2016 – January 2017 contributions.