ALEXANDER B. CVITAN (CSB 81746)
J. DAVID SACKMAN (CSB 106703)
PETER A. HUTCHINSON (CSB 225399)
Members of REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Creditor Construction Laborers Trusts

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>STEINY AND COMPANY, INC.,<br><br>Debtor and Debtor in Possession<br><br>―――――――――――<br><br>CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, LLC,<br><br>Creditor and Moving Party,<br><br>v.<br><br>STEINY AND COMPANY, INC,.<br><br>Debtor-in-Possession and Responding Party | CASE NO.: 2:16-bk-25619-WB<br>Chapter 11<br><br>**DECLARATION OF RICHARD QUEVEDO IN SUPPORT OF MOTION FOR ADMINISTRATIVE EXPENSES, ETC.**<br><br>Date: March 30, 2017<br>Time: 10:00 AM<br>Courtroom: 1375 (Roybal) |

-1-

313802v2

# DECLARATION OF RICHARD QUEVEDO

I, RICHARD QUEVEDO, declare as follows:

1. [IDENTITY] I am over eighteen years of age and am employed in the County of Los Angeles, State of California. The facts stated herein are within my personal knowledge and if called upon to testify I can truthfully and competently do so as to all matters herein contained.

2. [JOB CAPACITY] I am the Executive Director for the Construction Laborers Trust Funds For Southern California Administrative Company, LLC ("CLTF"), an administrative agent for collection and fiduciary to the Laborers Health And Welfare Trust Fund For Southern California (Health Trust), Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California (Vacation Trust), Laborers Training And Re-Training Trust Fund For Southern California, Landscape Industry Promotion Fund, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California , San Diego County Construction Laborers Pension Trust Fund And San Diego Construction Advancement Fund 2003; (hereinafter referred to collectively as "Trust Funds").  I have held this position since February 2003.

3. [ADMINISTRATOR] CLTF as the collection administrator of the Trust Funds is responsible to the Board of Trustees of each of the Trust Funds for certain administrative functions.  These functions include, but are not limited to, the processing of employer's contribution reports, and recording receipt of monies or delinquencies involved with the employer's monthly reports, apportioning the monies recovered to the appropriate Trust Funds, and verifying the amounts owed by

employers who are bound to the Trust Agreements establishing the Trust Funds, and bound Collective Bargaining Agreements with the Southern California District Council of Laborers and its affiliated Local Unions ("Union"). CLTF has the responsibility for all collection activity to ensure the employers' compliance with the reporting requirements of the Collective Bargaining Agreements and Trust Agreements and to obtain payment of any delinquent account. CLTF works with a co-administrator of the Trust Funds, Pacific Southwest Administrators ("PSWA") in handling of employer's accounts.

4. [JOB DUTIES] As the Executive Director of CLTF, my job duties include, but are not limited to the management and supervision of all collection activities of CLTF on behalf of the Trust Funds. I supervise the audit staff which has the responsibility to ensure that employers signatory to the collective bargaining agreements with the Union have fully complied with the reporting requirements of the agreements; the accounting staff, which, among other things, has the responsibility to ensure that all monies owed and paid on the employer's account have been properly credited and accounted for, and the field staff, which has the duty to collect the outstanding monies owed by employer. I am also in charge of and have custody and control over all business records relating to employer's accounts with the Trust Funds, including maintaining copies of all written agreements which establish the basis for contributions by employers to the Trust Funds. Based on the foregoing, I have firsthand knowledge and I am familiar with all business records maintained by the Trust Funds and I am familiar with the establishment and operation of CLTF, and the Trust Funds.

5. [TRUST FUNDS] The Trust Funds are each express trusts and were created by written agreements and are meant to be employee benefit plans within the meaning of the Employee Retirement Income Security Act (ERISA) § 3(3), 29 U.S.C.

313802v2

1  § 1002(3) and multi-employer plans within the meaning of ERISA § 3(37)(A), 29
2  U.S.C. § 1002(37)(A). The Trust Funds are jointly-managed pursuant to the Labor
3  Management Relations Act (LMRA) § 302(c)(5), 29 U.S.C. § 186(c)(5). The
4  Plaintiff's principal place of business is in, and the Trust Funds are administered in
5  the County of Los Angeles, State of California.

7  6.    [UNION] The Southern California District Council of Laborers and its
8  affiliated Local Unions (Union) was and is a labor organization representing
9  employees in industries affecting commerce. The Trust Funds are established and
10 jointly managed pursuant to collective bargaining agreements between the Union and
11 multi-employer associations in the construction industry.

