RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN 143945)
JACQUELINE L. JAMES (SBN 198838)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; bry@lnbyb.com; jlj@lnbyb.com; lls@lnbyb.com

Attorneys for Chapter 11 Debtor & Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>STEINY AND COMPANY, INC.,<br><br>       Debtor and Debtor in Possession. | Case No.: 2:16-bk-25619-WB<br><br>Chapter 11 Case<br><br>**DEBTOR'S OPPOSITION TO MOTION OF CONSTRUCTION LABORERS TRUST FUNDS FOR:**<br>    **A) ALLOWANCE OF ADMINISTRATIVE EXPENSES;**<br>    **B) DETERMINATION THAT CONTRIBUTIONS ARE NOT ASSETS OF THE ESTATE; AND**<br>    **C) INJUNCTION FOR PAYMENT OF EMPLOYEE BENEFIT CONTRIBUTIONS;**<br>**DECLARATION OF SUSAN STEINY IN SUPPORT**<br><br>Hearing:<br>DATE:    March 30, 2017<br>TIME:    10:00 a.m.<br>PLACE:  Courtroom 1375<br>           255 E. Temple Street<br>           Los Angeles, CA |

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE AND MOVANT:**

Steiny and Company, Inc. (the "Debtor"), the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case, respectfully submits its opposition (the "Opposition") to the motion filed by creditor Construction Laborers Trust Funds for Southern California Administrative Company ("Movant") seeking: (1) the allowance of administrative expenses, (2) a determination that contributions are not assets of the estate, and (3) an injunction for payment of employee benefit contributions (the "Motion").

**I.**

**INTRODUCTION**

By the Motion, Movant maintains that it is entitled to and seeks: (1) an allowed administrative claim for certain portions of fringe benefit contributions that it alleges have not yet been paid to it and for the penalties, attorneys' fees and interest associated with such non-payment, (2) declaratory relief in the form of a determination that certain of those fringe benefit contribution amounts do not constitute property of the Debtor's estate, (3) the turnover of such amounts to it immediately, (4) injunctive relief, and (5) the modification of certain prior orders of the Court. The Motion should be denied on both procedural and substantive grounds.

As a preliminary matter, the Motion should be denied because it is procedurally improper. Most of the relief sought, specifically the request for declaratory relief to establish an interest (or the non-interest of the estate) in property or money, the turnover or recovery of property or money, and injunctive relief, may only be sought through an adversary proceeding and, thus, cannot be sought the Motion. In addition, the relief that may be sought by the Motion (i.e., the allowance of an administrative claim and the modification of prior court orders) should be denied because those issues cannot be properly decided until the issues that require an adversary proceeding have been decided.

The relief sought in the Motion should also be denied on substantive grounds.[1]  Although the Debtor would not generally object to the idea of administrative treatment for obligations incurred post-petition, the request for the allowance of an administrative claim with respect to Movant is premature.  There are many creditors in this case that are providing materials, service and other things of value to the estate post-petition but most of them are not seeking the allowance of administrative claims at this time because the Court has not yet set a deadline for the filing of such claims and because they are continuing to bill and be paid in the ordinary course. As explained in the Declaration of Susan Steiny annexed hereto (the "Steiny Declaration"), Movant has received approximately $100,000 post-petition in payments to be applied towards fringe benefit contribution amounts from the Debtor's clients and, since the Debtor continues to operate it business, Movant is continuing to receive such amounts in the ordinary course.  Thus, the allowance of an administrative claim for unpaid amounts, which will continue to be paid (and may be paid in full) in the ordinary course of the Debtor's business shortly, seems premature and inappropriate.  In addition, a ruling on the allowance of any administrative expense claim in favor of Movant should be postponed at least and until Movant has submitted an accounting of all of the payments that it has received from the Debtor's clients post-petition so that the Court and the Debtor may determine how such payments have been paid, and whether they have been applied correctly. Although the issue of whether penalties, interest and attorneys' fees allegedly incurred due to the late or non-payment of fringe benefit contributions pursuant to the terms of a collective bargaining agreement has already been briefed in a prior motion filed in this case (and may be ruled upon, and become the law of the case, prior to the hearing on this Motion) and is briefed here again, that issue is also prematurely determined until and unless Movant presents an accounting so that the Debtor and the Court may understand how the payments that Movant received were applied, since the correct application of such payments may determine any amount is owed for post-petition contributions and whether penalties, interests and/or attorneys' fees would be validly charged in the first place.

---

[1] To the extent that the Court denies the Motion on procedural grounds, the Debtor reserves the right to make additional arguments in response to a complaint.

The requested relief should also be denied because one of the months of fringe benefit contributions requested constitute a pre-petition claim, and although the other contribution amounts may constitute post-petition obligations, and some of them may be entitled to administrative-level treatment if they have not, or should not, be deemed paid, neither the Court nor the Debtor will know to what extent that may be true until an accounting is provided. Thus, for all of the foregoing reasons, and for the additional reasons set forth in this Opposition, the Debtor requests that the Motion be denied in its entirety.

## II.

### STATEMENT OF RELEVANT FACTS

On November 28, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a signatory to collective bargaining agreements ("CBAs") with several unions, including the Southern California District Counsel of Laborers and its Affiliated Locals (the "Laborers Union"). The Debtor has not yet rejected or assumed any of its CBAs pursuant to Section 1113 of the Bankruptcy Code.

Pursuant to the agreement with the Laborers Union (the "Agreement"), the Debtor is required to make contributions to certain employee benefit plans. Those contributions, for work performed in each calendar month through a certain cut-off date, become due, along with reports describing the work and the workers, on the 15th day of the subsequent month. The contributions are considered delinquent if they are not received by the 20th day of the month in which they become due.

Even though it is true that the Debtor has not paid the Movant directly post-petition for the contributions that are the subject of the Motion, this is because: (1) the Debtor believes that the contribution amount that became due in December constitutes a pre-petition claim for the reasons

1    set forth herein and Docket No. 117,[2] (2) the Debtor's current cash collateral order does not allow

2    for such payments [*see* Exhibit 2 to Docket No. 94 - the cash collateral budget currently in effect],

3    and (3) because, even if the cash collateral budget and order allowed for such payments, the

4    Debtor has not had the funds necessary to make those payments to Movant <u>directly</u> as a result of

5    the extremely slow issuance of conditional releases by the IBEW-NECA trust funds, which has

6    been described in many other pleadings.[3]

7         Yet, contrary to what is implied in the Motion, the Movant <u>has</u> received a <u>substantial</u>

8    amount of payments with respect to fringe benefit contributions post-petition.  According to the

9    Debtor's records, and as reflected in **Exhibit 1** to the Steiny Declaration, the Movant has received

10   payments totaling almost $100,000 from the Debtor's clients since the Petition Date via the joint

11   check process.[4]  What is unclear is how those payments have been applied.  As a result, the Debtor

12   requests that the Court schedule an evidentiary hearing with further briefing and order Movant to

13

14   ───────────────

15   [2] Early on in this case, the group of creditors commonly referred to as the IBEW-NECA Trust Funds filed a motion
     seeking the allowance of an administrative claim for fringe benefit contributions that were based on hours worked

16   exclusively prepetition and which only became due post-petition (the "<u>IBEW Admin Claim Motion</u>").  Among other
     things, the IBEW Admin Claim Motion sought super-priority administrative-level treatment (or at least administrative

17   level treatment) for the interest, penalties and attorneys' fees associated with the non-payment of that pre-petition
     contribution amount. The Debtor and the Official Committee of Unsecured Creditors opposed the IBEW Admin

18   Claim Motion. The Court held a hearing on the motion on February 2, 2017 and took the matter under submission.
     The Court has not yet issued a ruling on the IBEW Admin Claim Motion.

