ALEXANDER B. CVITAN (CSB 81746),
J. DAVID SACKMAN (CSB 106703) and
PETER A. HUTCHINSON (CSB 225399), Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Email: jds@rac-law.com
Attorneys for Creditor Construction Laborers Trusts

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>STEINY AND COMPANY, INC.,<br><br>Debtor and Debtor in Possession<br><br>---<br><br>CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, LLC,<br><br>Creditor and Moving Party,<br><br>v.<br><br>STEINY AND COMPANY, INC,.<br><br>Debtor-in-Possession and Responding Party | CASE NO.: 2:16-bk-25619-WB<br>Chapter 11<br><br>**REPLY BRIEF IN SUPPORT OF MOTION OF CONSTRUCTION LABORERS TRUSTS FOR A) ALLOWANCE OF ADMINISTRATIVE EXPENSES; B) DETERMINATION THAT CONTRIBUTIONS ARE NOT ASSETS OF THE ESTATE; C) INJUNCTION FOR PAYMENT OF EMPLOYEE BENEFIT CONTRIBUTIONS**<br><br>Date: March 30, 2017<br>Time: 10:00 AM<br>Courtroom: 1375 (Roybal) |

    The Construction Laborers Trusts submits the following Reply Brief in support of the above motion, along with the Declaration of George Figueroa and Request for Judicial Notice filed herewith.

314698v2

# I. INTRODUCTION

Creditor Construction Laborers Trust Funds for Southern California Administrative Company[1/] brought this motion to make sure the employees of the Debtor[2/] are paid for their post-petition work. In opposition, the Employer does not contest that it owes its workers for their post-petition labors, but presents several excuses to delay payment as long as possible.[3/] Meanwhile, it has fallen even further behind in its contributions, failing to pay for hours worked in February and payable in March 2017. [Declaration of George Figueroa (Figueroa Decl) ¶ 5; Ex. 10].

This cannot continue. The workers cannot be expected to continue to labor, in order to generate income for the very lawyers who argue against them being paid, for the very bond companies who fail to pay their statutory claims for compensation, or for the myriad of other non-human administrative and secured claimants.

We are not adverse to additional procedures, such as to provide for an accurate accounting. But we cannot allow the Employer to put off its continuing obligation to pay its employees until it finally shuts down, which is what it proposes in its opposition.

---

[1/] Referred to by the Debtor as "Construction Laborers Trusts."

[2/] Debtor-In-Possession Steiny and Company, Inc. (Employer).

[3/] A "Reservation of Rights and Limited Objection" was also filed by Endurance Reinsurance Corp. and Endurance American Insurance Co. (Docket No. 287), to the extent the Motion may affect its interests. Since its security is based on bonds guaranteeing, *inter alia*, these very claims, it can protect its interests by paying those claims, which would be added to its security. Liberty Mutual Ins. Co. and Safeco Insurance also filed a "Joinder with Debtor's Opposition" (Docket No. 293). However, it was untimely under LBR 9013-1(f), and should not be considered. Technically, the Employer's opposition was also untimely. Its 20-page brief lacked tables of contents and authorities, as required by LBR 9013-2(b). Those tables were separately, and untimely filed the next day. [Docket No. 291].

## II. ARGUMENT

A. IF THIS COURT BELIEVES THE PROCEDURES FOR ADVERSARY PROCEEDINGS SHOULD APPLY, IT CAN AND SHOULD ADOPT THOSE PROCEDURES, RATHER THAN SIMPLY DENY THIS CONTESTED MATTER

The Employer argues that this should have been brought as an adversary proceeding, rather than a contested motion, because some of the relief sought comes within the list of "adversary proceedings" in Rule 7001 of the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P.). While some of the relief sought may come within one of the broadly-listed types of "adversary proceedings," that does not mean the motion should be simply denied, as the Employer argues.

There is nothing in the Bankruptcy Rules which makes adversary proceedings and contested matters mutually exclusive. In fact, Fed. R. Bankr. P. 9014(c) makes several of the rules for adversary proceedings applicable to contested matters such as this, and provides that "The court may at any stage in a particular matter direct that one or more of the other rules in Part VII [governing adversary proceedings] shall apply."

If the Court believes that the some or all of "rules in Part VII" should apply to this matter, then the correct course would be to apply those rules as the Court deems appropriate. We have no objection to applying additional rules regarding adversary proceedings to this matter, or even converting the matter wholly to an adversary proceeding. We DO object to simply dismissing the matter altogether, or any other procedure which would unduly delay payment of the workers for their labor. Whatever procedures are adopted should be designed for a quick resolution.

