**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Steiny and Company, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:16-bk-25619-WB |

## Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Construction Laborers Trust Funds for  Southern California Administrative Company, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  Construction Laborers Trusts

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

c/o J. David Sackman / Reich, Adell & Cvitan
Name

3550 Wilshire Blvd., # 2000
Number    Street

Los Angeles          CA          90010
City               State          ZIP Code

Contact phone  (213) 386-3860

Contact email  jds@rac-law.com

**Where should payments to the creditor be sent?** (if different)

Name

Number      Street

City                State           ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____
                                                                                                    MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   6   3   4   D

---

**7. How much is the claim?**   $_____ 403,845.92 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Contributions to employee benefit plans for labor by employees

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Case 2:16-bk-25619-WB    Claim 701    Filed 03/16/17    Desc Main Document    Page 3
of 3

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____50,299.73 |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/16/2017
                   MM / DD / YYYY

/s/ J. David Sackman (SBN 106703)
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | J. David Sackman | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Reich, Adell & Cvitan | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 3550 Wilshire Blvd., # 2000 | | |
| | Number        Street | | |
| | Los Angeles | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | (213) 386-3860 | Email | jds@rac-law.com |

Official Form 410                    **Proof of Claim**                    page 3

In Re: Steiny and Company, Inc.
USBK Case No. 2:16-bk-25619-WB
Addendum to Proof of Claim
of Construction Laborers Trust Funds for
Southern California Administrative Company, LLC

## ADDENDUM TO PROOF OF CLAIM

### CLAIMANT: TRUST FUNDS

Claimant, Construction Laborers Trust Funds for Southern California Administrative Company, LLC (listed by the Debtor as "Construction Laborers Trusts") is an administrator to, agent for collection for, and fiduciary with respect to several employee benefit plans ("Trust Funds"). CLTF makes this claim on their behalf. The Trust Funds include the Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust For Southern California; Construction Laborers Vacation Trust For Southern California; Laborers Training and Re-Training Trust Fund For Southern California; Fund For Construction Industry Advancement; Center For Contract Compliance; Laborers Contract Administration Trust Fund For Southern California. The Trust Funds are employee benefit plans that provide employees with fringe benefits, including health insurance, pensions and vacation pay, among others. Each of the Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002(3), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A).

### CLAIM: DELINQUENT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

This claim is for delinquent contributions to employee benefit plans, required by a collective bargaining agreement, together with damages required by contract and by the Employee Retirement Income Security Act (ERISA) § 502(g)(2), 29 U.S.C. § 1132(g)(2). The Debtor has been signatory to written collective bargaining agreements with the Southern California District Council of Laborers and its affiliated Local Unions ("Union"). Relevant portions of the most recent Southern California Master Labor Agreement (MLA) are attached as **Exhibit 1**. The MLA, in turn incorporates the various Trust Agreements of the various Trust Funds. The Short Form, MLA and Trust Agreements will be referred to here collectively as "Agreements."

The Agreements include the obligation to pay fringe benefit contributions to the Trust Funds for each hour worked by or paid to Debtor's employees who performed work covered under the Agreements. If any amounts are not paid by the due dates, the Debtor is obligated to pay interest on the unpaid contributions at the rate which is provided under the plan (currently 6.5%) and liquidated damages in the amount of $25.00 or twenty (20%) of the unpaid monthly contributions, whichever is greater, to each of the Trust Funds (except to the Laborers Contract Administration Trust Fund which is $20.00 or 10%). Interest and liquidated damages are also mandated by 29 U.S.C. § 1132(g)(2). *See Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying, Co.,* 746 F.2d 557, 569 (9th Cir.1984). This statutory mandate applies to bankruptcy claims. *See In Re World Sales*, 183 B.R. 872, 878 (9th Cir. B.A.P. 1995).

315734v1

In Re:  Steiny and Company, Inc.
USBK Case No. 2:16-bk-25619-WB
Addendum to Proof of Claim
of Construction Laborers Trust Funds for
Southern California Administrative Company, LLC

The Agreements also provide that the Debtor shall be responsible for the Trust Funds'
attorney fees and costs in any legal action to recover contributions.  Attorney fees and costs are
also mandated by ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), as well as the Agreements.
See *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988)
("attorney's fees are not discretionary in section 1132(g)(2) cases.")  To the extent legal action
beyond filing this Proof of Claim is necessary to establish the amount due, or collect the
contributions, the Trust Funds reserve the right to add such fees and costs to their Claim.  See *In
Re World Sales*, supra, 183 B.R. 872, 878 (attorney fees must be included in bankruptcy claim
for delinquent contributions).

The Agreements also provide that the Debtor may not subcontract work covered by the
MLA to any other than another contractor signatory to an appropriate agreement with the Union.
For a violation of this subcontracting clause, the MLA provides that "the Trust Funds may
recover damages in an amount equal to the full fringe benefit contribution rate in effect under
this Agreement at the time of the violation, plus interest, audit fees, and liquidated damages, for
each hour of covered work performed by the non-signatory Subcontractor's employees."  See
*Walsh v. Schlecht*, 429 U.S. 401, 97 S. Ct. 679, 50 L. Ed. 2d 641 (1977).


JUDGMENT

CLTF previously filed a lawsuit against the Employer for delinquent contributions owed
to the Trust Funds, in *Construction Laborers Trust Funds for Southern California Administrative
Co. v. Steiny and Company, Inc.,* , C.D. Cal. No. 15cv01643-GW(Ex) (District Court Action).
The District Court Action was settled with a Stipulated Judgment, which is **Exhibit 2** here.  The
Stipulated Judgment covered contributions, interest, liquidated damages, subcontracting
damages, and other damages through May 2016.

The Stipulated Judgment provided that it could be paid by a lesser amount, if certain
conditions were met.  However, the Debtor did not meet those conditions, both by failing to
make the regular payments called for, and failing to pay its current contributions on time.  The
requisite notice of default was sent and the time to cure the default passed, so that the Judgment
reverted to the full amount before this bankruptcy was filed.  As shown in **Exhibit 3** here, the
balance of the Stipulated Judgment, accounting for all credits, and including interest to the date
of filing (11/28/2016) was $319,443.64.  Since then, additional payments have been credited
towards the damages covered by the Stipulated Judgment (through joint checks approved by the
Court), so that the current balance is **$315,630.91**.

