FILED & ENTERED

MAY 03 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>STEINY AND COMPANY, INC.,<br><br><br><br>Debtor(s). | Case No.: 2:16-bk-25619-WB<br><br>CHAPTER 11<br><br>**MEMORANDUM OF DECISION**<br><br>Date:      February 2, 2017<br>Time:      10:00 AM<br>Courtroom: 1375 |

     Before the Court is a motion for administrative expenses ("Motion") filed by the trustees ("Trustees") of the following trusts: the Southern California IBEW-NECA Defined Contribution Trust Fund, the Southern California IBEW-NECA Health Trust Fund, the Southern California IBEW-NECA Supplemental Unemployment Benefit Trust Fund, the Los Angeles County Electrical Educational and Training Trust Fund, National Electrical Benefit Fund, the Southern California IBEW-NECA Labor-Management Cooperation Committee Trust Fund, Contract Compliance Trust Fund, and Los Angeles Electrical Workers Credit Union (collectively, "the IBEW-NECA Trusts"). Debtor Steiny and Company, Inc. ("Debtor") pays monthly

contributions to these labor-management multiemployer trusts, which then provide certain fringe benefits to Debtor's union employees. In their Motion, the Trustees assert that the contribution for November 2016[1] is delinquent, and they request that the Court treat such contribution as an administrative expense pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2). The Trustees also request that the Court require Debtor to pay interest, liquidated damages, and attorneys' fees incurred as a result of the delinquency[2] and that such amounts also be treated as administrative expenses. Finally, the Trustees request that the Court order immediate payment of their claim, if the claim is accorded administrative expense priority. Debtor and the Official Committee of Unsecured Creditors oppose all of the Trustees' requests.

        A hearing on the Motion was held on February 2, 2017 at 10:00 a.m. The Court heard oral argument and took the matter under submission. Based on the pleadings, record, and oral argument of counsel, and for the reasons that follow, the Court denies the Motion. The Trustees' claim for the November 2016 contribution is entitled to fifth priority status under § 507(a)(5), up to the statutory cap provided therein. Any amount of the November 2016 contribution that exceeds the maximum payment allowed under § 507(a)(5) will be treated as a general unsecured claim. The Trustees' claim for interest, liquidated damages, and attorneys' fees, totaling $10,873.83, will be treated as a general unsecured claim.

I. STATEMENT OF FACTS

        Debtor filed a voluntary Chapter 11 bankruptcy petition on November 28, 2016. Debtor is a privately held electrical contracting and engineering company with commercial, mass transit, industrial, traffic signal, control, and lighting divisions. Debtor continues to operate its business.

        Debtor is a party to various collective bargaining agreements ("CBAs") that require Debtor to make monthly contributions to the IBEW-NECA Trusts for each hour of covered work that Debtor's union employees perform. Pursuant to these CBAs, monthly contributions are due on the tenth day of the month, for work performed the previous month, and are considered

---

[1] According to the Trustees, the November 2016 contribution amounts to $169,337.88. However, the Trustees only seek to collect $139,911.40 of that amount, based on the report that Debtor submitted for November 2016.

[2] The Trustees request $829.49 in interest; $4,197.34 in liquidated damages; and $5,847.00 in attorneys' fees.

delinquent if not paid by the fifteenth day of the month.  If a contribution is delinquent, Debtor is required to pay the Trustees of the IBEW-NECA Trusts interest, liquidated damages, and any attorneys' fees and costs the Trustees have incurred as a result of their collection efforts.  Debtor has not yet rejected the CBAs.

Debtor's payroll period for November 2016 ended on November 27, 2016.  The November 2016 contribution to the IBEW-NECA Trusts then came due post-petition, on December 10, 2016.  Such contribution became delinquent on December 15, 2016.  To date, Debtor still has not paid the November 2016 contribution.