13 7.    [RECORDS] Employer files are maintained by CLTF and PSWA on all
14 employers signatory to labor agreements with the Union. CLTF and PSWA maintain
15 those accounts on behalf of the Trust Funds. The employer file customarily contains
16 the originals and/or copies of any written collective bargaining agreement between
17 the employer and the Union, the originals and/or copies of monthly reports submitted
18 by the employer to the Trust Funds (showing identities of employees, hours worked
19 and contributions due), the originals and/or copies of correspondence regarding the
20 employer, a record of claims made by employees evidencing hours worked by
21 employees which were not properly reported and/or paid by the employer, a copy of
22 any audit conducted on the employer's business records and where the employer has
23 failed to pay amounts that are due, a statement of the employer's delinquent amounts,
24 and copies of the employer's business records if copies were obtained from the
25 employer at the time of the audit or sent to the Trust Funds by the employer. I have
26 reviewed the employer files maintained by CLTF and PSWA on behalf of the Debtor,
27 Steiny & Co., Inc. ("Employer"), and my testimony below is based on that review of
28 the records.

-4-

313802v2

8. [COLLECTIVE BARGAINING AGREEMENTS] The Employer signed a collective bargaining agreement with the Union in 1963. A copy of that agreement is **Exhibit 1** here. The Employer has subsequently been covered by successive "Master Labor Agreements." Our file shows no record of the Employer terminating the collective bargaining relationship. A copy of the current (2015-2018) Master Labor Agreement for Southern California ("MLA") is **Exhibit 2** here. The MLA, in turn, incorporates the Trust Agreements of the various Trust Funds. Excerpts from the Trust Agreement for the Vacation Trust, discussed below, are attached here as **Exhibit 3**.

9. [CONTRIBUTION AND REPORTING OBLIGATION] "Contractors covered by the terms of" the MLA "agree to pay to the" various Trust Funds a certain designated amount "for each hour worked or paid for on all classifications contained in this Agreement." For example, this is found in the following provisions of the MLA: Art. XIX.C (Health & Welfare), XIX.D (Pension), XIX.E (Vacation), XIX.F (Training), XX.A (FCIA), XXI.A (CATF), XXII.1 (CCC). These are among the contributions CLTF is charged with collecting. Article XXV.A of the MLA provides that "The Contractor shall pay its monthly contributions to the Trust Funds accompanied by a fully completed and executed report form furnished by the Trust Funds." These are among the reports which are required to be submitted to the Trust Funds. Article XXV.J. of the MLA provides the Trust Funds with authority to audit employer records. Contributions and reports for work performed in each calendar month are due on the 15th day, and delinquent if not received by the 20th day of the following month.

10. [VACATION DEDUCTIONS] As indicated in Section 12.07 of the Vacation Trust Agreement (Exhibit 3), "Contributions to the Fund and any liquidated damages payable in connection therewith, shall be deemed to be, and shall be, a part

-5-

313802v2

of the wages due to the employees with respect to whose work such payments are made" and "shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund." In other words, contributing employers deduct the vacation contribution from the pre-tax wages of employees on each paycheck, and then report and transmit that amount, along with other contributions, to the Trust Funds each month. This is the regular practice of employers contributing to the Trust Funds, and (from our review of the Employer's payroll records) is the practice of this Employer.

11. [RETIREE HEALTH INSURANCE] Contributions to the Health Trust fund benefits to provide health benefits for retirees, their spouses and dependents. This takes the form of a subsidy which discounts the premium retirees would otherwise have to pay for these benefits. This is shown in the Summary Plan Description (SPD) of the Health Fund, under the heading "Retiree Monthly Premium and Subsidy" on page 17. A copy of that provision of the Health Fund SPD is attached here as **Exhibit 4**.

12. [DAMAGES FOR DELINQUENCY] Article XXV of the MLA sets out the damages, procedures and consequences of delinquencies in Employer reporting and contributions, which my office is charged with enforcing on behalf of the Trust Funds. In particular, Art. XXV.L provides:

> "It is recognized that a delinquency in contributions causes damages beyond the value of the unpaid contributions, which are difficult to quantify. These damages include, but are not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on Contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to but for the delinquency of the Contractor. Because

these damages are difficult, if not impossible, to quantify on a case-by-case basis, the parties agree that liquidated damages, not a penalty, for such losses shall be set at the greater of $25 or 20% of the contributions late or unpaid for each Trust Fund. The parties have reviewed the costs of collection by the Trust Funds, and agree that 20% liquidated damages is an accurate projection of the Trusts' damages that result from a delinquency. In addition, any Contractor delinquent in its obligations under this Article shall be required to pay interest on the delinquent contributions (at a rate to be set by the Trustees of the Trust Funds), and any audit fees. In the event that litigation is necessary to collect any delinquent contributions (including litigation to enforce mechanic liens, stop notices, bond claims or similar remedies, and any bankruptcy or receivership proceedings) or to enforce any obligation under this Article, in addition to liquidated damages owed by the delinquent Contractor, the Contractor shall also be liable for all reasonable attorney fees and legal costs incurred in such litigation. The Trustees of the Trust Funds may waive or reduce the amount of liquidated damages, at their sole discretion and consistent with their fiduciary duties. The decision of the Trustees in any request to waive or reduce liquidated damages shall be final and binding upon the parties.