19   [3] The Laborers Union and/or Movant has been very cooperative in terms of issuing conditional releases to help
     effectuate the release of funds from the Debtor's client, which is in its best interests and those of the Debtor and its

20   other creditors. However, since most of the Debtor's clients will not issue <u>any</u> checks on a job for a specific period
     until and unless they have received <u>all</u> of the conditional releases that they require on that job for that specific period,

21   and since the Movant and the IBEW-NECA Trust Funds often have workers on the same jobs, the failure of the
     IBEW-NECA Trust Funds to issue conditional releases in a prompt manner is harming not only the Debtor by

22   severely impeding its cash flow (and making it unable to make payments – such as the contributions – which it
     certainly would be able to make absent its cash flow problems) but also harming other unions/trust funds and vendors.

23   To illustrate the problem, the IBEW-NECA Trust Funds have issued less than 20 conditional releases on
     approximately 105 jobs since the Petition Date, and IBEW-NECA has failed to issue releases on the Debtor's four

24   largest jobs, which would generate net revenue of approximately $750,000 for the Debtor, which could be used to pay
     non-professional administrative expenses in this case if such releases were issued.

25   [4] This is the process by which the Debtor's clients determine the amount due to the Debtor for a specific period,
     deduct any and all amounts due to vendors, trust funds, unions and others (based on conditional or other releases

26   issued by those parties) from the amount due to the Debtor, and they issue checks payable to the Debtor and to each of
     the parties who have issued the aforementioned releases, which the Debtor then endorses and sends to the other payee

27   on a joint check (such as Movant). This procedure was approved by the Court via an order granting relief from stay
     [Docket No. 107].

28

1  provide an accounting so that the Debtor and the Court can determine exactly how all of those

2  post-petition payments were applied and whether they were applied correctly.

3       The Debtor believes that the Movant was owed $81,641.12 on the Petition Date (*see*

4  Schedule F at Docket No. 48]. Thus, even if the Movant applied <u>all</u> of the payments that they

5  received post-petition (almost $100,000 in payments) to <u>pre-petition</u> amounts due as of the

6  Petition Date, it would seem that at least some of the aforementioned payments (at least those in

7  excess of the amount of Movant's pre-petition claim), if not all of such payments, should have

8  been applied to reduce the Debtor's post-petition obligations to the Movant. *See* **Exhibit 1** to the

9  Steiny Declaration. Yet, since the Motion seeks the allowance of administrative claims for what

10  Movant seems to maintain is the full amount of contributions that came due in December 2016

11  and January and February 2017, the Debtor can only assume that none of the post-petition

12  payments received by the Movant have been applied to the contribution amounts for those months.

13  In addition, the Debtor believes that it would also be only fair that some of those funds should be

14  applied to satisfy the portion of the contribution amounts that the Movant have alleged constitute

15  "trust funds".

16       Until and unless the Movant provides the Debtor with an accounting, the Debtor will not

17  have any way to determine if: (1) the payments were all received and applied, (2) the payments

18  received were properly applied, (3) what post-petition contribution amounts remain unpaid, if any,

19  and (4) whether Movant should have an allowed administrative claim in any amount.

20       When the Debtor analyzed the payments received by Movant and allocated them to mostly

21  pre-petition periods (and to a few post-petition periods) depending on the period for which the

22  payment was requested by Movant, the Debtor came to the conclusion that: (1) certain post-

23  petition amounts had to be paid with such funds (the payment of which should have been reflected

24  by the relief sought in the Motion), and (2) *that the total post-petition unpaid contribution amount*

25  *is only approximately $25,000* as opposed to the much larger amount requested in the Motion. *See*

26  **Exhibit 1** to the Steiny Declaration (near the bottom of the spreadsheet under unpaid contributions

27  for December and January).

28

1   The Debtor is continuing to perform work and Movant is continuing to issue releases to the

2   Debtor's clients.  Thus, the Debtor believes that the Movant will continue to receive payments in

3   the ordinary course and that the allowance of any administrative claim in its favor would be

4   premature at this time or at least until all post-petition payments have been accounted for.

5   **III.**

6   **THE RELIEF SOUGHT SHOULD BE DENIED ON PROCEDURAL GROUNDS.**

7   **A.    THE DECLARATORY, TURNOVER AND INJUNCTIVE RELIEF SOUGHT MAY**

8   **ONLY BE SOUGHT THROUGH AN ADVERSARY PROCEEDING.**

9   When a dispute arises in bankruptcy court, the Bankruptcy Rules provide two possible

10  paths for dispute resolution: (1) through the commencement of an adversary proceeding; or (2) by

11  initiating a contested matter through the filing of a motion. Fed. R. Bankr. Proc. 7001 and 9014.

12  The proper procedural avenue for bringing the dispute to this Court is determined by Federal Rule

13  of Bankruptcy Procedure 7001, which lists 10 specific actions which are deemed to be adversary

14  proceedings. By default then, any action not listed as an adversary proceeding is treated as a

15  contested matter. As the Court in *In re Riding*, 44 B.R. 846, 858-59 (Bankr. D. Utah 1984), stated:

16  "The delineation between an adversary proceedings and contested
    matters has, as its underpinnings, concerns over due process. In
17  more detail, and while not true in every situation, the delineation
    between these two procedural methods for resolving disputes is
18  predicated upon the general assumption that certain controversies in
    bankruptcy will involve more complex issues and affect greater
19  substantial rights, thereby requiring the greater procedural
    protections afforded by the Federal Rules of Procedure. While other
20  matters in bankruptcy will involve relatively uncomplicated disputes
    that can be adjudicated summarily, thereby making motion practice
21  a better tool for judicial economy."
22

23  *Id.*

24  In this case, the Debtor's request for declaratory, turnover and injunctive relief falls

25  squarely within the realm of those actions that require the commencement of an adversary

26  proceeding. Bankruptcy Rule 7001 sets forth that an adversary proceeding will include

27  proceedings to:

28  1.  recover money or property (with certain exceptions not applicable here);

2.   determine the validity, priority, or extent of a lien or other interest in property;

3.   object to or revoke a discharge;

4.   determine the dischargeability of a debt;

5.   obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

6.   subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

7.   obtain a declaratory judgment relating to any of the foregoing.

Since Movant indicates in the Motion that it is seeking declaratory relief with respect to its interest in certain property (i.e., certain funds that it maintains are not property of the estate), the turnover or recovery of such money or property, and injunctive relief, Movant must seek relief through an adversary proceeding and the Motion should be denied in its entirety.

**B.**    **THE COURT SHOULD DENY THE REQUEST FOR ALLOWANCE OF ADMINISTRATIVE CLAIM AND THE REQUEST FOR MODIFICATION OF COURT ORDERS ON PROCEDURAL GROUNDS.**

Since the majority of the relief sought by the Motion must be resolved through an adversary proceeding, and the resolution of those issues will affect, and must precede, a ruling on the allowance of administrative claim and request for modification issues, the Court should deny the Motion in its entirety without prejudice in order to allow the adversary proceeding issues to be resolved first, or at the same time, as the allowance and modification issues.