-2-

314698v2

B. **THE EMPLOYER'S ACCOUNTING IS FACTUALLY AND LEGALLY FLAWED**

The Employer incorrectly argues that we have not accounted for credits against the contributions it admittedly owes for post-petition work. Paragraph 19 of the Declaration of Richard Quevedo, Docket No. 261 (Quevedo Decl) and the attached Exhibit 9 list the payments received and show how they were applied. Judicial notice is requested of the subsequently-filed Proof of Claim No. 70 of the Construction Laborers Trusts, especially Exhibits 3 and 4 thereto, which show in more detail the credits applied to contributions for pre-petition work.

It is the Employer's accounting which is factually and legally flawed. It starts with the incorrect assumption that its pre-petition debt was only $81,641.12. [Declaration of Susan Steiny, Docket No. 290 (Steiny Decl) ¶ 9]. In fact, Judgment was entered against the Employer on August 9, 2016, for $348,956.28. [Quevedo Decl ¶ 14, Ex. 5]. While that Judgment could have been paid off with a lower amount, the Employer defaulted on those conditions some time before this bankruptcy was filed, so the full amount was due. [Declaration of J. David Sackman, Docket No. 260 (Sackman Decl) ¶¶ 2-3]. As shown in Proof of Claim No. 70, there is actually $315,630.91 due on this Judgment, even after accounting for post-petition collections from joint checks.

The Employer's accounting is not even mathematically correct. The Debtor repeatedly claims that "almost $100,000" has been collected in post-petition checks. [Steiny Decl ¶ 8]. Yet the $98,756.02 total on the referenced chart attached to her declaration is not even a correct total of all the credits Steiny claims were received post-petition.[4]

---

[4] The correct total of the post-petition items listed in Exhibit 1 to the Steiny Declaration, assuming the amounts and dates are correct, is $89,879.23. The difference is a check from Griffith, which the Employer dates as pre-petition, but is included in its post-petition calculation.

-3-

314698v2

The Employer then seeks to apply this false data in a manner contrary to law. It claims that those payments from general contractors can be applied in any manner convenient to the Employer. That is not the law. Those joint checks were given in exchange for releases of independent statutory claims for mechanic liens, stop payment notices and bond claims for particular jobs and the particular time periods claimed. *See* Calif. Civil Code §§ 8120 – 8138. This is why they are not subject to the automatic stay or considered preferential transfers. *See, e.g.*, <u>In re Arnold</u>, 908 F.2d 52, 55-56 (6th Cir. 1990) (since general contractor has independent obligation under state law to pay material supplier of subcontractor, those payments, even if made after the subcontractor filed bankruptcy, were not avoidable preferences or property of the estate), Those payments *must*, as a matter of law, be applied only to the hours worked on the particular jobs, and particular time periods, covered by those claims released. That is what the Construction Laborers Trusts did. [Quevedo Decl ¶ 19].

The Construction Laborers Trusts would not be adverse to an accounting of the credits against the admitted contributions owed, under two conditions: First, any payments must be applied to the job and months released, as required by law; Second, the accounting must be done NOW, on an expedited basis. Payments may continue to come in, but the employees need to have their contributions paid NOW, not at the end of this bankruptcy, after the Employer is shut down and all the employees laid off.

C. THE EMPLOYER HAS PRESENTED NO EVIDENCE THAT PRE-PETITION WORK IS INVOLVED IN THIS MOTION

As to the contributions due for work in November 2016, due in December 2016, the Employer attempts to distinguish the controlling authority of <u>In re World Sales, Inc.</u>, 183 B.R. 872 (B.A.P. 9th Cir. 1995), by claiming that this case involves

-4-

314698v2

"pre-petition work only." The problem with its argument is that it has presented no facts to support its contention that the hours it reported were all for pre-petition work.

The Employer reported a total of 1,616 hours worked in the calendar month of November 2016. [Quevedo Decl Ex. 6]. This report is not broken down by dates within the month. This bankruptcy petition was filed on November 28, 2016. There is thus no way to tell from the November report which hours were worked pre-petition, and which were worked post-petition. Since the Employer has the hourly records, which it is required by law to keep, it bears the burden of showing which hours have been worked pre-petition as opposed to post-petition. *See* <u>Motion Picture Ind. Pens. & Health Plans v. N.T. Audio Visual</u>, 259 F. 3d 1063, 1066 (9th Cir. 2001). It has failed to produce any evidence to meet its burden. Therefore, it has no factual basis for its legal argument that these contributions should be treated as a pre-petition expense.