315734v1

In Re:  Steiny and Company, Inc.
USBK Case No. 2:16-bk-25619-WB
Addendum to Proof of Claim
of Construction Laborers Trust Funds for
Southern California Administrative Company, LLC

POST-JUDGMENT AND PRIORITY CLAIM

The Debtor reported, but failed to pay contributions for the period after that covered by the Stipulated Judgment, i.e. after May 2016.  These contributions due for the period within 180 days of the filing of the petition are a priority under 11 U.S.C. § 507(a)(5).  Interest and liquidated damages on those contributions are general unsecured claims.

**Exhibit 4** shows the contributions due, interest and liquidated damages, as well as credits from joint checks to date, for the period after May 2016.  The contributions are from the Debtor's reports to the Trust Funds.  As shown there, a total of **$88,215.01** is owed for this period, including **$50,299.73** of contributions entitled to priority, after recognizing all credits to date.

RESERVATION OF RIGHT TO AMEND CLAIM

The Trust Funds assert that all or a portion of the contributions, interest and liquidated damages for work performed in November 2016 and payable in December 23016, are either an administrative claim or not property of the estate.  This is the subject of a pending motion.  By including these amounts as either priority or general unsecured claims here, the Trust Funds do not waive any arguments in that motion, and conversely, by bringing that motion, the Trust Funds do not waive any claim to priority of this claim.

The Trust Funds further reserves the right to amend this claim upon discovery of unreported contributions, and/or to account for additional credits.  To the extent legal action is necessary, beyond filing this claim, to defend or establish the claim of the Trust Funds, those attorney fees and costs must be added to the claim.  The Trust Funds also reserve the right to seek payment of administrative expenses in under 11 U.S.C. § 507(a)(1), for any work performed after the filing of this bankruptcy petition.

**SUMMARY OF CLAIM**

| | |
|---|---|
| **Judgment** | **$315,630.91** |
| **Post-Judgment** | **$88,215.01** |
| **Total Claim** | **$403,845.92** |
| | |
| **Priority Claim** | **$50,299.73** |
| **General Unsecured** | **$353,546.19** |

Case 2:16-bk-25619-WB    Doc 316-1    Filed 03/23/17    Entered 03/23/17 15:10:26    Desc
Attachment A to Request for Judicial Notice    Page 7 of 24
Case 2:16-bk-25619-WB    Claim 70-1 Part 2    Filed 03/16/17    Desc Addendum    with
Exhibits 1-4    Page 4 of 21

**In Re: Steiny and Company, Inc.**
**USBK Case No. 2:16-bk-25619-WB**
**Addendum to Proof of Claim**
**of Construction Laborers Trust Funds for**
**Southern California Administrative Company, LLC**

<u>LIST OF EXHIBITS</u>

1      So. Cal. Laborers Master Labor Agreement - extracts

2      Stipulated Judgment in C.D. Cal. No. 15cv01643-GW(Ex)

3      Spreadsheet of Judgment payments, credits, interest accrued

4      Spreadsheet of Post-Judgment payments, credits, interest accrued

– 4 –

Case 2:16-bk-25619-WB  Doc 31674-1 Filed 03/23/17  Entered 03/23/17 15:10:26  Desc
Case 2:16-bk-25619-WB  Claim 70-1 Part 23  Filed 03/16/17  Desc Addendum  with
Attachment A to Request for Judicial Notice  Page 8 of 24
Exhibits 1-4  Page 5 of 21

# LABORERS 2015-2018 MASTER LABOR AGREEMENT

## TABLE OF CONTENTS

| <u>Title</u> | <u>Article</u> | <u>Page</u> |
|---|---|---|
| Apprenticeship | XXVII | 56 |
| Breaks (Rest Periods) | XVI | 34 |
| Business Representatives | VII | 27 |
| Center For Contract Compliance | XXII | 50 |
| Classifications | VIII | 28 |
| Contract Administration Fund | XXI | 50 |
| Contributions to Trust Funds | Attachment No.1 | 67 |
| Coverage | I | 3 |
| Davis-Bacon | XXVI | 56 |
| Definitions | I | 2 |
| Delinquencies | XXV | 52 |
| Demolition Work | I | 5 |
| Dispatching Procedures | III | 11 |
| Drinking Water | XVII | 36 |
| Drug and Alcohol Abuse Prevention Program | XXVIII | 58 |
| Emergencies | XVIII | 39 |
| Equal Employment Opportunity | XIII | 31 |
| Foreman | XV | 32 |
| Foreman Wage Rate | XIX | 44 |
| Fund for Construction Industry Advancement | XX | 49 |

**B.**   Except as otherwise provided in this Agreement, there shall be no strike, lockout or work stoppage by any party hereto or any individual Employer.

**C.**   No employee covered hereby may be discharged by an individual Employer for refusing to cross a primary picket line sanctioned by the Building and Construction Trades Council in the area or for engaging in any conduct protected by Sections 7 or 502 of the Labor-Management Relations Act of 1947, as amended.

      1.      If work on a project is declared to be unfair as the result of a primary dispute by a Building and Construction Trades Council in the area and the work thereon is stopped for that reason, the Union shall not be deemed to have violated this Agreement if, during the period of said work stoppage, the members of the Union fail to perform their work for the Contractor or their subcontractors.

**D.**   During the term hereof there shall be no strikes, slowdowns or stoppages of work occasioned by jurisdictional disputes between the Union signatory hereto and any other Union and that all employees covered by this Agreement shall perform the work customarily performed by them.

**E.**   When making work assignments, the Contractor shall assign the work in accordance with existing intercraft agreements. In the absence of such intercraft agreements, then past practice or the prevailing practice in the locality shall apply. The Union will furnish the Association with approved intercraft agreements. The locality for the purpose of determining the prevailing practice shall be defined as the geographical area covered by this Agreement. If a dispute arises prior to the assignment of work, or where there is no predominant practice in the locality or intercraft agreement, the Contractor shall consult the representatives of the contesting trades regarding any arguments of facts the trades may wish to present to their claim to the work.

**F.**   Jurisdictional disputes shall be settled by the Unions themselves. If not settled, then the dispute shall be submitted to the International Presidents of the Unions involved in the dispute for determination. While such procedures are being invoked and exhausted, the work shall proceed as assigned by the Contractor. The Contractor and the Union shall be and are bound by such determination and decision and the misassignment, if any is found, shall be promptly corrected by the Contractor.