In their Motion, the Trustees acknowledge that the November 2016 contribution is based on hours worked pre-petition between November 1, 2016 and November 27, 2016.  However, because the contribution came due post-petition and became delinquent post-petition, the Trustees argue that the Court should treat the contribution, along with any interest, liquidated damages, and attorneys' fees, as an administrative expense.

## II.  DISCUSSION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (K).  Venue is proper in this Court.  28 U.S.C. § 1409(a) (2017).

A. <u>Legal Standard for Administrative Expense Priority</u>

In bankruptcy, certain unsecured claims are given priority treatment under § 507.  11 U.S.C. § 507(a)(1)-(10) (2017).  Among these are administrative expense claims allowed pursuant to § 503(b), which are given second priority status and are generally limited to post-petition expenses.  11 U.S.C. § 507(a)(2); <u>In re</u> Kadjevich, 220 F.3d 1016, 1019-20 (9th Cir. 2000).  Such claims include those for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered *after the commencement of the case*." 11 U.S.C. § 503(b)(1)(A)(i) (emphasis added).  A creditor requesting administrative expense treatment under § 503(b)(1)(A) has the burden of proof and must show that the claim (1) arose post-petition (2) from a transaction with the trustee or debtor-in-possession and (3) directly and substantially benefited the estate.  <u>In re</u> DAK Indus., Inc., 66

F.3d 1091, 1094 (9th Cir. 1995).

Section 507 also gives priority status to claims for wages and contributions to employee benefit plans that were earned within a certain amount of time before the bankruptcy petition was filed. See 11 U.S.C. §§ 507(a)(4)-(5). With regard to employer contributions to employee benefit plans, § 507 accords fifth priority status to such contributions if they arose from services rendered within 180 days before the bankruptcy petition date or the date the debtor-employer ceased doing business, whichever is earlier. 11 U.S.C. § 507(a)(5).

The Trustees argue that Matter of Pacific Far East Line, Inc., 713 F.2d 476 (9th Cir. 1983), is controlling Ninth Circuit authority that this Court is bound to follow. This Court disagrees. In Pacific Far East Line, a case decided under the old Bankruptcy Act, the court held that a trustee's payments to a maritime association for employee benefits were properly classified as administrative expenses even though the payments were determined based on employee hours worked pre-petition. 713 F.2d at 478-80. This Court believes that Pacific Far East Line has limited persuasive authority because it was decided under the old Act and before the enactment of both § 1113, which addresses the assumption and rejection of collective bargaining agreements, and § 507(a)(5), which assigns fifth priority unsecured status to contributions to employee benefit plans. The issue here is the interplay between § 1113 and § 507(a)(5) in determining whether an employee benefit plan contribution should be given administrative priority status. There is no controlling Ninth Circuit authority on this issue. However, this issue was addressed in In re Certified Air Techs., Inc., 300 B.R. 355 (Bankr. C.D. Cal. 2003). This Court finds the reasoning of the Certified Air court persuasive.

In Certified Air, the court considered whether several pre-petition claims for employee benefit plan contributions, along with requests for liquidated damages and attorneys' fees incurred as a result of the delinquent contributions, should be given administrative priority status. 300 B.R. at 357-60. The debtor was a party to CBAs that required payment of such contributions. Id. After deciding that the priority scheme of § 507 applied to employees covered by a CBA, the court examined the relationship between § 507 and § 1113. Id. at 369. In light of the legislative history of § 1113 and the approach taken by a majority of the circuits that had

considered the issue, the Certified Air court determined that the priority scheme of § 507 trumped any purported "super-priority" status that could be assigned to pre-petition wage and benefit claims as a result of § 1113. Id. at 366-69.