The trustees of the Trust Funds have set the rate of interest at five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California for advances to member banks effective on the due date of the Monthly Contributions. That rate is currently 6.25% per annum.

13.    [STEINY REPORTS] This Employer reports to the Trust Funds on a "project" basis. This means that the hours worked by each employee are separately listed on the reports for each project that employee worked on that month. Steiny provides information to the Trust Funds for each project its employees works on, and the Trust Funds assign a project code number for each project. The reports list hours worked on each project by the project code number, so that the hours worked on each project can be easily ascertained, assuming that the reports are accurate and complete.

14.    [PRE-PETITION DELINQUENCY] CLTF conducted an audit of the Employer, and found delinquent contributions and subcontracting violations. This was the subject of a lawsuit in this District, Case No. 15cv01643 GW (LAWSUIT). A settlement was reached between Steiny and the Trust Funds, which resulted in a Stipulated Judgment in the LAWSUIT. A copy of that Stipulated Judgment, as

-7-

313802v2

entered by the Court in the LAWSUIT, is **Exhibit 5**. The Employer became in default of that Settlement by, among other things, failing to pay contributions for work in June through October 2016 on time.

15.  [DELINQUENCY FOR HOURS WORKED IN NOVEMBER 2016] The Employer submitted a timely report for hours worked in November 2016, but without payment. A copy of that report, with personal employee information redacted, is **Exhibit 6** here. According to that report, a total of $29,410.64 contributions were due for hours worked in November 2016.

16.  [DELINQUENCY FOR HOURS WORKED IN DECEMBER 2016] The Employer submitted a timely report for hours worked in December 2016, but without payment. A copy of that report, with personal employee information redacted, is **Exhibit 7** here. According to that report, a total of $19,420.10 contributions were due for hours worked in December 2016.

17.  [DELINQUENCY FOR HOURS WORKED IN JANUARY 2017] The Employer submitted a timely report for hours worked in January 2017, but without payment. A copy of that report, with personal employee information redacted, is **Exhibit 8** here. According to that report, a total of $21,083.86 contributions were due for hours worked in January 2017.

18.  [BREAKDOWN OF DELINQUENCY] The reports (Exhibits 6, 7 and 8) show on their face how much of the total is for Vacation and Health contributions. From the project codes on these reports and the project information separately provided by the Employer, my office can ascertain how much of the total contributions are for prevailing wage (public) jobs. Based on these reports and information, we have broken down the totals as follows:

-8-

313802v2

    A.  For the reported November 2016 contributions totaling $29,410.64, $4,413.28 is for wage deductions to the Vacation Trust, $10,815.36 is for contributions to the Health Trust, and $19,236.70 is for contributions on prevailing wage jobs (which also includes Vacation and Health contributions).

    B.  For the reported December 2016 contributions totaling $19,420.10, $2,840.32 is for wage deductions to the Vacation Fund, $6,962.54 is for contributions to the Health Fund, and $15,442.56 is for contributions on prevailing wage jobs (which also includes Vacation and Health contributions).

    C.  For the reported January 2017 contributions totaling $21,083.86, $3,103.16 is for wage deductions to the Vacation Fund, $7,606.32is for contributions to the Health Fund, and $18,571.28is for contributions on prevailing wage jobs (which also includes Vacation and Health contributions).

    D.  We calculate $503.61 interest (to 3/30/2017) and $5,693.27 liquidated damages for the delinquent November 2016 contributions; and $229.45 interest (to 3/30/2017) and $7,533.53 liquidated damages for the delinquent December 2016 contributions; and $137.19 interest (to 3/30/2017) and $4,216.77 liquidated damages for the January 2017 contributions.