**II.**

**THE RELIEF SOUGHT SHOULD BE DENIED ON SUBSTANTIVE GROUNDS.**

**A.**    **THE REQUEST FOR RELIEF IS PREMATURE.**

**1.**    **Movant Continues to Receive Payments On Its Claim, So the Establishment of Allowed Claims At This Juncture Is Premature.**

To the extent that the Motion is not denied on procedural grounds, Movant's request for relief should be denied as premature. As describe above and in the Steiny Declaration, the Debtor

has only been in bankruptcy for approximately 3 months and during that period Movant has received almost $100,000 worth of payments from the Debtor's clients, all of which could have been applied to post-petition contributions, and specifically, to the portion of such contributions that relate what Movant maintains are "trust funds."    However, regardless of whether such payments could have been, or should have been, applied to post-petition obligations first, the fact is that Movant is continuing to receive payments from the Debtor's clients.   Since, that is the case, the Court has not yet established a deadline for the filing of administrative claims, and the Debtor's business is still operating and other administrative expenses continue to accrue on a daily basis, it seems premature for Movant to seek the allowance of an administrative claim for the post-petition contribution amounts _unless_ Movant's intention is to have the amounts for those contributions allowed and _unless_ it agrees that they will remain unpaid and unable to accrue liquidated damages/penalties, attorneys' fees and/or interest from now until such claims are treated under a plan or through some other bankruptcy process.[5]

## 2.    An Accounting Is Required.

No matter what Movant's intention may be, the fact is that an administrative claim cannot be established, under the circumstances, in any amount, until and unless Movant furnishes the Debtor and the Court with a full accounting of all of the payment that it has received post-petition. This is because it clear from the relief requested in the Motion that none of those payments have been applied to post-petition contributions. Whether they should have been applied to post-petition contributions first, based on equitable and other reasons, is at least, questionable. Yet, more importantly, because even if the Debtor were to take the position that such payments could be applied to prepetition claims first, the Debtor (and the Court) still need to know exactly how such payments were applied.  Is Movant applying the payments as if its pre-petition claim is frozen in time as on the Petition Date as required by bankruptcy law? Is Movant continuing to allow penalties, interest and attorneys' fees to accrue on such claims and paying those first?  As detailed

---

[5] The Debtor does not consent to the allowance of an administrative claim by this statement in any way.  It merely seeks to point out that a request for allowance of an administrative claim would only seem to make sense under such circumstances.

in the Steiny Declaration, when the Debtor analyzed the payments received by Movant and allocated them to mostly pre-petition periods (and to a few post-petition periods) depending on the period for which the payment was requested by Movant the Debtor came to the conclusion that: (1) certain post-petition amounts had to be paid with such funds (the payment of which should have been reflected by the relief sought in the Motion), and (2) *that the total post-petition unpaid contribution amount was only approximately $25,000* as opposed to the much larger amount requested in the Motion.[6] *See* **Exhibit 1** to the Steiny Declaration (near the bottom of the spreadsheet under unpaid contributions for December and January).  Therefore, it is imperative for Movant to provide the Debtor and the Court with an accounting as soon as possible so that the Debtor and the Court may have time to analyze it and determine if the post-petition payments have been properly applied.  The relief sought is premature until that accounting has been provided and the appropriate analysis conducted.[7]

**B.** **THE PORTION OF MOVANT'S CLAIMS BASED ON PRE-PETITION WORK IS NOT ENTITLED TO ADMINISTRATIVE CLAIM PRIORITY.**

Section 503(b)(1)(A) of the Code defines administrative expenses and provides a nonexclusive list of allowable expenses including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." *Kadjevich v. Kadjevich (In re Kadjevich),* 220 F.3d 1016, 1019 (9th Cir.2000). "The availability of the priority encourages third parties to deal with a business that has filed in bankruptcy, because these parties will be paid ahead of other creditors." *Abercrombie v. Hayden Corp. (In re Abercrombie),* 139 F.3d 755, 757 (9th Cir.1998).  In classifying the order of payment for creditors' claims, the Bankruptcy Code affords the highest level of priority to

---

[6] Even that amount should decrease soon because, at the time of the filing of this Opposition, and as reflected in **Exhibit 1** to the Steiny Declaration, to the Debtor's knowledge Movant had not received any payments for work performed in January (which would not be billed out until February). However, Movant should start to receive payments for that period soon if it has not by the time of the hearing on the Motion.

[7] To the extent that the Court decides to deny the Motion on procedural grounds, such an accounting would be requested or provided in connection with discovery or, if it was informally provided prior to the filing of an adversary proceeding then perhaps the issues between the parties could be worked out informally, at least to a certain extent.

1  "administrative expenses." 11 U.S.C. § 507(a)(1); *Abercrombie v. Hayden Corp. (In re*

2  *Abercrombie)*, 139 F.3d at 756.

3      In order to limit abuses of the administrative expense priority, Courts require that a

4  claimant show that the debt for which it seeks an administrative priority: (1) arose from a

5  transaction with the debtor-in-possession and (2) directly and substantially benefitted the estate. *In*

6  *re Abercrombie,* 139 F.3d at 757. "Critically ... only *post-petition* debts can be treated as

7  administrative expenses; *pre-petition* debts may not be granted administrative-expense priority."

8  *In re Kadjevich,* 220 F.3d at 1019 (emphasis in original). *See In re BCE West, L.P.,* 319 F.3d

9  1166, 1172 (9th Cir. 2003).  Here, Movant  does not have a post-petition debt, which is fatal to its

10  Motion seeking allowance and immediate payment of an administrative claim.

11      Simply put, the portion of Movant's alleged claim based on work performed pre-petition is

12  not entitled to administrative claim status because that portion of the alleged claim did not arise

13  from a transaction with the Debtor as a debtor-in-possession, nor did it directly and substantially

14  benefit the Debtor's estate.  Accordingly, as a matter of law, the contribution amount that came

15  due in December 2016, which was based on pre-petition work only, is not entitled to

16  administrative priority as a matter of law.

17      **1.**    **Fringe Benefit Contributions Related to Pre-Petition Work Performed Are**

18      **Not Entitled to Administrative Expense Priority Status.**

19      The overwhelming body of law followed by Bankruptcy Courts confirms that "pre-petition

20  claims for wages and benefits due under a collective bargaining agreement are not entitled to

21  treatment as administrative expenses." *See, In re Certified Air Technologies, Inc.*, 300 B.R. 355,

22  369 (Bankr. C.D. Cal. 2003).  Movant cites *Teamsters Industrial Security Fund v. World Sales,*

23  *Inc. (In re World Sales, Inc.)*, 183 B.R. 872 (9th Cir. B.A.P. 1995) and *In re Certified Air*

24  *Technologies, Inc, supra,* 300 B.R. 369, which will be distinguished below, for the contrary

25  proposition. However, Movant's analysis is flawed.  In making its determination as to whether the

26  portion of the claim based on pre-petition work should be entitled to administrative priority, the

27  reasoning in the *In re Roth American, Inc.* and *In re A.C.E Elevator Co., Inc.* cases, should be

28  applied by this Court because they "foster the Code's policy to promote equality of distribution."

1  *See, In re Certified Air Technologies, Inc.*, 300 B.R. at 369, citing to *In re Murray Indus.,* 110

2  B.R. 585, 587 (Bankr. M.D. Fla. 1990) (stating that "to give priority to a claimant not clearly

3  entitled thereto is not only inconsistent with the policy of equality of distribution, it dilutes the

4  value of the priority for those creditors Congress intended to prefer").

5          a.    ___In re Roth American, Inc.___

6      In the *In re Roth American,* 975 F.2d. 949 (3rd Cir. 1992) case, a union filed claims on

7  behalf of former employees of a chapter 11 debtor seeking administrative priority status for

8  severance and vacation pay. In affirming the lower Court's decision that claims for severance pay

9  and vacation pay were allowable, but that administrative expense priority would be accorded those

10  claims only for the amount of severance and vacation pay earned post-petition, the Court noted

11  that "the prevailing view regarding vacation pay claims under a collective bargaining agreement in

12  bankruptcy is that such claims are accorded administrative priority only to the extent of the

13  proportionate part of the total vacation pay earned during the period from the beginning of the

14  bankruptcy to the date of termination of employment." *In Roth American, Inc.*, 975 F.2d at 957.