D.  SECTION 1114 OF THE CODE REQUIRES ADMINISTRATIVE PRIORITY FOR CONTRIBUTIONS TO THE HEALTH FUND

The Employer makes a similar mistake in its argument that Section 1114 of the Code does not apply to make contributions to the Health Fund an administrative priority. Relying on *Adventure Resources, Inc. v. Holland*, 193 B.R. 787 (S.D. W.Va. 1996), *rev'd in part on other grounds, aff'd in part*, 137 F.3d 786 (4th Cir.), *cert. denied,* 525 U.S. 962 (1998), the Employer claims that the priority given by § 1114(e)(2) does not apply to contributions "that came due prepetition." What <u>Adventure Resources</u> held was that only "any retiree insurance benefits *coming due* between the filing of the petition and the confirmation date are subordinate only to the claims of secured creditors." <u>Id</u>. at 798 (*emphasis added*). We are <u>not</u> seeking administrative priority for any contributions other than those "coming due between the filing of the petition and the confirmation date."

-5-

314698v2

This is consistent with the statute which, unlike the priority for wages "for services rendered" after the petition under 11 U.S.C. § 503(b)(1)(A)(i), are given administrative priority based on when the payment is "<u>required to be made</u>." 11 U.S.C. § 1114(e)(2) (*emphasis added*). The only contributions for retiree health benefits for which we seek administrative status are those which are "required to be made" after the petition date.

Relying on <u>In re A.C.E. Elevator Co., Inc.</u>, 347 B.R. 473, 487–88 (Bankr. S.D.N.Y. 2006), the Employer also argues that only that portion of the contributions to the Health Fund attributable to retirees can be given administrative status. However, that decision did not even decide this question, but merely raised it on its own, and requested "further submissions on the issue." <u>Id</u>. at 488. The Bankruptcy Court in this District *did* address this issue, however. In the case of <u>In re Certified Air Techs., Inc.</u>, 300 B.R. 355, 371–72 (Bankr. C.D. Cal. 2003), the Court noted that the "Health Fund is financed by employer contributions, and a loss of such contributions from any one employer detracts from a plan's ability to pay benefits to participants and beneficiaries of the plan as a whole" and therefore <u>all</u> of the "delinquent contributions" to that health fund were given administrative priority.

E. **INTEREST, LIQUIDATED DAMAGES AND ATTORNEY FEES ARE MANDATORY ELEMENTS OF THE ADMINISTRATIVE CLAIM, UNDER ERISA AND BINDING PRECEDENT IN THIS CIRCUIT**

The Employer argues that the mandatory damages of interest, liquidated damages and attorney fees for admittedly post-petition contributions should not be given administrative priority. It bases this argument solely on an unreported decision from another state,[5] contrary to the binding precedent in this Circuit.

---

[5] <u>In re FasTech Services,</u> 2012 WL 1190289 (Bankr. C.D. Ill. 2012).

-6-

314698v2

As we pointed out in our opening papers, the Ninth Circuit Bankruptcy Appellate Panel held that interest, liquidated damages and attorney fees for post-petition contributions were to be included in the administrative priority claim. *In re World Sales, Inc.*, 183 B.R. 872, 878 (B.A.P. 9th Cir. 1995). Contrary to the Employer's assertion, these damages *were* awarded as administrative claims in that decision; the Panel just remanded to "assess a reasonable amount for these fees as well as calculate and allow interest on all past due sums from the date of accrual." Id. On remand, the Bankruptcy Court did so, and that amount was paid as an administrative expense.[6/]

With all due respect, the unreported decision from the bankruptcy court in Illinois was not "well-reasoned" at all. That court not only disagreed with *World Sales*, but completely failed to even consider the controlling statute. Under the Employee Retirement Income Security Act (ERISA) § 502(g)(2), "the court <u>shall</u> award the plan" not only the "unpaid contributions," but "(B) interest on the unpaid contributions," and "(C) an amount equal to the greater of— (i) interest on the unpaid contributions, or "(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)," as well as "(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and "(E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2) (*emphasis added*).

As an adjunct of the federal district court, this bankruptcy court is bound by the damages Congress mandated "<u>shall</u>" be awarded in an action to collect delinquent contributions. The Ninth Circuit has repeatedly emphasized that these damages are mandatory, and not discretionary with the Court. *See Northwest Administrators, Inc.*

---

[6/] The undersigned was counsel of record to the creditor there. Judicial Notice is requested of the Order, after remand, from the *World Sales* decision.