# Article V
### Subcontracting, Employee Rights, Union Standards and Work Preservation

**A.**   The purposes of this Article are to preserve and protect the work opportunities normally available to employees and workmen covered by this Agreement, maintenance and protection of standards and benefits of employees and workmen negotiated over many years and preservation of the right of Union employees, employed hereunder, from being compelled to work with non-union workmen.

**B.**   Definition of Subcontractor. A subcontractor is defined as any person (other than an employee covered by this Agreement), firm or corporation, holding a valid state contractor's license where required by law, who agrees orally or in writing to perform, or who in fact performs

for or on behalf of an individual Contractor, or the subcontractor of an individual Contractor, any part or portion of the work covered by this Agreement.

**C.** Neither the Contractor nor any of his subcontractors shall subcontract any work to be done at the site of the construction, alteration, painting or repair of a building, structure or other work coming within the jurisdiction of the Union except to a person, firm or corporation party to an appropriate current labor agreement with the Union or with the appropriate Local Union.

1.  The Contractor may ensure compliance with the subcontracting provision contained in this Section by inserting into any subcontract for covered work the following language:

"Subcontractor acknowledges that Contractor has entered into the following labor agreements covering work at the construction jobsite with the Southern California District Council of Laborers and its affiliated Local Unions: Southern California Laborers Master Labor Agreement, effective July 1, 2015 to June 30, 2018 ("Master Labor Agreement"). The subcontractor acknowledges and agrees that a copy of the Master Labor Agreement is available to subcontractor.

"Subcontractor agrees that, as an essential condition to entering into this subcontract, it shall be bound to and shall comply with all of the terms and conditions of the Master Labor Agreement referenced above, including wages, trust fund contributions, working rules, the grievance/arbitration procedure and any other mechanism for the resolution of dispute contained in the Master Labor Agreement, on all covered work performed in the geographic area of the Master Labor Agreement. Subcontractor agrees that it shall be bound to the Master Labor Agreement, commencing with the first hour of work performed by its employees on this Project, and shall be bound to the Master Labor Agreement for all its construction work, whether or not the work is performed for the Contractor, for the duration of the Master Labor Agreement, and until timely terminated pursuant to the terms of the Master Labor Agreement, for the duration of successor Master Labor Agreements.

"Subcontractor further agrees to require all its subcontractors performing job site work of the type covered by the Master Labor Agreement referenced above to become bound to and comply with all of the terms and conditions of the Master Labor Agreement.

"Subcontractor acknowledges that the Southern California District Council of Laborers and its affiliated Local Unions, and the Construction Laborers Trust Funds for Southern California, are the intended third party beneficiaries of this contractual provision and may enforce this provision directly against Subcontractor."

2.  No later than thirty (30) calendar days after execution of a subcontract, as specified in subsection 1, above, with a subcontractor not previously signed to the Master Labor Agreement, the Contractor shall deliver a copy of the cover page, Labor Relations Clause, and signature page of the subcontract to the Union.

3.  If the Contractor complies with both subsections 1 and 2 above, the Contractor shall not be liable for a breach of the subcontracting provisions of this Section as to that

Case 2:16-bk-25619-WB    Doc 31674-1    Filed 03/23/17    Entered 03/23/17 15:10:26    Desc
Attachment A to Request for Judicial Notice    Page 11 of 24
Case 2:16-bk-25619-WB    Claim 76-1 Part 2    Filed 03/16/17    Desc Addendum    with
Exhibit 1-4    Page 9 of 21

subcontract, provided however, the Contractor shall be liable for the Subcontractor's delinquent Trust Fund contributions only to the extent, if any, that such liability would otherwise exist under this Agreement.

4.      In addition to any recovery of damages by the Union for a Contractor's violation of the subcontracting clause, the Trust Funds may recover damages in an amount equal to the full fringe benefit contribution rate in effect under this Agreement at the time of the violation, plus interest, audit fees, and liquidated damages, for each hour of covered work performed by the non-signatory subcontractor's employees. Such damages shall be payable to the Vacation Trust and shall be damages and not for the benefit of any specific individual.

**D.**   Jobsite work covered by the Asbestos, Plaster Tenders, Brick Tenders, Tunnel, Gunite, Housemovers, Horizontal Directional Drilling, Parking and Highway Improvement and Landscape Agreements of the Union are a part of the work description and bargaining unit covered by this Agreement.

**E.**   Any dispute involving this Article will be resolved under the grievance procedure of this Agreement. An award of the Laborers Joint Adjustment Board may be judicially enforced. Notwithstanding any other provisions of this Agreement, the Union shall not have the right to use strike or any other economic action to enforce any provisions of this Article on subcontracting.

**F.**   The Contractor shall provide in his contract with the subcontractor the following provisions: "The subcontractor accepts and agrees to be bound by the procedures for settling jurisdictional disputes as set forth in Article IV of this Agreement. The subcontractor agrees that he will bind his subcontractor to said procedures in the same manner and to the same effect as provided with respect to him."

**G.**   The Contractor and his subcontractor shall have freedom of choice in the purchase of materials, supplies and equipment, except that every reasonable effort shall be made by the Contractor and his subcontractor to refrain from the use of materials, supplies and equipment, which will tend to cause any discord or disturbance on the project.

**H.**   In the event the Contractor is required to subcontract work on a public works project to a certified MBE/WBE/DBE subcontractor to meet requirements contained in governmental rules or regulations, the Contractor shall notify in writing the Local Union in whose jurisdiction the work is to be performed. The Union shall offer to sign the subcontractor to the Union's MBE/WBE/DBE Public Works Short-form Agreement.

**I.**   In the event the Contractor is a partnership, no more than one (1) partner shall perform work covered by this Agreement. However, during each day on which the partnership employs on a full-time basis at least three (3) Laborer employees, pursuant to the terms of this Agreement, then one (1) additional partner shall be allowed to perform work covered by this Agreement. All partners who perform work covered by this Agreement and pursuant to this Paragraph I, shall be paid not less than the hourly wage rates stipulated in this Agreement for such work and the partnership shall contribute to all Trust Funds on behalf of all working partners at the hourly rates specified in Attachment #1, except the hourly Pension contribution rate which instead shall be

paid to the Construction Laborers' Vacation Fund for Southern California. The Contractor shall be liable in damages to the Union in a sum equivalent to the hourly wage rate, and to the Trust Funds in a sum equivalent to the hourly contribution rate, for each hour worked by a partner in violation of Paragraph I.