Section 1113 provides a detailed scheme that a debtor-in-possession must follow in order to reject a pre-petition CBA. See 11 U.S.C. § 1113. The relevant subsection that has been asserted as giving a "super-priority" status to wage and benefit claims arising out of a pre-petition CBA states that "[n]o provision of this title shall be construed to permit a trustee [or debtor-in-possession] to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. § 1113(f). However, the Certified Air court determined that assigning such meaning to § 1113(f) causes that section to conflict with § 507, which cannot have been the result intended by Congress:

> Construing § 1113(f) as mandating super-priority status for pre-petition wage and benefit claims under a collective bargaining agreement in chapter 11, but not in chapter 7, leads to anomalous results. . . . Section 1113 was enacted to protect the existence of collective bargaining agreements in chapter 11 cases, not to re-order the priority scheme set by Congress in § 507. Had Congress intended for § 1113 to create a super-priority for pre-petition wage and benefit claims arising under a collective bargaining agreement, it would have either included language in § 1113 similar to that incorporated into § 1114 or amended § 507 to reflect the change it intended. *Because Congress neither included explicit language in § 1113 to supercede § 507 nor amended § 507 to specifically create a super-priority status for such claims, the court concludes that pre-petition claims for wages and benefits due under a collective bargaining agreement are not entitled to treatment as administrative expenses but are to be accorded priority consistent with § 507.*

Certified Air, 300 B.R. at 368-69 (emphasis added). This analysis aligns with the Ninth Circuit's observation that "the scope of priorities should be strictly construed because 'preferential treatment of a class of creditors is in order only when clearly authorized by Congress.'" In re Consol. Freightways Corp. of Del., 564 F.3d 1161, 1167 n.14 (9th Cir. 2009) (quoting Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655 (2006)).

Accordingly, the Certified Air court declined to assign administrative expense priority to the pre-petition benefit claims and related damages based on § 1113. See 300 B.R. at 363-65 (characterizing In re World Sales, 183 B.R. 872 (B.A.P. 9th Cir. 1995), as inapplicable, since the claim at issue there was based on payments due under a CBA for post-petition work). Instead,

the court assigned the employee benefit plan contributions, which accrued within 180 days before the filing of the debtor's bankruptcy petition, fourth priority status[3] in accordance with the relevant subsection of § 507. Id. at 372. The court then allowed the related liquidated damages and attorneys' fees as general unsecured claims, since § 507 does not classify such amounts as priority unsecured claims, even when associated with priority wage and benefit claims. See id. at 369, 372.

B. The Trustees' Claim for the November 2016 Contribution, Based on Pre-Petition Hours Worked, is Not Entitled to Administrative Expense Priority.

The Trustees concede that the November 2016 contribution is based on hours worked between November 1, 2016 and November 27, 2016. Debtor filed its bankruptcy petition on November 28, 2016. Therefore, this debt arose pre-petition and consequently is not entitled to administrative expense priority under § 507(a)(2), since this subsection only accords such priority to services rendered post-petition.

Further, § 507(a)(5) specifically covers the circumstances here. The Trustees' claim arises out of Debtor's November 2016 contribution to various employee benefit plans. Debtor has not yet ceased doing business; therefore, the operative date for purposes of § 507(a)(5) is the petition date. The work that gave rise to the November 2016 contribution was performed in the month before the petition was filed. Thus, such services were rendered within 180 days before the petition date. Therefore, under § 507(a)(5), the Trustees' claim is entitled to fifth priority status. The language of § 1113(f) does not change this circumstance, especially since that subsection does not accord any special priority status to pre-petition claims arising out of CBAs. Rather, § 1113(f) merely ensures that a pre-petition CBA will not be rejected without the employer-debtor having first followed the procedures provided in § 1113.

Accordingly, the Court assigns fifth priority status to the Trustees' claim for the

---

[3] When Certified Air was decided, § 507 only included nine categories of unsecured priority claims, with administrative expense claims receiving first priority, pre-petition wage claims receiving third priority, and pre-petition employee benefit plan contributions receiving fourth priority. 300 B.R. at 360. Each of these categories moved one level lower in priority when the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added a new first priority for domestic support obligations. See 11 U.S.C. § 507(a)(1); Kathleen P. March et al., Cal. Practice Guide: Bankruptcy § 17:441 (The Rutter Group 2016).