19.    [COLLECTIONS FROM JOB ACTIONS]  Using the project information from the Employer's reports, CLTF has been able to break down the contributions due from each month by project.  We issue Conditional Releases to general contractors, stating the amount required to pay contributions and interest due on that project for the specific time period.  If that is not paid, we may pursue stop payment notice, mechanic lien, and/or payment bond claims, in consultation with

-9-

313802v2

legal counsel, to collect the contributions and interest due on each particular job for that time period. As a result, we have received payment (some in the form of "joint checks") from general contractors or their sureties, on various jobs. This has included the following payments applied to hours worked in November and December 2016:

    A. On January 16, 2017, we received a check from RJ Noble for $316.59 for work on a public work "Route 91 Freeway." Of this, all was applied to November 2016.

    B. On January 16, 2017, we received a check from Griffith Co. for $21,538.17 for work on a private work known as "S. Millikin." Of this, $9,740.76 was applied to November 2016.

    C. On January 25, 2016, we received a check for $15,519.97 from Shames for work on a private work on a Wal-Mart. Of this, $1,590.81 was applied to November 2016, and $1,740.72 was applied to December 2016.

    D. On February 14, 2017, we received a check for $2,580.35 from Griffith Co., for work on a public project at Dana Point. Of this, $678.09 was applied to November 2016, and $694.74 was applied to December 2016.

    E. Of the above checks, a total of $1,494.40 went towards Vacation contributions and $3,707.60 went towards Health contributions.

    F. We continue to make claims, provide releases, and receive joint checks for contributions for work by employees of Steiny. The above reflects the information available at this time, which may change before the hearing on this matter.

20. [HARM FROM LACK OF CONTRIBUTIONS] By reason of the Employer's failure to pay contributions on time, the Trust Funds and the employees

-10-

313802v2

of the Employer have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury. Employee beneficiaries of the Trust Funds acquire eligibility for health and welfare benefits and pension benefits through hours contributed by the Employer other employers during each monthly period. The funds necessary to pay all anticipated health and welfare claims and pension claims are based upon the number of hours reported to the Trust Funds on behalf of individual employees. In addition, the amount of benefits payable to all employees for health and welfare and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers. This contributes to the total potential liability of the Trust Funds for health and welfare and pension claims without the Trust Funds being able to readjust or recompute benefit levels based upon the Employer's failure to pay contributions on a monthly basis. In the case of this Employer, CLTF has been asked to provide breakdowns and releases, and to prepare mechanic liens, stop payment notices and bond claims, for the delinquent contributions, and then processing and crediting the funds received. We have strived to promptly provide such releases when requested by the Employer and/or its general contractors. This has required an enormous amount of extra work by my staff, which is added to by every month the Employer is delinquent.

21. [LOSS OF HEALTH INSURANCE] Unlike pension, the Health Trust does not provide credit to employees for hours worked towards health contributions, when those contributions have not been paid. To be eligible for health benefits, employees must have a certain threshold amount of hours actually contributed on their behalf for covered work. Similarly, to maintain that coverage, a certain amount of hours must be paid into the Health Trust on account of that employee. Employees may accumulate a "bank" of hours during periods of unemployment, which they may use to maintain eligibility during periods when no contributions are made. However, once that bank of hours is depleted, the employee is no longer eligible for coverage.

313802v2

In this case, several employees of the Employer face imminent loss of health insurance coverage, even though they have worked the requisite number of hours, because the Employer has not paid these contributions.

22.    [CONTINUING OBLIGATIONS] I am informed and believe that employees of Steiny continue to perform work on projects for which contributions are payable to the Trust Funds. Reports and contributions for work performed in February 2017 will become due on March 15, and delinquent after March 20, 2017.

23.    [SUMMARY OF CLAIM SO FAR] In sum, a total of $47,933.77 in contributions, interest and liquidated damages remains due (after the above credits) for November 2016 contributions due in December 2016; a total of $29,618.54 in contributions, interest and liquidated damages remains due (after the above credits) for December 2016 contributions due in January 2017; and a total of $25,437.82 in contributions, interest and liquidated damages remains due (after the above credits) for January 2017 contributions due in February 2017.. This total of $102,990.13 includes Vacation deductions of $8,862.36, Health contributions of $21,676.62, and prevailing wage contributions of $51,561.12, after the above credits. A spreadsheet showing these calculations is attached here as **Exhibit 9**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___/___ day of March 2017, at El Monte, California.

_____
RICHARD QUEVEDO

-12-

313802v2

# DECLARATION OF RICHARD QUEVEDO
# INDEX OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1 | 1963 Collective Bargaining Agreement |
| 2 | 2015-2018 MLA |
| 3 | Vacation Trust Excerpts |
| 4 | Health Fund SPD Excerpts |
| 5 | Stipulated Judgment |
| 6 | November 2016 Reports (Redacted) |
| 7 | December 2016 Reports (Redacted) |
| 8 | January 2017 Reports (Redacted) |
| 9 | Spreadsheet Summary |