15  With respect to the severance pay claims, the Court determined that since they were the type of

16  severance claims that were paid at termination based on length of employment, the severance

17  claims only have administrative priority to the extent that they are based on service provided to the

18  estate post-petition. *Id.*  Here, the request for administrative treatment for a claim based on pre-

19  petition work is similar to the claims in the *Roth American* case because it is attributable to work

20  performed prior to the Petition Date.

21          b.    ___In re A.C.E. Elevator Co., Inc.___

22      The facts in *In re A.C.E. Elevator Co., Inc.* 347 B.R. 473, (Bankr. S.D.N.Y. 2006) are very

23  similar to the facts of the instant case, and support denial of the relief requested. In *In re A.C.E.*

24  *Elevator Co., Inc.* trustees of employee welfare benefit plans moved for an order directing the

25  debtor to pay delinquent plan contributions as administrative claims. The trustees of the plans

26  argued that the contribution claims were entitled to administrative priority because the plans

27  accepted and processed post-petition the debtor's reports and determined the amounts owing post-

28  petition. The debtor argued that because the contributions were based upon union employees'

1  hours worked pre-petition, the contributions were pre-petition claims. *Id.* at 478. The Court

2  determined that in light of Section 503(b)(1)(A)'s plain meaning, the contributions were not

3  entitled to administrative priority status. *Id.*   In making its ruling, the Court reasoned that a

4  debtor's pension plan contribution obligations, which came due post-petition but were based on

5  work performed pre-petition, were not entitled to priority under Section 503(b)(1)(A) because the

6  funding obligation did not meet either of the two requirements of Section 503(b)(1)(a). *Id* at 479.

7  In *A.C.E. Elevator Co.* the Court reasoned that "administrative priority is not based simply on an

8  obligation's due date, but, rather, depends on the date of consideration of the underlying claim."

9  *Id.* at 481.  Similar to the *A.C.E. Elevator Co.* case, here, the Movant' Claim seeks contributions

10  that are based upon union employees' hours worked pre-petition that came due post-petition.

11  **c.   <u>*The Cases Cited by Movant Are Distinguishable.*</u>**

12  In the Motion, Movant argues that the contribution amount attributable to work performed

13  pre-petition is entitled to administrative claim status because the deadline to pay the underlying

14  putative fringe benefits occurred after the Petition Date (December 15, 2016). In support of the

15  foregoing assertion, the Movant erroneously relies on *Teamsters Industrial Security Fund v. World*

16  *Sales, Inc.*, on *In re Certified Air Technologies, Inc., supra,* 300 B.R. 369 and on Section 1114 of

17  the Bankruptcy Code.   As set forth below, however, the aforementioned cases are both

18  distinguishable from the facts in the instant case and neither they nor Section 1114 support

19  treatment of this portion of Movant's claim on an administrative basis.

20  (1) **T**EAMSTERS **I**NDUSTRIAL **S**ECURITY **F**UND V. **W**ORLD **S**ALES, **I**NC.

21  In *Teamsters Industrial Security Fund v. World Sales, Inc. (In re World Sales, Inc.)*, 183

22  B.R. 872 (9th Cir. B.A.P. 1995), a creditor-employees' benefit plan sought administrative expense

23  priority payment for debtor-employer's monthly contribution to its employees' health plan.

24  Pursuant to the CBA between the parties, the debtor agreed to contribute to the fund a specified

25  amount per calendar month for each employee that worked one day or more in any calendar

26  month. *Id.* at 873. In other words, under the CBA if an employee worked a single day of work

27  during the prior month, it entitled the employee to the monthly benefit. *Id.* at 876. The CBA was

28  in effect at the time of the debtor's bankruptcy filing; however, 18 days after the bankruptcy filing,

1   the debtor laid off its employees and sold its assets. *Id.* The issue with which the Court was

2   presented was whether the benefit plan was entitled to an administrative claim for the full amount

3   due to the union under the CBA for the relevant post-petition period (even though the employees

4   were terminated after 18 days) or only the first 18 days after the bankruptcy filing (before the

5   employees were terminated). The Court reasoned that the amount due for the entire month was

6   owed because, under the CBA, if an employee worked one day, then the amount of the entire

7   month became due. *Id.* Since the relevant employees worked at least one day post petition then

8   the amount for the entire amount under the CBA became due. *Id.* The Court, however,

9   distinguished its case from the *In re Roth American, Inc.* case, where, as discussed above, wages

10  were earned pre-petition and post-petition and where the Court restricted the administrative

11  priority to employees' claims for severance and vacation pay under a CBA to only that portion

12  earned post-petition. *Teamsters Industrial Security Fund v. World Sales, Inc.*, 183 B.R. at 877. In

13  distinguishing the *In re Roth American* case, the Court in *World Sales, Inc.* stated that "the

14  vacation and severance pay at issue [in the *Roth American* case] had been earned both before and

15  after the filing of the petition, and therefore, **division of the claims was appropriate**." *Id.*

16  (emphasis added).  The Debtor's case is distinguishable from the *World Sales* case because

17  Movant is seeking administrative-level treatment for contributions that were based solely on pre-

18  petition work.  Therefore, a division of the pre-petition claim contribution portion is available and

19  appropriate as it was in the *Roth American*.

20              **(2)    CERTIFIED AIR AND SECTION 1114 OF THE BANKRUPTCY CODE**

21              Movant's reliance on *Certified Air* and on Section 1114 for the proposition that the portion

22  of a fringe benefit contribution claim for retiree benefits based on pre-petition work is entitled to

23  an administrative claim is also misplaced.  While it is true that Section 1114(e)(2) of the

24  Bankruptcy Code provides for the timely payment of retiree benefits prior to the confirmation of a

25  chapter 11 plan and accords such obligations administrative expense priority, least one court that

26  has dealt this issue recognizes a pre/postpetition distinction". *See*, *Adventure Resources, Inc. v.*

27  *Holland*, 193 B.R. 787 (S.D. W.Va. 1996) ("*Adventure Resources I*"), *rev'd in part on other*

28  *grounds, aff'd in part*, 137 F.3d 786 (4th Cir. 1998), *cert. denied*, 525 U.S. 962 (1998)

("*AdventureResources II*").  The Court in *Adventure Resources I* held that section 1114(e) does not apply to obligations to fund retiree health plans that came due prepetition."  *Id.* at 796-98.23. Thus, if the Court determines that the benefit contributions that are based on pre-petition work are pre-petition claims then it should also deny administrative-level treatment to the portion of those claims, if any, that are based on retiree benefits pursuant to *A.C.E Elevator* and *Adventure Resources I.*

Notwithstanding the foregoing, if the Court should determine that Section 1114 does not allow for a pre/post-petition distinction, then the Court should, at least, only give administrative priority to the contributions that are actually used to fund benefits for *retired employees* as the Court suggested in *A.C.E. Elevator,* 347 B.R. at 487.  In that case the court noted:

> "If a material portion of the Delinquent Contributions to the Welfare Plan were used to fund benefits for *current* employees and their families, arguably the statute would not apply to such payments, particularly given that priorities in bankruptcy must be construed narrowly."

*Id.* Since Movant has failed to provide evidence as to which contributions, if any, are used to fund benefits for retired employees (versus current employees) then the request for allowance on those grounds should be denied or, at least, the hearing on the Motion should be continued for further briefing by the parties on that issue.