*v. Albertsons, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).  As the Ninth Circuit Bankruptcy Panel held, once it is determined that the underlying contributions were administrative priority for post-petition work, the "ancillary" damages "which accrued based on the debtor's post-petition conduct" must also be accorded administrative priority.  183 B.R. 872, 878.

F.  NO FURTHER EVIDENCE IS REQUIRED TO SHOW THAT VACATION DEDUCTIONS FROM WAGES AND PREVAILING WAGE PAYMENTS ARE ASSETS OF THE TRUST FUNDS, AND ANY SUCH PAROL EVIDENCE MUST BE EXCLUDED

As we pointed out in our opening papers, the Department of Labor has issued regulations which define "the assets of" an ERISA plan to include "amounts that a participant has withheld from his wages by an employer, for contribution . . . as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a)(1).  As we pointed out, this includes the portion of contributions deducted pre-tax from employees' pay to be turned over to the Vacation Fund, and the "per-diem" prevailing wage required on public works under California Labor Code § 1773.1.

The Employer does not fully respond to this argument, begging for more time.  It claims that the issue "can turn not only on the terms of agreement between the parties, and their practices or actions" as well as ERISA law.  But this issue is, and must be, resolved as a matter of law based on written documents.

As to deductions payable to the Vacation Fund, under the Trust Agreement incorporated into the collective bargaining agreement, they are "treated as a part of the compensation earned by the employee at the time the work to which the contributions pertain is performed" and "shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of

-8-

314698v2

the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund." [Quevedo Decl Ex. 3]. This unambiguous language cannot be altered by any parol evidence the Employer seeks to present. *See Trustees of S. Cal. IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045, 1048 (9th Cir. 2008) (reversing district court for "considering extrinsic evidence that contradicted" the "unambiguous terms" of the written agreement as to benefit contributions).

As to prevailing wages, the "prevailing wages" or "per-diem" wages are required by law. Calif. Labor Code § 1773.1. *See WSB Elec., Inc. v. Curry*, 88 F.3d 788, 791 (9th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997) ("the employer must pay employees the prevailing wage, and it may do so through a combination of cash and benefits." *See also*, *Solis v. Explore Gen., Inc.*, No. 1:10-CV-01157-AWI, 2011 WL 6749769, at *5 (E.D. Cal. Dec. 22, 2011) ("unpaid fringe benefit contributions" became "Plan assets as soon as they were due under the terms of the Plan.") The Employer has already (falsely) sworn under penalty of perjury that these contributions have, or will be, paid. *See* Calif. Labor Code § 1776.

In both cases, the issue is a matter of applying the law to the unambiguous written contract provisions. *See In re Harris*, 561 B.R. 726, 734 (B.A.P. 8th Cir. 2017) ( "a trust is created when the employer withholds wages for payments to a plan providing benefits to employees.") While there may be issues as to quantifying these amounts, and credits paid against them, there is no additional admissible evidence to be considered as to determining whether these are assets of the Trust Funds rather than the estate.

-9-

314698v2

### III. CONCLUSION

The Bankruptcy Court is a court of equity, with the powers to order the relief requested here, including amending any prior orders as necessary.[7]  Equity demands that the Court look beyond the legal fictions to the realities of the difference between administrative claimants which calls for the claims affecting human beings to be paid before those of fictional entities.

Unlike the banks, the vendors, the law firms, and the other administrative claimants, the employees of the Employer feel pain when they are hurt, feel hunger when they have no food, and feel cold when they lack shelter.  The failure of the Employer to pay its employees for their labor has, and will continue to cause, real harm to real human beings.  [Quevedo Decl ¶¶ 20-21].  Their situation has only become worse while this motion has been pending.  [Figueroa Decl ¶ 5].  Unlike the other non-human claimants, the pay for the laborer should be made before "the sun go down upon it; for he is poor, and setteth his heart upon it: lest he cry against thee unto HaShem and it be sin in thee."  Deut 24:15.  There is simply no excuse for further delay.

Respectfully Submitted,

Dated:  March 23, 2017    REICH, ADELL, & CVITAN,
A Professional Law Corporation

By:  /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Creditor
Construction Laborers Trusts

---

[7] As the Supreme Court noted yesterday, in *Czyzewski v. Jevic Holding Corp.*, there are numerous instances when "a court has approved interim distributions that violate ordinary priority rules." Slip Op. at 15. Citing legislative history, H.R. Rep. No. 95-595, the Court also emphasized the importance of the priority for employees of the debtor. Slip Op. at 17. Decision available at:
https://www.supremecourt.gov/opinions/16pdf/15-649_k53m.pdf

-10-

314698v2