**J.**    In the event the Contractor is a sole proprietorship that employs other individuals or is not working for a contractor signatory to this Agreement and the sole proprietor performs work covered by this Agreement, the sole proprietor shall be paid not less than the hourly wage rates stipulated in this Agreement for such work and the sole proprietorship shall contribute to all Trust Funds on behalf of the working sole proprietor at the hourly rates specified in Attachment #1, except the hourly Pension contribution rate which instead shall be paid to the Construction Laborers' Vacation Fund for Southern California. The Contractor shall be liable in damages to the Union in a sum equivalent to the hourly wage rate and to the Trust Funds in a sum equivalent to the hourly contribution rate for each hour worked by the sole proprietor in violation of this Paragraph J. If the sole proprietor is working for a contractor that is signatory to this Agreement, the sole proprietorship shall be considered an owner- operator subject to the provisions of Article V, Paragraph K.

**K.**    1.    An Owner-Operator is a person who has legal or equitable title to his equipment and operates the equipment himself on work covered by this Agreement and he shall operate only that equipment to which he has legal or equitable title. An Owner-Operator shall have proof of ownership of the equipment being operated in his possession at all times and shall produce such proof of ownership upon request by the Union or Contractor. It is further agreed that any time an individual Owner-Operator has a piece of equipment operated by someone other than himself on any given job or project, the provisions of this Paragraph K will not apply to such equipment, rather the subcontracting provisions contained in Article V, Paragraph A to C of this Agreement shall become applicable.

2.    The Owner-Operator shall not be subject to the dispatch obligations contained in Article III of this Agreement, provided that the Owner-Operator has signed a W-4 form and becomes a bona fide employee of the Employer prior to going to work and the Union shall be notified of the name and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator is hired, such notice to be given to the Local Union in whose area the work is being performed and confirmed in writing within twenty-four (24) hours thereafter. A copy of the notification shall be furnished by the contracting Employer to the Owner-Operator, and this copy shall be in the possession of the Owner-Operator at all times, so long as he remains on the job or project. This notice must be produced upon request of the Union. Failure of the Owner-Operator to provide proof of ownership of the equipment being operated shall be cause for his removal from the job or project until the Owner-Operator and the Employer have complied with the requirements of this Paragraph K. The Owner-Operator is subject to the union security and supplemental dues provisions of Article III.

3.    (a)    Effective from the time the Owner-Operator first reports to work on the job or project, the Contractor shall take all necessary steps to make the Owner-Operator an actual bona fide employee of the Contractor. The Contractor shall retain and exercise supervision and control over the manner and means by which the Owner-Operator performs work under this

Agreement, and shall treat the Owner-Operator in all respects as any other employee of the Contractor is treated, except as otherwise provided in this Paragraph K. The Contractor shall deal with the Owner-Operator solely in an employer-employee relationship, and shall not treat the Owner-Operator as a self-employed person, independent contractor or brokered service. The Contractor shall not act as broker of Owner-Operator services to any other party and any payment by the Contractor to any broker or other person except a signatory subcontractor for the services of an Owner-Operator shall be a violation of this Agreement.

(b)    The Contractor shall not permit a self-employed person to perform any work covered by this Agreement, except as otherwise provided in Article V, Paragraphs I and J. A "self-employed person" is one who works for an unincorporated trade or business in which that person owns ten (10%) percent or more of the interest in the capital or profits.

(c)    The Contractor shall be liable to the Trust Funds described in this Agreement in an amount equal to the contributions plus interest and liquidated damages from the date contributions would have been due that would have been paid on an employed person to perform work covered by this Agreement. The portion of the contribution designated as supplemental dues shall be forwarded to the Union by the Trust Administrator. The sums paid under this provision shall be as damages and not for the benefit of any specific individual.

(d)    An incorporated Owner-Operator shall for the purposes of this Agreement, be designated and recognized as a subcontractor and subject to the provisions of Article V and, as such provide the Contractor, Union and Trust Funds with bona fide information to the effect of such incorporation.

4.    Separate checks shall be issued to such Owner-Operator for [1] employee wages and [2] for his equipment.

5.    All hours worked or paid for under the terms of this Paragraph K shall be reported to, and payments made to, the Trust Funds, as provided for in this Agreement.

6.    The individual Employer will not devise or put into operation any scheme to defeat the terms of this section of this Agreement.

7.    If a Contractor, through the grievance procedure, is found violating any portion of this Article, the Contractor shall immediately pay compensatory damages in the amount of one (1) day's pay at the Group III rate for each day or portion of a day in which the violation occurred.

# Article VI
## Procedure for Settlement of Grievance and Disputes

**A.**    There is hereby established a Laborers' Joint Adjustment Board consisting of four (4) regular and four (4) alternate representatives of the Contractors and four (4) regular and four (4) alternate representatives of the Union. The establishment of this Board and the purpose of its existence is for the purpose of interpreting and enforcing all the terms and provisions contained in this Agreement. No dispute, complaint or grievance shall be recognized unless called to the attention of and, in the event it is not resolved, confirmed in writing to the individual Contractor,

Case 2:16-bk-25619-WB Doc 31674-1 Filed 03/23/17 Entered 03/23/17 15:10:26 Desc
Attachment A to Request for Judicial Notice Page 14 of 24
Case 2:16-bk-25619-WB Claim 70-1 Part 4 Filed 03/10/17 Desc Addendum with
Exhibits 4 Judicial Notice Page 14 of 21

# Article XXIV
## Southern California Partnership For Jobs Industry Advancement Fund

1.      There is established the Southern California Partnership for Jobs Trust Fund (Partnership for Jobs Industry Advancement Fund), which is a Labor Management Industry Advancement Fund established to protect and expand the interests of transportation and other infrastructure construction, expand public awareness of the need for transportation and other infrastructure, and address growth and development issues related to the construction industry in Southern California. Contractors covered by the terms of this Agreement agree to pay to the Partnership for Jobs Industry Advancement Fund, the sum of $0.10 for each hour worked or paid for on all classifications contained in this Agreement.