November 2016 employee benefit plan contribution, up to the statutory cap provided in § 507(a)(5). Any amount of the November 2016 contribution that exceeds the maximum payment allowed under § 507(a)(5) will be treated as a general unsecured claim.

C. <u>The Trustees' Claim for Interest, Liquidated Damages, and Attorneys' Fees Will Be Treated as a General Unsecured Claim.</u>

As in <u>Certified Air</u>, the Court determines that § 507 does not grant priority status to interest, liquidated damages, and attorneys' fees incurred as a result of delinquent, pre-petition employee benefit plan contributions. This notion holds true even when such amounts are related to employee benefit claims allowed under § 507(a)(5).

Therefore, although the Trustees' claim for the November 2016 contribution is entitled to priority under § 507(a)(5), the Trustees' claim for the associated interest, liquidated damages, and attorneys' fees will be treated as a general unsecured claim.

D. <u>Since Neither Portion of the Trustees' Claim is Entitled to Administrative Expense Priority, the Court Will Not Order Immediate Payment of the Trustees' Claim.</u>

The decision about when administrative expenses will be paid lies within the discretion of the bankruptcy court. <u>In re</u> <u>Verco Indus.</u>, 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982) (citing <u>In re</u> <u>Standard Furniture Co.</u>, 3 B.R. 527, 532 (Bankr. S.D. Cal. 1980)). In determining whether an administrative expense should be paid immediately, courts often consider the following factors: (1) the likelihood that all administrative claimants will be paid in full; (2) whether the administrative claimant could repay any payment that later proves to be excessive; (3) if the case is a Chapter 13 or 11 case, how close the case is to confirmation; and (4) whether the expense was incurred in the ordinary course of the debtor's business. Kathleen P. March et al., <u>Cal. Practice Guide: Bankruptcy</u> § 17:730 (The Rutter Group 2016) (citing <u>In re</u> <u>Cardinal Indus., Inc.</u>, 109 B.R. 738, 742-43 (Bankr. S.D. Ohio 1989); <u>In re</u> <u>W. Farmers Ass'n</u>, 13 B.R. 132, 135 (Bankr. W.D. Wash. 1981)). If it appears that there are insufficient assets to pay all administrative claims in full, immediate payment is disfavored. <u>In re</u> <u>Conchise College Park, Inc.</u>, 703 F.2d 1339, 1356 n.22 (9th Cir. 1983).

Here, as discussed previously, the Court has determined that no portion of the Trustees'

claim will be treated as an administrative expense. Consequently, immediate payment of the Trustees' claim is neither necessary nor appropriate.

### III. CONCLUSION

In summary, the Court holds that the Trustees' claim, comprised of the November 2016 employee benefit plan contribution and related interest, liquidated damages, and attorneys' fees, is not entitled to administrative expense priority and, therefore, need not be paid immediately. Rather, the November 2016 contribution is entitled to fifth priority status, since it is based on work performed within 180 days before Debtor filed its bankruptcy petition. Further, the interest, liquidated damages, and attorneys' fees incurred by the Trustees as a result of the delinquent contribution do not constitute a priority unsecured claim. Accordingly, the Trustees' Motion is denied. The Trustees may file a claim comprised of the following amounts: (1) the November 2016 contribution, which will be treated as a priority unsecured claim under § 507(a)(5), up to the statutory cap provided therein; (2) any amount of the November 2016 contribution that exceeds the maximum payment allowed under § 507(a)(5), which will be treated as a general unsecured claim; and (3) interest, liquidated damages, and attorneys' fees in the total amount of $10,873.83, which will be treated as a general unsecured claim.

A separate order consistent with this memorandum of decision will be entered.

Date: May 3, 2017

Julia W. Brand
United States Bankruptcy Judge