## C.    THE PORTION OF MOVANT'S CLAIM RELATED TO POST-PETITION CONTRIBUTIONS CANNOT BE ALLOWED IN ANY AMOUNT AT THIS TIME.

Although the Court (and the Debtor) may eventually determine that Movant should have an allowed administrative claim in some amount, for the reasons described above, that determination cannot properly be made without an accounting and the analysis of such an accounting.  In addition, the request is premature because Movant continues to receive payments on its claims.  Thus, the relief sought with respect to the allowance of amounts related to post-petition contributions should be denied at this time without prejudice.

## D.    THE PORTION OF MOVANT'S CLAIMS (WHETHER PRE-PETITION OR POST-PETITION) RELATED TO LIQUIDATED DAMAGES, PENALTIES,

1  **ATTORNEYS' FEES AND INTERESTS SHOULD RECEIVE GENERAL**
2  **UNSECURED TREATMENT.**

3  Movant improperly includes liquidated damages/penalties, attorneys' fees and interest in
4  its request for administrative treatment.  However, those components should be stricken entirely.
5  The well-reasoned decision of the Court in *In re FasTech Services* supports the conclusion that
6  penalties for failing to timely pay post-petition fringe benefits are not entitled to administrative
7  expense status. *In re FasTech Services,* 2012 WL 1190289, 1-2 (Bankr. C.D. Ill. 2012).  In that
8  case, the Court reasoned that it is difficult to see how liquidated damages in the nature of a
9  penalty could qualify as an expense necessary to preserve the estate and that liquidated damages
10 in the nature of a penalty are not a form of compensation for a benefit to the estate and thus may
11 not be accorded administrative priority status. *Id.* at 2. *See also, In re Fred Swain, Inc.,* 97 B.R.
12 660 (Bankr. S.D. Fla. 1989).  Here, the Movant have not provided any evidence of any benefit
13 that the liquidated damages, attorneys' fees and/or interest provide.

14 The case of *In re World Sales, Inc.* is factually distinguishable from this case. In *World*
15 *Sales*, the Debtor ceased business operations 18 days after the petition date; however the
16 employee's benefit plan sought an administrative priority payment for the entire monthly
17 contribution to the employees' health plan. *In re World Sales, Inc.* 183 B.R at 873. The Debtor in
18 the *World Sales* case seemed to be completely aware that, at least, the 18-day portion of the
19 contribution amount was valid and should be paid.  It seemed to have the funds to do so, and
20 merely refused.  Thus, after 13 months and multiple requests for payment, the benefit plan was
21 forced to seek relief from the Court, and arguably, based on those facts, the Court awarded an
22 administrative claim for 18/31 of the monthly health plan contribution (since that was the only
23 portion that related to post-petition work); relegated to treatment as a general unsecured claim the
24 liquidated damages requested; and disallowed any award of attorneys' fees. *Id.* On appeal, the
25 Bankruptcy Appellate Panel vacated the Order and remanded the case for further proceedings to
26 determine both the reasonable amount of attorneys' fees and liquidated damages incurred post-
27 petition based on the facts of that case. *Id.* at 878-879. Contrary to what is implied in the Motion,

28

1   no amount of liquidated damages was awarded administrative priority for any pre-petition sums

2   allegedly incurred under ERISA or otherwise. *Id.* at 878-879.

3       Thus, Movant should not be entitled to administrative liquidated damages, attorneys'

4   and/or interest in connection with respect to the contributions based on prepetition work.  In

5   addition, such relief should be denied because the *World Sales* case is factually distinguishable

6   from this case in which Movant has received almost $100,000 worth of payments post-petition

7   which may have been applied improperly, this Motion has been filed prematurely (and only 3

8   months into the case), and since the Debtor has not had the cash flow necessary to make such

9   payments directly (even if it had the authority to do so) through no fault of its own. Thus, the

10  request for administrative-level treatment for liquidated damages, interest and/or attorneys' fees

11  (the allowance of which would operated to the detriment of all of the other creditors in this case)

12  should be denied.

13  **E.      THE DEBTOR CANNOT CONCEDE THAT VACATION DEDUCTIONS**

14  **         FROM WAGES AND PREVAILING WAGE PAYMENTS ARE "TRUST**

15  **         FUNDS" AT THIS TIME.**

16      The Debtor does not have sufficient information at this time in order to determine whether

17  the vacation and alleged prevailing wage portions of the contributions under the Agreement are

18  property of the estate or not.  Although Movant implies that such portions are funds held in trust

19  for Movant's benefit, the Debtor is uncertain as to whether that is actually the case.  The Debtor

20  may have to employ or consult with employment, labor and/or ERISA counsel in order to reach a

21  conclusion on that issue because as illustrated by certain cases not cited by Movant, the issue can

22  turn not only on the terms of the agreement between the parties, and their practices or actions but

23  also on issues specific to ERISA law, such as whether the Debtor is actually a fiduciary pursuant

24  to ERISA, such a determination could also potentially affect parties other than the Debtor.  Thus,

25  at the very least, the Debtor requires additional time to brief this subject, which is of no doubt of

26  interest to Movant, but not one that the Debtor has had to address in this case before.  The

27  postponement of a decision on this issue will not prejudice anyone because at the present time the

28  Court cannot determine whether the vacation and prevailing wage portions constitute property of

1  the estate (versus funds held in trust) because: (1) only an accounting will allow the Debtor and

2  the Court to determine how the funds received by Movant have been applied and whether they

3  should have been, or should be, applied to the vacation and prevailing wage portion of the

4  contributions (which would make this issue as to the payments that are the subject of the Motion

5  moot), and (2) because the chart provided by Movant listing the alleged  vacation and prevailing

6  wage amounts, among other things, is extremely confusing –some of the amounts in the chart do

7  not seem to add up – and the Motion lacks a clear explanation as to what the "prevailing wage"

8  portion of the contributions is exactly and how it works.  Thus, it is impossible for the Debtor to

9  determine whether such amounts are really held in trust, and, if so, in what amount.  It is for both

10  the abovementioned reasons, as well, that the Debtor urges the Court to deny the Motion on

11  procedural grounds and require such relief to be sought by adversary proceeding, which will

12  provide additional due process protections to the Debtor, and to the other creditors of the estate

13  and other parties likely affected by a determination on this issue.

14  **F.      THE REQUEST FOR IMMEDIATE TURNOVER SHOULD BE DENIED ON**

15  **SUBSTANTIVE GROUNDS.**

16        Movant argues that the Debtor has a duty to abide by the Agreement, and therefore, the

17  Debtor is required to immediately the fringe benefit contributions for November (pre-petition),

18  December and January. In other words, Movant implies that its claim for fringe benefits is entitled

19  to super-priority status.  Yet, Movant is incorrect.

20        In the case of *In re Certified Air Technologies, Inc.*, the trust funds there also incorrectly

21  argued that Section 1113 establishes a super priority status for wage and benefit claims arising out

22  of collective bargaining agreements. *In re Certified Air Technologies, Inc.*, 300 B.R. at 360-1. In

23  determining whether Section 1113 trumps the priorities established by Congress in Section 507,

24  the Court rejected squarely the Court's holding in *In re Unimet Corp.,* 842 F.2d 879 (6th Cir.