2.      Contractors covered by the terms of this Agreement approve and consent to the appointment of the Trustees designated by Partnership for Jobs Industry Advancement Fund and further ratify, confirm and consent to all acts heretofore taken in the creation and administration of said Trust by the joint Trustees, its agents and representatives, and agree to be bound by all the terms, conditions, provisions, privileges and obligations provided for by said Agreement and Declaration of Trust as same may be constituted in its original form, as amended, and as may be subsequently amended.

3.      The $.10 contribution to the Partnership for Jobs Industry Advancement Fund includes an allocation of $.05 by the Union from the July 1, 2014 increase under the Agreement then in effect, as well as the sum of $.05 added to the previously agreed upon July 1, 2014 increase under the Agreement then in effect.. The Union reserves the right upon sixty (60) days written notice to the Associations to reallocate some or the all this $.05  to wages or to any other Trust Fund to which contributions are made under this Agreement. In the event the Union reallocates some or all of its $.05 allocation, the Associations shall have the right to reduce or cease the remaining contribution of $.05 to the Partnership for Jobs Industry Advancement Fund, under which circumstances this Agreement will be amended to reflect such reduction.

## Article XXV
### Delinquency and Collection Procedure

**A.**   The Contractor shall pay its monthly contributions to the Trust Funds accompanied by a fully completed and executed report form furnished by the Trust Funds. The Contractor shall include with the monthly report form in a format acceptable to the Trust Funds:

(a)      The identification of each job worked on by the Contractor during the month, including the job location, the owner of the job location property, and the name and address of the entity for whom the Contractor is working.

(b)      The name and social security number of each employee who performed covered work, indicating the number of hours each employee worked on each jobsite.

The provisions of subsections a. and b. above shall be implemented by the Trust Fund Administrator, in consultation with the Associations and Union, in a way that minimizes any inconvenience to the Contractor. The information provided by the reports required by subsections a. and b. shall be maintained in a confidential, restricted access manner by the Trust Funds for collection and fringe benefit eligibility purposes.

**B.**   The Trustees of the Trust Fund shall furnish the Contractor Associations and the Union with a list of delinquent Contractors each month. Such list will also be available to all signatory Contractors on request, subject to such reasonable cost as may be determined by the administrative office of the Trust Funds as representing the cost of duplication and transmission of such lists, payment for which to be made in advance. The Contractor agrees he will not subcontract any portion of his job to any subcontractor whose name appears on the delinquent list until such subcontractor has paid all delinquent monies to the various Trust Funds. In the event the Contractor subcontracts to any such delinquent subcontractor in violation of the foregoing, the Contractor shall remove such subcontractor from the job immediately, unless such delinquent subcontractor immediately makes full payment for all delinquencies to the Trusts.

**C.**   If the Contractor fails to remove the delinquent subcontractor, the Contractor shall become financially responsible for all fringe benefits owed to any funds established by this Agreement by the Contractor or by his subcontractor or the subcontractor of his subcontractor for work performed on the Contractor's job or project in accordance with the requirements set forth below.

**D.**   The term "Contractor" for delinquency purposes only, shall include all entities of the delinquent Contractor, change of name, or change of entity, provided that the delinquent contractor holds at least ten (10%) percent ownership in the new entity.

**E.**   In the event the Contractor subcontracts to a subcontractor that is not on the delinquency list at the time the subcontract is entered into, the Trust Office shall notify the Contractor of any delinquency of the subcontractor within ninety (90) days of the date the delinquency first occurred and in no case shall the Contractor be liable for fringe benefit contributions of a subcontractor for more than ninety (90) days prior to the date the Trust Office notice is sent to the Contractor. A courtesy copy of the notice shall be sent to the Association that represents the

Contractor; provided, however, that the Trust Office's failure to send such notice to the Association shall not affect the Trust's rights against the Contractor.

**F.** Where a Contractor contracts with a listed delinquent subcontractor or subcontractors, and the Contractor fails to terminate the subcontract of such delinquent subcontractor, or subcontractors, the Contractor shall become financially responsible for the liability of the delinquent subcontractor's fringe benefits on that job from the commencement of the work under the subcontract to the date of termination of that subcontract.

**G.** The Trust Office shall send delinquency notices to Contractors whose contributions are not paid as required. The Trust Office shall notify the Union of those Contractors who fail to pay within five (5) days of such notice and the Union may, at its sole option withhold service from the Contractor involved until contributions are paid or satisfactory arrangements made with the Trustees for payment.

**H.** Any employee rendered unemployed by reason of the foregoing shall not be deemed engaged in a work stoppage or labor dispute but shall be deemed constructively laid off by the Contractor by failure to pay monies due for the benefit of the employees. Contractor agrees that such employees are entitled to unemployment insurance and warrants that he will take no action to interfere with the employee's application for unemployment insurance. Any dispute in connection with this paragraph is subject to the grievance procedure.

**I.** The Trust Office shall issue delinquency notices and clearances to Contractors confirmed in writing.

**J.** All employees shall be covered by this Agreement and the provisions applicable to Trust Funds. The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to all payroll records (including certified payroll records, electronic payroll records, and all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements, the scope of work portion of all contracts and subcontracts between general contractors and subcontractors. If requested by the Trusts, the Contractor shall provide payroll breakdown by job, and shall provide the job location, legal description of the jobsite property if known, the owner of job location, the name and address of the entity for which the Contractor is working, the contact telephone number for the job, the names and social security numbers of the employees working on the job, the number of hours worked by each employee on the job, all preliminary notices, mechanic liens and stop notices on the job, other relevant job location information requested by the Trusts and certification of workers compensation coverage. The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency. Any Contractor delinquent under this Article may be required by the Trust Funds to submit, in addition to regular reports, payroll breakdowns by job, and the failure to submit timely

job breakdowns shall be considered a delinquency under this Article. If a Contractor refuses to furnish the foregoing the Union may take economic action.

**K.**   The Contractor has a duty to report to the Trust Funds as required by the Agreement. The Contractor shall maintain for a period not less than four (4) years all payroll and related records showing all payments to persons or firms for work of the nature covered by this Agreement, including the records described in Section J, above. The Contractor shall make available such records for audit by the Trust Funds representative upon written request. The Contractor and the Union agree that such audits are expensive and time consuming for the Trust Funds and the Contractor, but the Trust Funds otherwise have no way of knowing the full extent of the Contractor's obligations, since the records showing the related employment are in the possession and control of the Contractor. In order to minimize the need for a frequency of such audits, the Contractor agrees that the Trustees and the Union place trust and confidence in the Contractor to report and pay contributions properly.