25  1988), which was also cited by the Movant in their Motion. The Court in *In re Certified Air*

26  *Technologies, Inc.* eloquently ruled that:

27        Section 1113 was enacted to protect the existence of collective bargaining
        agreements in chapter 11 cases, not to re-order the priority scheme set by
28        Congress in § 507. Had Congress intended for § 1113 to create a super-priority

1

2

3

4

5

for pre-petition wage and benefit claims arising under a collective bargaining agreement, it would have either included language in § 1113 similar to that incorporated into § 1114 or amended § 507 to reflect the change it intended. Because Congress neither included explicit language in § 1113 to supercede § 507 nor amended § 507 to specifically create a super-priority status for such claims, the court concludes that pre-petition claims for wages and benefits due under a collective bargaining agreement are not entitled to treatment as administrative expenses but are to be accorded priority consistent with § 507.

6

7

*Id.* at 369.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Even if it is determined that Movant's contribution claim based on pre-petition work and/or the liquidated/damages, attorneys' fees and/or interest components of its claim are entitled to administrative treatment, Movant have not cited any case law or statute that entitles it to immediate payment of the contribution amounts as a super-priority administrative claim. All administrative-level creditors must be treated with absolute equality, unless some creditors, with full knowledge of the facts, have agreed to subordinate their claims or unless the Court has granted super-priority status pursuant to Section 364. *In re Cochise Coll. Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983); s*ee also, In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (Stating that the general rule is that all administrative expense creditors must be treated with absolute equality unless a creditor agrees to subordinate its claims or unless the Code specifically provides otherwise and ruling that a landlord's administrative claim for rent was not entitled to immediate payment). At this juncture, the Debtor does not know whether there will be sufficient funds to pay all administrative claims in full because IBEW-NECA has substantially interfered with the Debtor's ability to be paid by its clients. The Debtor's efforts to liquidate its assets have not yet concluded, so the Debtor does not know the amount of funds it will have to pay allowed claims. Likewise, since professionals employed by the estate and the Committee are continuing to render services, the Debtor is unable at this time to accurately predict the total of allowed professional fee claims, which are also entitled to administrative claim priority. So although the Debtor may not object to paying post-petition contributions to Movant through the joint check payment process, given its shortage of cash (all of which is necessary at this time to continue its operations in the short-term in the hope of consummating a sale), the Debtor cannot

1  consent to the entry of an order that would essentially give Movant super-priority status when the

2  estate could, eventually, be administratively insolvent. If the estate is administratively insolvent,

3  administrative claimants will only be entitled to *pro rata* distributions on their allowed claims and

4  it is premature at this time to determine what the *pro rata* distribution will be for administrative

5  claimants.  As a result, the payment of post-petition contribution amounts outside of the joint

6  check process in full at this time may prejudice other administrative claimants.

7        Thus, to the extent that Movant's claims are allowed as administrative claims, they should

8  not be treated as super-priority administrative claim and required to be turned over immediately.

9  **G.     THE REQUEST FOR MODIFICATION OF PRIOR ORDERS MUST BE DENIED.**

10       By the Motion, Movant requests the modification of certain other orders of the Court,

11  including the Court's cash collateral order, to the extent necessary to grant the relief required.

12  Not only should such a request be denied since Movant has not provided any legal authority for

13  such relief but, more importantly, the Court should deny that request if for no other reason than

14  because certain parties (including certain secured creditors) who are required to be served with

15  pleadings that affect their rights, and who would be affected by such relief, were not served with a

16  copy of the Motion.  For example, although the secured creditors whose counsel requested

17  electronic notice were served with a copy of the Motion, the secured creditors who have <u>not</u>

18  requested electronic notice do not appear to have been served with the Motion.  As a result, such

19  relief should be denied.

20                                        **III.**

21                                  <u>**CONCLUSION**</u>

22       Based on all of the foregoing, the Debtor respectfully requests that the Court deny the

23  relief sought in the Motion in its entirety.

24  Dated: March 16, 2017                    STEINY AND COMPANY, INC.

25                                 By:  ___*/s/ Jacqueline L. James*_____

26                                      Jacqueline L. James
                                        LEVENE, NEALE, BENDER,

27                                      YOO & BRILL L.L.P.
                                        Attorneys for Chapter 11 Debtor and Debtor

28                                      in Possession

## DECLARATION OF SUSAN STEINY

I, Susan Steiny, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Chief Executive Officer and President of Steiny and Company, Inc. (the "Debtor").  Based on my position with the Debtor, I have access to the Debtor's books and records and am familiar with them. The Debtor's books and records form the basis for any statements in this declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents. Based on my positions with the Debtor, I am also familiar with the history, organization, operations, and financial condition of the Debtor.

3.      I make this declaration in support of the opposition to which this declaration is annexed. I have reviewed the motion that is the subject of that opposition.  All capitalized terms not defined herein shall have the same meanings afforded to them as in the opposition.

4.      On November 28, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      The Debtor is a signatory to collective bargaining agreements ("CBAs") with several unions, including the Southern California District Counsel of Laborers and its Affiliated Locals (the "Laborers Union").  The Debtor has not yet rejected or assumed any of its CBAs pursuant to Section 1113 of the Bankruptcy Code.

5.       Pursuant to the agreement with the Laborers Union (the "Agreement"), the Debtor is required to make contributions to certain employee benefit plans.  Those contributions, for work performed in each calendar month through a certain cut-off date, become due, along with reports describing the work and the workers, on the 15th day of the subsequent month.  The contributions are considered delinquent if they are not received by the 20th day of the month in which they become due.

6.       Even though it is true that the Debtor has not paid the Movant directly post-petition for the contributions that are the subject of the Motion referenced in the Opposition to which the Declaration is attached, this is because I am informed and believe that: (1) the contribution amount that became due in December constitutes a pre-petition claim, (2) the Debtor's current cash collateral order does not allow for such payments and (3) because, even if the cash collateral budget and order allowed for such payments, the Debtor has not had the funds necessary to make those payments to Movant directly as a result of the extremely slow issuance of conditional releases by the IBEW-NECA trust funds, which has been described in many other pleadings.

7.       The Laborers Union and/or Movant has been very cooperative in terms of issuing conditional releases to help effectuate the release of funds from the Debtor's client, which is in its best interests and those of the Debtor and its other creditors.    However, since most of the Debtor's clients will not issue any checks on a job for a specific period until and unless they have received all of the conditional releases that they require on that job for that specific period, and since the Movant and the IBEW-NECA Trust Funds often have workers on the same jobs, the failure of the IBEW-NECA Trust Funds to issue conditional releases in a prompt manner is harming not only the Debtor by severely impeding its cash flow (and making it unable to make payments – such as the contributions – which it certainly would be able to make absent its cash flow problems) but also harming other unions/trust funds and vendors.  To illustrate the problem,

the IBEW-NECA Trust Funds have issued less than 20 conditional releases on approximately 105 jobs since the Petition Date, and IBEW-NECA has failed to issue releases on the Debtor's four largest jobs, which would generate net revenue of approximately $750,000 for the Debtor, which could be used to pay non-professional administrative expenses in this case if such releases were issued.

8.    Yet, contrary to what is implied in the Motion, the Movant have received a substantial amount of payments with respect to fringe benefit contributions post-petition. According to the Debtor'a records, and as reflected in **Exhibit 1** hereto, I believe that Movant has received payments totaling almost $100,000 from the Debtor's clients since the Petition Date via the joint check process.  What is unclear is how those payments have been applied.

9.    The Debtor's records reflect that Movant was owed $81,641.12 on the Petition Date. Thus, I believe that, even if the Movant applied all of the payments that they received post-petition (almost $100,000 in payments) to pre-petition amounts due as of the Petition Date, it would seem that at least some of the aforementioned payments (at least those in excess of the amount of Movant's pre-petition claim), if not all of such payments, should have been applied to reduce the Debtor's post-petition obligations to the Movant. *See* **Exhibit 1** hereto.