**L.**   It is recognized that a delinquency in contributions causes damages beyond the value of the unpaid contributions, which are difficult to quantify. These damages include, but are not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on Contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to but for the delinquency of the Contractor. Because these damages are difficult, if not impossible, to quantify on a case-by-case basis, the parties agree that liquidated damages, not a penalty, for such losses shall be set at the greater of $25 or 20% of the contributions late or unpaid for each Trust Fund. The parties have reviewed the costs of collection by the Trust Funds, and agree that 20% liquidated damages is an accurate projection of the Trusts' damages that result from a delinquency. In addition, any Contractor delinquent in its obligations under this Article shall be required to pay interest on the delinquent contributions (at a rate to be set by the Trustees of the Trust Funds), and any audit fees. In the event that litigation is necessary to collect any delinquent contributions (including litigation to enforce mechanic liens, stop notices, bond claims or similar remedies, and any bankruptcy or receivership proceedings) or to enforce any obligation under this Article, in addition to liquidated damages owed by the delinquent Contractor, the Contractor shall also be liable for all reasonable attorney fees and legal costs incurred in such litigation. The Trustees of the Trust Funds may waive or reduce the amount of liquidated damages, at their sole discretion and consistent with their fiduciary duties. The decision of the Trustees in any request to waive or reduce liquidated damages shall be final and binding upon the parties.

**M.**   The Trust Funds' Joint Delinquency Committee may require a Contractor to post a satisfactory bond in a sum equal to two (2) times the amount of the delinquency or such lesser amount as the Committee may determine, to secure payments of contributions to the Trust Funds. Such amounts are to be determined by the Trust Funds, and shall increase if the Contractor's delinquency increases. The bond shall not be construed in any way as in lieu of any payments required under this Agreement. All such bonds shall be deposited with the Trust Administrator and shall be in a form acceptable to the Trusts. The bond shall remain in effect for a period of thirty-six (36) months after the delinquency giving rise to the obligation to post the

bond or until one year after the date that the Contractor is no longer bound to the Agreement or any successor Agreement, whichever is earlier.

**N.**   For the purposes of this Agreement, delinquency in failure to make the required reports and contributions to the Trust Fund as determined by the Trustees, shall consist of the following:

(a)    Failure to submit trust report forms completely filled out and executed..

(b)    Failure to report on all employees.

(c)    Failure to make the payments as required on time.

(d)    Failure to pay audit amounts and audit fees and other costs and damages as determined by the Trust.

(e)    Failure of the bank to honor checks submitted.

(f)    Failure to pay monies due.

(g)    Failure to submit to an audit.

(h)    Failure to submit payroll breakdowns by job during an audit, if the Contractor maintains or can retrieve electronically such payroll breakdowns.

**O.**   In addition to any other remedies under this Article, the Union may terminate the participation of a delinquent contractor. Notice of such termination shall be sent to the Contractor, and each of the employees listed on the last report submitted by that Contractor, and shall be effective 30 days from such notice. Upon termination, no employee of the delinquent Contractor shall accrue credit for any benefits for hours worked for that Contractor. However, termination shall not end or alter the obligations of the Contractor (or any Contractor subcontracting to that Contractor) under this Article. In addition to any other damages under this Article, a Contractor so terminated shall be liable to the Trust Fund for the cost of notice, and shall be liable to its employees for the value of any benefits lost in an amount not exceeding the hourly contributions and liquidated damages that would otherwise have been due.

## Article XXVI
### Public Works Project Davis-Bacon Act and Related Statutes

In the event an individual Employer bids a public job or project being awarded by a federal, state, county, city or public entity which is to be performed at a predetermined and/or prevailing wage rate established by the Secretary of the U.S. Department of Labor (pursuant to Public Law 74-403 as amended by Public Law 88-349 whose regulations are contained in 29 CFR Parts 1, 3, 5 and 7, and which determinations are published in The Federal Register), or by the Director of the California Division of Industrial Relations, or a County, City or other public entity and the established prevailing wage rate, including vacation contributions, is lower by no more than fifteen (15%) percent on residential or housing work or by no more than ten (10%) percent on any other type of work, than the Master Labor Agreement hourly wage rate (excluding fringe benefits) the published hourly wage rate, including vacation contributions, at the time of bid shall apply to the job or project for the duration of the job or project but in no event to exceed an eighteen (18) month period.

Case 2:15-bk-25619-WB-E Doc 3164-1 Filed 03/23/17 Entered 03/23/17 15:10:26 Desc
Attachment A to Request for Judicial Notice Page 19 of 24
Case 2:15-cv-01643-GW-E Document 4 Filed 03/16/15 Page 1 of 4 Page ID #:80
Exhibits 1-4 Page 18 of 21

1   ALEXANDER B. CVITAN (CSB 81746)
    alc@rac-law.com
2   J. DAVID SACKMAN (CSB 106703)
    jds@rac-law.com
3   PETER A. HUTCHINSON (CSB 225399)          JS-6
    peterh@rac-law.com
4   Members of REICH, ADELL & CVITAN
    A Professional Law Corporation
5   3550 Wilshire Blvd., Suite 2000
    Los Angeles, California 90010-2421
6   Telephone: (213) 386-3860; Facsimile: (213) 386-5583
7   Attorneys for Plaintiff

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  CONSTRUCTION LABORERS              CASE NO.: 15cv01643 GW (Ex)
    TRUST FUNDS FOR SOUTHERN
12  CALIFORNIA ADMINISTRATIVE          **STIPULATED JUDGMENT**
    COMPANY, a Delaware limited
13  liability company,

14              Plaintiff,

15         vs.