10.  Yet, since the Motion seeks the allowance of administrative claims for what Movant seems to maintain is the full amount of contributions that came due in December 2016 and January and February 2017, I can only assume that none of the post-petition payments received by the Movant have been applied to the contribution amounts for those months.  In addition, the I believe that it would also be only fair that some of those funds should be applied to satisfy the portion of the contribution amounts that the Movant have alleged constitute "trust funds".

11.    Until and unless the Movant provides the Debtor with an accounting, the Debtor will not have any way to determine if: (1) the payments were all received and applied, (2) the

payments received were properly applied, (3) what post-petition contribution amounts remain unpaid, if any, and (4) whether Movant should have an allowed administrative claim in any amount.

12.      Attached as Exhibit 1 hereto is spreadsheet that contains the payments made by the Debtor's clients to Movant, almost $100,000 of which was paid post-petition, and how the Debtor believes that those payments were applied (or perhaps should have been applied assuming for the sake of argument that the payments did not have to be applied to post-petition obligations incurred first).

13.      As the spreadsheet reflects, when the Debtor analyzed the payments received by Movant and allocated them to mostly pre-petition periods (and to a few post-petition periods) depending on the period for which the payment was requested by Movant, the Debtor came to the conclusion that: (1) certain post-petition amounts had to be paid with such funds (the payment of which should have been reflected by the relief sought in the Motion), and (2) that the total post-petition unpaid contribution amount currently due is only approximately $25,000 as opposed to the much larger amount requested in the Motion.

14.      The Debtor is continuing to perform work and Movant is continuing to issue releases to the Debtor's clients.  Thus, the Debtor believes that the Movant will continue to receive payments in the ordinary course and that the allowance of any administrative claim in its favor would be premature at this time or at least until all post-petition payments have been accounted for.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of March 2017 in Baldwin Park, California.