16  STEINY AND COMPANY, INC., a
    California corporation,
17
                Defendant.
18

19

20

21

22         Pursuant to the Settlement Agreement between the Parties, the following

23  JUDGMENT is entered against Defendant STEINY AND COMPANY, INC. and in

24  favor of CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN

25  CALIFORNIA ADMINISTRATIVE COMPANY, as follows:

26  \\

27  \\

28

Case 2:16-cv-05613-WB-E Document 31-1 Filed 03/16/17 Page 30 of 34 Page ID #:wrf
Case 2:15-bk-25613-WB Doc 316-4 Filed 03/23/17 Entered 03/23/17 15:10:26 Desc
Attachment A to Request for Judicial Notice Page 20 of 24
Exhibits 1-4 Page 17 of 21

IT IS HEREBY ORDERED THAT:

1.      [PLAINTIFF'S CLAIM] Plaintiff filed this lawsuit, claiming that the Defendant owes benefit contributions and subcontracting damages, along with interest, liquidated damages, audit costs, attorney fees and costs, and also sought to order an audit, pursuant to Defendant's obligations under collective bargaining agreements with the Southern California District Council of Laborers and its Affiliated Locals ("Union"), pursuant to the Labor Management Relations Act (LMRA) § 301(a), 29 U.S.C. § 185(a), and the Employee Retirement Income Security Act (ERISA) §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145.

2.      [SANCTIONS]  As a result of a motion regarding discovery, Magistrate Charles F. Eick entered an order for monetary sanctions against Defendant, in favor of Plaintiff, in the amount of $8,349.00.  That amount has not been paid, and this Order (Docket No. 39) has now become final.  Those sanctions are now incorporated as part of this Judgment.

3.      [JUDGMENT ENTERED]  Judgment is entered on the full amount of Plaintiff's Claim, together with the Sanctions ordered, as follows:

A.  Contributions, including damages claimed for subcontracting violations, and reported but unpaid contributions through May 2016, of $216,129.55;

B.  Interest of $4,161.67;

C.  Liquidated damages of $163,049.61;

D.  Cost of the audit of $2,960.00;

E.  Sanctions of $8,349.00;

F.  Less a credit of -$45,693.55 paid;

**For a grand total of $348,956.28**.

4.    [SATISFACTION]  This Judgment may be satisfied by payment over time of the amount of **$87,714.83**, with interest on the declining balance at the rate of 6% from July 15, 2016, pursuant to the terms of the Settlement Agreement between the parties, by September 15, 2017.

5.    [STAY OF ENFORCEMENT]  During the period of the payment plan called for by the Settlement Agreement between the parties, there shall be a STAY of enforcement of this Judgment, except that Plaintiff may record a UCC-1 Statement as called for in the Settlement Agreement.  Such Stay shall terminate on the earlier of ninety (90) days after September 15, 2017, Default, as described below, or earlier Satisfaction of Judgment filed by the Plaintiff, pursuant to the parties' Settlement Agreement.

6.    [DEFAULT]  In the event of default in the terms of the Settlement Agreement, after notice as provided therein, the Stay shall be terminated and the Judgment may be enforced, upon the filing with this Court by Plaintiff of a Declaration establishing the fact of DEFAULT, and accounting for any payments or collections, as well as accrued interest, and an Acknowledgment of Partial Satisfaction of Judgment consistent therewith.  The full Judgment, as modified by the Partial Satisfaction, shall be enforceable, without any further action by this Court, and without any further notice.

7.    [FEES AND COSTS]  Upon Default, the Plaintiff may also seek to add fees and costs to the Judgment, pursuant to 29 U.S.C. § 1132(g)(2)(D).  Costs shall be taxed pursuant to the procedures of Fed. R. Civ. P. 54(d)(1), and fees sought by motion pursuant to the procedures of Fed. R. Civ. P. 54(d)(2), except the time to file a

Case 2:16-bk-25612-WB Doc 316-4 Filed 03/23/17 Entered 03/23/17 15:10:26 Desc
Attachment A to Request for Judicial Notice Page 22 of 24
Case 2:15-bk-25612-WB Claim 26-1 Part 2 Filed 03/16/16 Desc Declaration with Exhibits 1-4 Page 19 of 21

Bill of Costs and/or Motion for Fees shall be extended to 14 days after the filing of Acknowledgment of Partial Satisfaction of Judgment.

8.     [DISMISSAL AND SATISFACTION]  Upon final payment of the Settlement Amount, including any accrued interest and attorney fees assessed in accordance with this Settlement Agreement, and after resolution of the Closing Audit, but no earlier than 90 days after the last Monthly Payment called for in the Settlement Agreement, the Plaintiff shall do all of the following: a) File a Dismissal With Prejudice of this lawsuit; and b) file an Acknowledgment of Full Satisfaction of Judgment.

9.     [RETENTION OF JURISDICTION]  The Court retains jurisdiction to enforce the terms of this Stipulated Judgment, and the terms of the Settlement Agreement.

IT IS SO ORDERED:

DATED:  August 9, 2016

_____
HON. GEORGE H. WU
United States District Court Judge

305113v2

| Bankruptcy Filed: | 11/28/16 | | Current as of: | 03/15/17 | |
|---|---|---|---|---|---|

### Steiny Stipulated Judgment

| Default Amount | $348,956.28 | | | | |
|---|---|---|---|---|---|
| Settlement Amount | $87,714.83 | | | | |
| Payments | 12 | | | | |
| Interest | 6.00% | | | | |
| Monthly Payment | $7,309.57 | | | | |
| Start Date | 07/15/16 | | | $315,630.91 | |

| Date | Payment | Interest | Principal | Balance | Notes |
|---|---|---|---|---|---|
| 8/18/2016 | $5,070.26 | $490.24 | $4,580.02 | $344,376.26 | Steiny Check 11774 |
| 08/18/16 | $2,162.95 | $0.00 | $2,162.95 | $342,213.31 | Granite Check for $2239.31 less $76.36 for June hours = $2,162.95 |
| 08/20/16 | $681.59 | $112.51 | $569.08 | $341,644.23 | LA Engineering check |
| 08/23/16 | $2,239.31 | $168.48 | $2,070.83 | $339,573.40 | Balance of first payment |
| 09/07/16 | $7,771.98 | $837.30 | $6,934.68 | $332,638.73 | Joint Checks from Skanska and Flatiron |
| 09/15/16 | $0.00 | $437.44 | $0.00 | $333,076.17 | Missed payment |
| 09/26/16 | $660.39 | $602.27 | $58.12 | $333,018.05 | Check from CA Rasmussen |
| 09/29/16 | $7,309.57 | $164.23 | $7,145.34 | $325,872.71 | Steiny Check 11996 |
| 09/29/16 | $1,321.85 | $0.00 | $1,321.85 | $324,550.86 | Sukut Check for La Pata |
| 10/03/16 | $954.99 | $213.40 | $741.59 | $323,809.28 | Western Rim & Peterson Chase checks |
| 10/21/16 | $7,309.57 | $958.12 | $6,351.45 | $317,457.83 | Rolling Hills Prep Check |
| 11/15/16 | $0.00 | $1,304.62 | $0.00 | $318,762.45 | Missed payment |
| 11/28/16 | $0.00 | $681.19 | $0.00 | $319,443.64 | Bankruptcy Filed |
| 01/16/17 | $0.00 | $0.00 | $0.00 | $319,443.64 | |
| 01/25/17 | $3,753.00 | $0.00 | $3,753.00 | $315,690.64 | Shames check: Wal-Mart |
| 02/14/17 | $59.73 | $0.00 | $59.73 | $315,630.91 | Griffith check: Dana Point |
| 03/01/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 03/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 06/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 07/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 08/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 09/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 10/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 11/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 12/15/17 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 01/15/18 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 02/15/18 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 03/15/18 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 04/15/18 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| 05/15/18 | $0.00 | $0.00 | $0.00 | $315,630.91 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