_____
SUSAN STEINY

# EXHIBIT 1

| | | | | | April | May | June | July | August | September | October | November | December | Jan-17 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Southern California | | | | | | | | 3/16/2017 | | | | | | | | |
| Outstanding Balance for Union Dues | | | | | | | | | | | | | | | | |
| Laborer Trust | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| **Vendor Name** | **Union** | **Check Date** | **Received Date** | **Liquidated Damages** | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| Construction Laborers Trust | Local 652 | | | | 36,123.56 | 39,138.10 | 28,598.51 | 37,739.41 | 31,638.32 | 27,418.86 | 31,524.22 | 29,410.64 | 19,420.10 | 21,083.86 | | 302,095.58 |
| | Interest | | | | | 312.57 | | | | | | | | | | 312.57 |
| | Liberty | | | | (7,268.45) | | | | | | | | | | | (7,268.45) |
| | Steiny ck11774 | | | | (5,070.26) | | | | | | | | | | | (5,070.26) |
| | Joint ck | | | | (4,179.76) | | | | | | | | | | | (4,179.76) |
| | | | | | | | | | | | | | | | | |
| All checks received including | Paid steiny ck(Agrement) | | | | (7,309.57) | | | | | | | | | | | (7,309.57) |
| interest | 4497 #4497, Granite Jn ck 52239.31 | 4497 | | | (929.52) | (1,233.16) | (76.63) | | | | | | | | | (2,239.31) |
| | Paid LA Engineering Jn ck | | | | | | (681.59) | | | | | | | | | (681.59) |
| | #4674 Flatiron West Jn ck520528.11 | | | | (1,644.92) | (6,037.15) | (6,892.28) | (6,003.76) | | | | | | | | (20,578.11) |
| | Paid Regional Connector Jn ck | | | | (43.00) | (96.91) | | (672.48) | | | | | | | | (812.39) |
| | Paid Steiny ck | | | | | | | (37,739.41) | | | | | | | | (37,739.41) |
| | Paid Steiny ck 11961 | | | | | | | | (31,638.32) | | | | | | | (31,638.32) |
| | #4417, CA Rasmussen Jn ck12641, S660.39 | | | | | (660.39) | | | | | | | | | | (660.39) |
| | #4702, Sukut Jn ck214327, 59625.08 | | | | | (1,321.85) | (1,335.47) | (6,967.76) | | | | | | | | (9,625.08) |
| | Steiny ck 52390.31 | | | | | | | (2,390.31) | | | | | | | | (2,390.31) |
| | Steiny ck 5211.82 | | | | | (211.82) | | | | | | | | | | (211.82) |
| | Steiny ck 57309.57 | | | | (7,309.57) | | | | | | | | | | | (7,309.57) |
| | #9237, Peterson, ck65317,5813.80 | | | | | (349.80) | (464.00) | | | | | | | | | (813.80) |
| | #9238, Western Rim, ck5395, 51536.96 | | | | (605.19) | | (931.77) | | | | | | | | | (1,536.96) |
| | #8100, Skanska ck54913, 5674.02 | | | | | | | | (674.02) | | | | | | | (674.02) |
| | #4673, Rolling Hills ck17725, 57309.57 | | | | | | | | | (7,309.57) | | | | | | (7,309.57) |
| | 4683 #4683, Griffith, $8876.79 | 4683 | 10/24/2016 | 10/26/2016 | (470.08) | (2,379.38) | (2,091.64) | (2,391.03) | (1,744.66) | | | | | | | (8,876.79) |
| | 8100 #8100, Skanska ck55564, 5476.32 | 8100 | 12/14/2016 | 12/21/2016 | | | | | | (476.32) | | | | | | (476.32) |
| 5/8 | 8686 #9377, R.C. Becker and Son, ck62664, $1672.97 | 8686 | 12/2/2016 | 12/15/2016 | | | | | | (1,061.69) | (611.28) | | | | | (1,672.97) |
| | 4480 #4480, Excel Paving , Ck147407,5398.64 | 4480 | 12/30/2016 | 12/30/2016 | | (398.64) | | | | | | | | | | (398.64) |
| | #4729, R.J. Noble ck021830, 51195.87 | | 12/29/2016 | 12/30/2016 | | | | | | (1,037.02) | (158.85) | | | | | (1,195.87) |
| | 8100 8100, Skanska, ck55808, 52709.22 | 8100 | 1/5/2017 | 1/6/2017 | | | | | | | (2,709.22) | | | | | (2,709.22) |
| | 4729 4729, RJ Noble, ck022009, 5316.59 | 4729 | 1/6/2017 | 1/9/2017 | | | | | | | | (316.59) | | | | (316.59) |
| | 4683 4683, Griffith, ck13769, 521583.17 | 4683 | 1/6/2017 | 1/16/2017 | | | | | | (3,609.93) | (9,788.76) | (8,199.48) | | | | (21,538.17) |
| Liquidated damages $425.99, int 24.39 | 4699 4699, Griffith, ck14644,52580.35 | 4699 | 2/9/2017 | 2/9/2017 | (825.99) | (71.18) | | | | | (863.93) | (812.32) | (832.92) | | | (2,580.35) |
| paid to jobs 4689/4692 | 4689 4689, All American Asphalt ck280223, 56220.53 | 4689 | 1/25/2017 | 1/25/2017 | | (985.70) | (3,964.90) | | | | | | | | | (4,930.60) |
| paid to jobs 4689/4692 | 4692 4689, All American Asphalt ck280223, 56220.53 | 4692 | 1/25/2017 | 1/25/2017 | | (1,211.93) | (78.00) | | | | | | | | | (1,289.93) |
| Didn't receive a copy of check | 4690 4690, Sharnos, ck60007,5864 | 4690 | | | | | | | (5,133.14) | (2,579.22) | (1,590.81) | (1,740.72) | | | | (11,043.89) |
| GC cut the check directly to Loca652 | 4617 4617, Amorosco, ck298057,5761.17 | 4617 | 2/2/2017 | 2/2/2017 | (126.34) | | | | | | (191.69) | (569.47) | | | | (761.17) |
| | 4737 4731, Granite , ck03307157, 58684.68 | 4737 | 2/28/2017 | 3/1/2017 | | | | | | | (6,686.56) | (1,998.14) | | | | (8,684.68) |
| 4674/4675 | Flatiron, ck30639342, 511848.59 | 4674/4675 | 2/24/2017 | 2/27/2017 | (1,949.85) | | | | | | (2,099.14) | (4,460.11) | (4,127.11) | (1,562.04) | | (11,848.59) |
| 4674/4675 | Flatiron, ck30639343, 53770.70 | 4674/4675 | 2/24/2017 | 2/27/2017 | (618.13) | (667.07) | (241.24) | | | | (450.17) | (2,031.21) | (381.01) | | | (1,770.70) |
| | 4724 ICE Builders, Jn ck211643, 52878.94 | 4724 | 2/23/2017 | 2/23/2017 | | | | | | | (2246.16) | (632.78) | | | | (2,878.94) |
| Paid directly to laborers | 4660 4660, Vance Corporation, ck076386, 52578.18 | 4660 | 12/9/2016 | 1/16/2017 | (419.98) | (589.08) | (2,389.10) | | | | | | | | | (2,578.18) |
| | 4680 4680, Flatiron, ck15005, 58023.22 | 4680 | 3/7/2017 | 3/3/2017 | | | | | | | | | (8,023.22) | | | (8,023.22) |
| | 4697 4697, Granite, ck03308113, 5947.52 | 4697 | 3/7/2017 | 3/10/2017 | | | | | | | (631.68) | (315.84) | | | | (947.52) |
| | 4686 4686, R.C. Berker, ck06324, 52233.68 | 4686 | 3/10/2017 | 3/13/2017 | | | | | | | | | (2,233.68) | | | (2,233.68) |
| | | | | | | | | | | | | | | | | (98,756.02) |
| | | | | | | | | | | | | | | | | Total Post-Petition |
| | | | | | | | | | | | | | | | | |
| | **Total Laborers** | | | (3,540.29) | (1,760.55) | 20,237.15 | 16,125.13 | (18,425.34) | (2,418.68) | 4,445.89 | 3,409.27 | 8,429.86 | 4,476.84 | 21,083.86 | - | 55,603.44 |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | Vacation | | | | 5,365.28 | 5,837.64 | 4,259.30 | 5,563.42 | 4,675.36 | 4,000.32 | 4,634.24 | 4,413.28 | 2,840.32 | 3,103.16 | | 44,692.32 |
| | Pension | | | | 11,736.40 | 12,583.35 | 9,228.70 | 12,486.50 | 10,497.60 | 9,375.75 | 10,590.75 | 9,396.00 | 6,602.85 | 7,063.20 | | 99,561.10 |
| | Health & Welfare | | | | 13,236.56 | 14,401.23 | 10,507.70 | 13,726.54 | 11,459.52 | 9,806.34 | 11,359.38 | 10,815.36 | 6,962.54 | 7,606.32 | | 109,881.49 |
| | | | | | | | | | | | | | | | | |
| | Total Vacation, Pension , Health & Welfare | | | | 30,338.24 | 32,822.22 | 23,995.70 | 31,776.46 | 26,632.48 | 23,182.41 | 26,584.37 | 24,624.64 | 16,405.71 | 17,772.68 | | 254,134.91 |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | Total Payment | | | | (17,884.11) | (19,213.52) | (12,473.38) | (56,164.75) | (34,057.00) | (22,972.97) | (28,114.95) | (20,980.78) | (14,943.26) | - | | (246,804.71) |
| | | | | | | | | | | | | | | | | |
| | Balance of vacation, Pension, Health & welfare | | | | (7,545.87) | 13,608.70 | 11,522.32 | (24,388.29) | (7,424.52) | 209.44 | (1,530.58) | 3,643.86 | 1,462.45 | 17,772.68 | | 7,330.20 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S OPPOSITION TO MOTION OF CONSTRUCTION LABORERS TRUST FUNDS FOR: A) ALLOWANCE OF ADMINISTRATIVE EXPENSES; B) DETERMINATION THAT CONTRIBUTIONS ARE NOT ASSETS OF THE ESTATE; AND C) INJUNCTION FOR PAYMENT OF EMPLOYEE BENEFIT CONTRIBUTIONS; DECLARATION OF SUSAN STEINY IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 16, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Matthew T Bechtel    Bechtel@luch.com, cheryl@luch.com,kimberley@luch.com
- Ron Bender    rb@lnbyb.com
- Robert J Berens    rjb@smtdlaw.com, srodriguez@smtdlaw.com
- Scott E Blakeley    seb@blakeleyllp.com, ecf@blakeleyllp.com
- William S Brody    wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
- Ronald Clifford    rclifford@blakeleyllp.com, ecf@blakeleyllp.com;seb@blakeleyllp.com;info@ecf.inforuptcy.com
- Caroline Djang    cdjang@rutan.com
- Donald T Dunning    ddunning@dunninglaw.com, jmacleod@dunninglaw.com
- John S Durkin    john@john-durkin.com
- Luke N Eaton    eatonl@pepperlaw.com
- Anne K Edwards    aedwards@rodipollock.com
- Kerry K Fennelly    kfennelly@donaldsonandcornwell.com, fileclerk@donaldsonandcornwell.com;lsheridan@donaldsonandcornwell.com;kditty@donaldsonandcornwell.com;vmindirgasova@donaldsonandcornwell.com;jbaldwin@donaldsonandcornwell.com
- Jon F Gauthier    jgauthier@ftblaw.com, jrobinson@ftblaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com, kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;mmocciaro@lgbfirm.com
- Jacqueline L James    jlj@lnbyb.com
- Michael Y Jung    jung@luch.com, gina@luch.com,kimberley@luch.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- Susan Graham Lovelace    lovelace@luch.com, jason@luch.com,kimberley@luch.com
- Alvin Mar    alvin.mar@usdoj.gov
- David W. Meadows    david@davidwmeadowslaw.com
- Gilbert M Nishimura    gnishimura@snw-law.com, schin@snw-law.com;sgalindo@snw-law.com;ffilimona@snw-law.com
- Donna T Parkinson    donna@parkinsonphinney.com
- Thomas Phinney    tom@parkinsonphinney.com
- Raymond A Policar    policarlaw@att.net
- Ronald L Richman    ron.richman@bullivant.com, kristina.clark@bullivant.com
- Jeffry D Sackman    jds@rac-law.com
- Ali Salamirad    as@smtdlaw.com, rb@smtdlaw.com
- Matthew J. Shier    mshier@shierkatz.com, mterry@shierkatz.com
- Wayne A Silver    w_silver@sbcglobal.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Michele R Stafford    mstafford@sjlawcorp.com, collections@sjlawcorp.com
- Nicholas Starkman    nstarkman@wkclegal.com, syoung@wkclegal.com
- Nicola G Suglia    nsuglia@fleischerlaw.com
- Jolene Tanner    jolene.tanner@usdoj.gov, USACAC.criminal@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Dennis Winters    winterslawfirm@cs.com
- Donald A Workman    dworkman@bakerlaw.com
- Kirsten A Worley    kw@wlawcorp.com, admin@wlawcorp.com
- Beth Ann R Young    bry@lnbyb.com

**2.    SERVED BY UNITED STATES MAIL**: On **March 16, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Julia W. Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ *Service information continued on attached page*

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 16, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 16, 2017 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.