2:16-bk-25619-WB

## Steiny and Company, Inc. Priority Claim and Credits
Petition Date = 11/28/16

|  |  |  | 6.00% | 20.00% |  | **$88,215.01** |
|---|---|---|---|---|---|---|
| **Month** | **Due Date** | **Contributions** | **Interest** | **Liquidated Damages** | **Credits** | **Total Due** |
| June-16 | 07/20/16 | $28,522.15 | $219.77 | $5,693.27 | -$28,522.15 | $5,913.04 |
| July-16 | 08/20/16 | $37,739.41 | $92.80 | $7,533.53 | -$39,424.02 | $5,941.72 |
| August-16 | 09/20/16 | $31,638.32 | $358.86 | $6,327.66 | -$32,312.34 | $6,012.50 |
| September-16 | 10/20/16 | $27,418.86 | $175.78 | $5,474.04 | -$9,219.39 | $23,849.29 |
| October-16 | 11/20/16 | $31,524.22 | $41.46 | $6,304.84 | -$14,149.72 | $23,720.80 |
| November-16 | 12/20/16 | $29,410.64 | $0.00 | $5,693.27 | -$12,326.25 | $22,777.66 |
|  | Contributions Sub | $186,253.60 |  |  |  |  |
|  | Credits | -$135,953.87 |  |  |  |  |
|  | **Balance** | **$50,299.73** |  |  |  |  |

| 09/07/16 Checks Received: |  | Apply To |  |  |  |  |
|---|---|---|---|---|---|---|
|  | From | Judgment | June | July | August |  |
| 11888 | $4,337.11 Steiny |  | $4,337.11 |  |  |  |
| 11889 | $37,739.41 Steiny |  | $11,959.39 | $25,780.02 |  | Apply to June/July |
| 633194 | $20,528.11 Flatiron West | $7,632.07 | $6,892.28 | $6,003.76 |  |  |
| 54395 | $812.39 Skanska | $139.91 |  | $672.48 |  |  |
|  | $63,417.02 | $7,771.98 | $23,188.78 | $32,456.26 |  |  |

| 09/26/16 Checks Received: | From | Payment Plan | June | July | August |  |
|---|---|---|---|---|---|---|
| 12641 | $660.39 CA Rasmussen | $660.39 |  |  |  | (Apply all to May) |

| 09/29/16 Checks Received: | From | Payment Plan | June | July | August |  |
|---|---|---|---|---|---|---|
| 214327 | $9,625.08 Sukut | $1,321.85 | $1,335.47 | $6,967.76 |  | (Apply per breakdown) |
| 11998 | $2,390.31 Steiny |  | $2,390.31 |  |  |  |
| 11999 | $211.82 Steiny |  | $211.82 |  |  |  |
| 11961 | $31,638.32 Steiny |  |  |  | $31,638.32 |  |
| 11996 | $7,309.57 Steiny | $7,309.57 |  |  |  |  |
|  | $51,175.10 | $8,631.42 | $3,937.60 | $6,967.76 | $31,638.32 |  |

| 10/03/16 Checks Received: | From | Payment Plan | June | July | August |  |
|---|---|---|---|---|---|---|
| 5395 | $1,536.96 Western Rim | $605.19 | $931.77 |  |  |  |
| 65317 | $813.80 Peterson-Chase | $349.80 | $464.00 |  |  |  |
|  | $2,350.76 | $954.99 | $1,395.77 | $0.00 | $0.00 |  |

| 10/21/16 Checks Received: | From | Payment Plan | June | July | August |  |
|---|---|---|---|---|---|---|
| 54913 | $674.02 Skanska |  |  |  | $674.02 |  |
| 17725 | $7,309.57 Rolling Hills Prep | $7,309.57 |  |  |  |  |
|  | $7,983.59 | $7,309.57 | $0.00 | $0.00 | $674.02 |  |

| 12/21/16 Check Received | From | Apply To: | Sep | Oct |  |  |
|---|---|---|---|---|---|---|
| 55564 | $476.32 Skanska |  | $476.32 |  |  | Regional Connector |

| 01/09/17 Check Received | From | Apply To: | Sep | Oct |  |  |
|---|---|---|---|---|---|---|
| 55808 | $2,709.22 Skanska |  |  | $2,709.22 |  | Regional Connector |

| 01/16/17 Checks Received: |  | Apply To |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| Check # | From | Judgment | Sep | Oct | Nov | Dec | Jan |  |
| 22009 | $316.59 RJ Noble | $0.00 |  |  | $316.59 |  |  | Rte. 91 Fwy |
| 13769 | $21,538.17 Griffith Co. |  | $3,609.93 | $8,139.48 | $9,740.76 |  |  | S. Millikin |

| 01/25/17 Checks Received: |  | Apply To |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| Check # | From | Judgment |  | Oct | Nov | Dec | Jan |  |
| 600015864 | $15,519.97 Shames | $3,753.00 | $5,133.14 | $2,579.22 | $1,590.81 | $1,740.72 |  | Wal-Mart |

| 02/14/17 Check Received |  | Judgment |  | Oct | Nov | Dec | Jan |  |
|---|---|---|---|---|---|---|---|---|
|  | $2,580.35 Griffith | $59.73 |  | $721.80 | $678.09 | $694.74 |  | Dana Point |